## UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

| | |
|---|---|
| WILLIAM LEONARD, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:05-CV-01015-MEF-CSC |
| vs. ) | |
| ) | |
| RELIASTAR LIFE INSURANCE ) | |
| COMPANY f/k/a NORTHWESTERN ) | |
| NATIONAL LIFE INSURANCE ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

### DEFENDANT RELIASTAR LIFE INSURANCE COMPANY'S MOTION TO DISMISS THE COMPLAINT AND TO STRIKE CLASS ACTION CLAIMS, AND SUPPORTING MEMORANDUM OF LAW

Pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, Defendant ReliaStar Life Insurance Company ("ReliaStar") hereby respectfully moves the Court for an Order dismissing the complaint in its entirety and striking the plaintiff's class action allegations. For the reasons set forth below, the complaint is barred by the statute of limitations and otherwise fails to state a claim, and the class action allegations are untenable as a matter of law.

### INTRODUCTION

The complaint in this action is based entirely on the plaintiff's purchase, nearly 20 years ago, of a "Flexible Premium Adjustable Whole Life Insurance Policy" with a face amount of $50,000 (the "Policy"). Although the Policy expressly provides that no agent "can change this contract" (Policy at p. 2), the plaintiff complains that, in 1986, his

insurance agent orally "guaranteed" that if he continued to make a "fixed" premium payment of $37.00 every two weeks, the Policy would "always" remain in force and never lapse.[1]  The plaintiff makes this allegation notwithstanding that the Policy contains no such guaranty, and in fact, guarantees only a minimum interest rate of 4.5%.  The Policy states plainly that it is guaranteed not to lapse for three years (not for eternity), provided the plaintiff pays a certain minimum monthly premium.[2]

The Policy is a "universal life" insurance policy, meaning that the premiums are "flexible" and the death benefit may be adjusted according to the terms of the Policy. The Policy stays in force so long as its "cash value" is sufficient to pay the monthly cost of the Policy.  The cash value is increased by premium payments and interest credits. The plaintiff determines the amount and frequency of his premium payments, and he is permitted to increase his premiums at any time.  ReliaStar sends premium notices based on the frequency and method of payment selected.  Policy at p. 4.  The Policy expressly explains that "[t]he amount and frequency of premium payments will affect the accumulation value and cash value *and how long the insurance will remain in effect.*" *Id.* (emphasis added).

As is customary with universal life ("UL") policies, the plaintiff received an annual statement or annual report every year.  *See* Policy at p. 16.  ReliaStar's annual reports provide an itemized accounting of the premiums paid, the interest rates credited,

---

[1] *See* Complaint ¶ 6(b)(i) and ¶ 11 (hereinafter cited as "Compl.").

[2] *See* Policy at p. 5 (describing the "Grace Period").  A copy of the Policy is attached hereto as Exhibit A.

the costs of insurance, expenses charged, and the ending value of the Policy for every month in the year. In addition to notifying the policyholder of changes in the interest rate, the annual reports explain when the policy can be expected to lapse under different interest rate scenarios.

Notwithstanding the premium provisions in his Policy, and despite receiving detailed annual reports every year for eighteen years, the plaintiff professes complete ignorance over the nature of his Policy and how his Policy was performing. He accuses ReliaStar of selling him an "under-funded" policy, even though at inception the Policy is funded only with an initial premium, and the plaintiff fully controls how much he funds the Policy over time. Ignoring the decline in interest rates since 1986,[3] the plaintiff complains that the alleged "under-funding" was caused by the cost of a $50,000 Term Insurance Rider, which he also purchased along with the Policy. Remarkably, the plaintiff makes this claim although he knew exactly how much the Term Insurance Rider cost, and he could have cancelled the rider at any time.

The plaintiff alleges that the Policy he received in 1986 was "not as promised by Defendants," Compl. ¶ 16, but he offers no explanation as to why he did not discover this alleged claim nineteen years ago when the Policy was issued. Any reasonable person reading the Policy would immediately recognize that it does not provide that premium payments "would stay level and/or fixed," Compl. ¶ 6(b)(i), and it does not guarantee that the Policy will never lapse. It guarantees only a minimum interest rate of 4.5% and

---

[3] The interest rate on the Policy, which was fully disclosed to the plaintiff each year, declined from 9.75% in 1987 to the guaranteed minimum of 4.5% in 2003.

3

provides only a limited three year no-lapse period. Under well established law, the plaintiff's purported claims against ReliaStar accrued when he purchased the Policy in 1986, and the statute of limitations expired long ago. His claims are time barred and should be dismissed with prejudice.[4]

In addition to the statute of limitations, the plaintiff's claims suffer from other serious legal defects. The plaintiff's fraud claims are untenable because, as a matter of law, the plaintiff could not reasonably rely on the agent's purported oral misrepresentations, and the plaintiff's other tort claims suffer from similar defects. The plaintiff's count for breach of contract is without merit and fails to identify any term of the insurance contract breached by ReliaStar. Finally, the Court should strike and dismiss the multi-state class action allegations because the complaint concedes that 50 different state laws would need to be applied, and Eleventh Circuit precedent is clear that a fraud claim would be unmanageable as a matter of law under these circumstances.

## STATEMENT OF FACTS

### A.    "Universal Life" Insurance

Universal life insurance was specifically developed to provide consumers with the flexibility to change the amount of their premium payments and the face amount of their insurance, according to changes in their own individual needs and circumstances. "UL" policies "are *flexible* in that they permit policyowners, within limits, to increase or decrease (even to zero) premium payments as they wish, and also, subject to certain constraints, to increase or decrease the policy face amount." KENNETH BLACK, JR. AND

---

[4] Nor does the complaint adequately plead any basis for tolling the statute of limitations.

HAROLD D. SKIPPER, JR., LIFE INSURANCE at 39 (13th ed. 2000) (hereinafter "BLACK & SKIPPER") (emphasis added).

In addition to life insurance benefits, universal life insurance also involves a savings component called "cash value," which can accumulate or decrease, depending upon interest rates and the amount of premium that the policyholder decides to pay. If the cash value is sufficient to cover the cost of insurance (expense and mortality charges), no premium need be paid. "If the previous period's cash value is not sufficient, the policy will lapse in the absence of a further premium payment." BLACK & SKIPPER at 117. In connection with UL insurance, the insurer will send the policyholder "annual reports," which show the performance of the policy and set forth the policy expenses, cost of insurance, credits, as well as the resulting cash value of the policy. *Id*. at 116.[5]

## B.    The Plaintiff's Policy

In the Fall of 1986, the plaintiff applied for a universal life insurance policy and term insurance rider from Northwestern National Life Insurance Company, now known as ReliaStar.    Effective September 24, 1986, ReliaStar issued a Flexible Premium Adjustable Whole Life Insurance Policy (Policy No. B2-076-716) (the "Policy") with a face amount of $50,000, and a Term Insurance Rider with a face amount of $50,000 for a total death benefit of $100,000. *See* Policy (Exh. A hereto); Compl. ¶¶ 10-12.    The

---

[5] Universal life policies are often described as "transparent" because the policyholder can see exactly how the policy is performing. *See* BLACK & SKIPPER at 116 ("UL policies are transparent in their operation . . . . The policyowner is able to see how funds are allocated to the various policy elements."); *see also In re CM Holdings, Inc.*, 254 B.R. 578, 585 (D. Del. 2000) ("all the features of the policy are unbundled to allow the policyholder to see how the money is used").

Policy did not guarantee that interest rates would "always" remain the same, nor did it guarantee that the policy would remain in force forever.  Rather, the Policy provided a guaranteed minimum interest rate of 4.5%, and a limited no-lapse period of three years if the plaintiff paid the Minimum Monthly Premium of $78.00.  Policy at pp. 7, 5.

The Policy contained a 10-day "free look" provision, which gave the plaintiff ten days to examine the Policy and return it for any reason with a full refund of all premiums paid.  Policy at p. 1 ("Right to Return Policy").  The plaintiff does not allege that he made any attempt to return the Policy.

### 1.     Premium Provisions

The Policy contains simple, unambiguous language that makes it unequivocally clear that the premium payments are flexible and not "fixed" at a particular amount. Indeed, the name of the Policy itself ("Flexible Premium Adjustable Whole Life Policy") references the flexible nature of the premiums.  The Policy states:

> The amount and frequency of the planned periodic premiums you have chosen are shown on the Policy Data Page.  You may change the frequency and amount of planned period premiums by notifying us in writing of the change.

Policy at p. 4.  The policyholder can make unscheduled additional premium payments at any time:  "Premium payments other than the planned periodic premiums may be made at any time while this policy is in force."  *Id.*  Further, the Policy plainly discloses that "The amount and frequency of premium payments will affect the accumulation value and cash value and ***how long the insurance will remain in effect***."  *Id.* (emphasis added).

### 2.     Policy Lapse Provisions

Nowhere does the Policy state that it will stay in force forever, or that the payment

6

of any "fixed" premium will prevent the policy from lapsing. To the contrary, the Policy

provides a limited three year no-lapse period if the policyholder pays the Minimum

Monthly Premium:

> We will not lapse this policy during the first 3 policy years, if
> on each Monthly Anniversary Date during the period, 1 is
> greater than 2, where:
>
> 1
> Is the sum of all premiums paid to date minus any policy
> loans and partial withdrawals; and
>
> 2
> Is the sum of the Minimum Monthly Premiums since the
> Policy Date, including the month following the Monthly
> Anniversary Date.

*See* Policy at p. 5 ("Grace Period"). This provision makes it plain that there is ***no***

***guarantee that the Policy will not lapse after three years***.

The Policy stays in force so long as the cash value is sufficient to pay the monthly

cost of the Policy. The Policy provides that it will enter a "Grace Period" of 61 days if

the cash value on a monthly anniversary day is not enough to cover the monthly

deductions for the following month:

> If, on any Monthly Anniversary Date, the cash value minus
> any policy loans is less than the monthly deduction for the
> policy month to follow, we will give you a grace period of 61
> days to pay a premium large enough to cover the monthly
> deduction. We will send you notice of the required premium
> at least 30 days before we lapse this policy.

Policy at p. 5. The "Monthly Deduction" is also defined under the Policy to be the sum

of the cost of insurance, monthly policy charges, and any monthly administrative charge.

Policy at p. 7.

If the policyholder allows the Policy to enter the Grace Period and thereafter fails to pay a premium large enough to cover the monthly deduction, the Policy will lapse and all coverage will terminate:

> If that required premium is not paid within the grace period, we lapse this policy. A lapsed policy is no longer in force and has no cash value.

Policy at 5.

## C.     The Complaint

Plaintiff filed his complaint on October 21, 2005. The plaintiff claims that his Policy was "defective" and "under-funded" from inception because it "would eventually lapse prior to its maturity date regardless of whether credited interest rates declined." Compl. ¶¶ 13, 14. He alleges that he purchased the Policy in reliance upon an oral representation by his agent that "the initial premium established and required by Defendant was and would always be adequate to fund the original policy." Compl. ¶¶ 11-12, 27-28. The plaintiff complains that the Policy he received in 1986 was "not as promised by Defendant." Compl. ¶ 16.

The complaint includes six "counts" which purport to assert the following claims:

| | |
|---|---|
| Count One | Fraud |
| Count Two | Suppression or failure to disclose |
| Count Three | Negligent hiring, training, and supervision |
| Count Four | Wanton hiring, training, and supervision |
| Count Five | Negligent/wanton failure to procure a suitable product |
| Count Six | Breach of contract |

For the reasons set forth below, all of these claims should be dismissed with prejudice.

## LEGAL STANDARD

"A Rule 12(b)(6) motion tests the legal sufficiency of the complaint." *Kuhn v. Thompson,* 304 F. Supp. 2d 1313, 1318 (M.D. Ala. 2004). A court may dismiss a complaint if it is clear that no relief can be granted under any set of facts that could be proven consistent with the allegations. *Id.* (citation omitted). In ruling on a motion to dismiss (without converting it into one for summary judgment), this Court may consider documents, like the Policy, which the plaintiff refers to in the complaint and which are central to the plaintiff's claims. *Brooks v. Blue Cross & Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) ("where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment").[6]

To the extent of any conflict between the terms of a document and the allegations of the complaint, the terms of the document control. *See, e.g., Simmons v. Peavy-Welsh Lumber Co.,* 113 F.2d 812, 813 (5th Cir. 1940) ("Where there is a conflict between allegations in a pleading and exhibits thereto, it is well settled that the exhibit controls.");

---

[6] *See also Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) (document central to the complaint that the defense appends to its motion to dismiss is properly considered, provided that its contents are not in dispute) (citing *Brooks*); *Canon v. Clark*, No. 94-8150-CIV, 1994 WL 549759, at *3 (S.D. Fla. Sept. 21, 1994) ("documents that the defendant attaches to a motion to dismiss can be considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim"); 5 Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1327, at 762-63 (2d ed. 1990). *Accord Sennett v. United States Fidelity and Guaranty Co.*, 757 So. 2d 206, 209-10 (Miss. 2000) (insurance policy attached to motion to dismiss was properly considered by the court because it was referred to in the complaint and was central to the plaintiff's cause of action).

9

*Doggett v. Hunt,* 93 F. Supp. 426, 430 (S.D. Ala. 1950) (same); *Raburn v. Bailes,* 565 So.

2d 122, 125 (Ala. 1990) (same).

## ARGUMENT

## I.    THE PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED IN ITS ENTIRETY FOR FAILURE TO STATE A CLAIM

### A.    The Plaintiff's Claims Are Time Barred By Alabama's Statute Of Limitations

Alabama imposes a two-year limitations period on tort claims and a six-year

period on breach of contract claims. Ala. Code §§ 6-2-34(4), 38(*l*). Plaintiff's complaint,

however, is based on conduct that was allegedly committed in 1986 (Compl. ¶ 26), over

nineteen years before the complaint was filed.    Absent the benefit of any tolling

provision, plaintiff's claims are clearly time barred and should be dismissed with

prejudice.

### 1.    Plaintiff's fraudulent misrepresentation and omission claims are time barred

Plaintiff's fraud claims (Counts I & II) are time barred for reasons similar to those

expressed by this Court in *Owens v. Life Insurance Co. of Georgia*, 289 F. Supp. 2d

1319, 1325 (M.D. Ala. 2003). Plaintiff's fraud claims accrued when plaintiff paid his

first premium on the Policy in 1986. He cannot rely on the discovery rule to toll the

limitations period because he fails to plead entitlement to tolling with the requisite

particularity and, in any event, as a matter of law, the plaintiff would not be entitled to

tolling because he received the Policy, which was sufficient to put any reasonable person

on notice of the alleged fraud. Plaintiff's fraud claims are thus plainly time barred by

Alabama's two-year statute of limitations. Ala. Code § 6-2-38(*l*).

### a.    Plaintiff's fraud claims accrued when the plaintiff paid his first premium

The statute of limitations began to run on the plaintiff's alleged fraud claim when he paid his first premium on the Policy. *Donoghue v. Am. Nat'l Ins. Co.,* 838 So. 2d 1032, 1037 (Ala. 2002) (a claim of fraud based on purported misrepresentations that a life insurance policy would provide a $125,000 retirement fund if planned premiums were continued until age 65 accrued when first premium was paid); *see also Alfa Life,* 906 So. 2d at 151 ("[A] claim that the plaintiff-insured was misled to pay premiums for a policy by representations that the policy would contain a coverage or feature that the subsequently issued policy did not in fact contain is *ripe* as soon as the plaintiff-insured pays a premium.") (emphasis in original) (citations omitted).[7]

*Williamson v. Indianapolis Life Insurance Co.,* 741 So. 2d 1057, 1061 (Ala. 1999) is inapplicable to the present situation. In *Williamson,* the Alabama Supreme Court held that claims relating to the performance of a "vanishing" premium policy were not ripe for adjudication until after the purported "vanish date" passes. The Alabama Supreme Court, however, significantly retreated from its holding in *Williamson* earlier this year and limited *Williamson* to claims based on vanishing premium policies. *See Alfa Life,* 906 So. 2d at 151.

In this case, the plaintiff's complaint distinguishes itself from *Williamson* by

---

[7] *Accord Stephens v. Equitable Life Assur. Soc'y,* 850 So. 2d 78 (Miss. 2003). In *Stephens,* the Mississippi Supreme Court held that a claim for fraud in the sale of a life insurance policy accrues upon "completion of the sale." *Id.* at 81; *see also id.* at 83 ("The purchase of the policies were made in 1972; thus the causes of action accrued in 1972."); *see also Robinson v. Southern Farm Bureau Cas. Co.,* No. 2003-CA-02797-COA, 2005 WL 3160310, at *2 (Miss. Ct. App. Nov. 29, 2005) ("The three year statute of limitations for fraud begins to accrue upon the purchase of an insurance policy.") (citing *Stephens*).

disavowing any linkage to interest rates and by alleging instead that the plaintiff suffered damages when he received a "defective" product at the point of sale. Compl. ¶¶ 13, 29 & 35 (policy would "eventually lapse prior to its maturity date *regardless of whether credited interest rates declined"*) (emphasis added). The plaintiff also alleges he was damaged when he "made payments on a policy that was not as represented." Compl. ¶ 33; *see also id.* ¶ 16 (the plaintiff purchased a "product" that was "not as promised"). Thus, under *Alfa Life* and other decisions by the Alabama Supreme Court, the plaintiff's fraud claims accrued in 1986 when he purchased the Policy and paid his first premium in 1986, and his complaint is time barred.[8]

### b. The plaintiff cannot, as a matter of law, satisfy his burden to establish tolling of the statute of limitations

As discussed below, the plaintiff has not pled any basis for tolling the statute of limitations with sufficient particularity. As the Alabama Supreme Court has explained, the "burden" of establishing the benefit of the tolling provision is "on the party bringing an action for fraud." *Parsons Steel, Inc. v. Beasley,* 522 So. 2d 253, 256 (Ala. 1988) (citing *Lampliter Dinner Theater, Inc. v. Liberty Mut. Ins. Co.,* 792 F.2d 1036 (11th Cir. 1986)). As a matter of law, plaintiff cannot meet his burden.

In *Foremost Insurance Co. v. Parham,* 693 So. 2d 409, 421 (Ala. 1997), the Alabama Supreme Court reestablished the "duty to read documents received in

---

[8] This case is also distinguishable from *Farrar v. ReliaStar Life Insurance Co.,* No. 2:03cv1135-D, slip op. at 7 (M.D. Ala. June 18, 2004), where the court found that the plaintiff's claims did not become ripe for many years because: "Like the policies in *Williamson,* the ability of Plaintiffs' policies to sustain themselves at a level premium [was] tied to interest rates." Here, plaintiff claims that the Policy was defective from inception and that sustaining the interest rate is irrelevant to the policy lapsing. Compl. ¶¶ 13, 29 & 35. The complaint in *Farrar* contained no similar allegation. *Farrar*, No. 2:03cv1135-D (D.E. 1).

12

connection with a particular transaction." *Owens v. Life Ins. Co. of Ga.,* 289 F. Supp. 2d 1319, 1325 (M.D. Ala. 2003). Under *Foremost*, "(1) actual discovery [of] the alleged fraud; or (2) receipt of a document or contract alerting the plaintiff to the possibility of fraud, if the plaintiff could have read and understood such document and chose to ignore its written terms" ends any tolling of the statute of limitations. *Id.*[9]

The alleged oral representations in this case (that the initial premium would "always be adequate to fund" the policy, Compl. ¶ 11)) are similar to those addressed by this Court in *Owens*, where the insurance agent purportedly misrepresented that "the amount of insurance coverage would never fall below the face amount of $15,000." 289 F. Supp. 2d at 1321. Owens purchased his policy from the defendant in 1984 but sued eighteen years later. *Id.* Long before commencing the lawsuit, however, Owens's policy contained information contradicting the agent's alleged misrepresentations. *Id.* at 1326. Applying the rule reestablished in *Foremost,* this Court determined that plaintiff "should have been on notice of the pertinent terms of the policy when he received it." *Id.* Accordingly, this Court held that Owens "should have discovered the possibility of fraud and misrepresentation in 1984 when he purchased the policy, and the two year statute of

---

[9] *See also Fowler v. Provident Life & Accident Ins. Co.,* 256 F. Supp. 2d 1243, 1249 (N.D. Ala. 2003) ("the plaintiff should have discovered the possibility of fraud and misrepresentation" when she received her policy that contained terms that differed from the purported misrepresentations about the policy); *Auto Owners Ins. Co. v. Abston,* 822 So. 2d 1187, 1195 (Ala. 2001) ("the limitations period begins to run when the plaintiff was privy to facts which would provoke inquiry in the mind of a person of reasonable prudence, and which, if followed up, would have led to the discovery of the fraud") (citations & internal quotations omitted); *see also Brown v. Commonwealth Life Ins. Co.,* 22 F. Supp. 2d 1325, 1331 (M.D. Ala. 1998) ("Because the documents which have been presented to this court should have alerted the Plaintiff to the facts which she claims constituted fraud . . . the Plaintiff's claims are untimely.") (citation omitted) (dismissing fraud claims on summary judgment as untimely).

limitations commenced running at that time." *Id.* Owens's claims were thus dismissed as time barred. *Id.* at 1327.

In *Liberty National Life Insurance Co. v. Ingram,* 887 So. 2d 222, 223-24 (Ala. 2004), the plaintiff alleged that he purchased a life insurance policy based on purported misrepresentations that it would be "paid up" in 10 years. Ingram also alleged that "the fact that the interest rate of 9.75% used to arrive at the 10-year period was not a guaranteed rate of interest" was suppressed. *Id.* Plaintiff's written policy, delivered ten years prior to suit, however, guaranteed only a four percent rate of interest. *Id.* at 225. Ingram, who had the equivalent of a seventh-grade education (*id.* at 225), argued that he could not understand his policy. *Id.* at 228. The Alabama Supreme Court disagreed, holding that Ingram could have read his policy and, accordingly, the statute of limitations barred his claims as a matter of law. *Id.* at 229.

Here, the plaintiff complains that he purchased the Policy based on purported representations that "the initial premium . . . was and would always be adequate to fund the original policy terms." Compl. ¶¶ 11-12, 27-28. Plaintiff's Policy, however, contained no such guarantee. To the contrary, the Policy guarantees a minimum interest rate of 4.5%, and the only no-lapse guarantee is for a term of three years, provided the Minimum Monthly Premium is paid. The Policy also makes it clear that the Policy can and will lapse if a sufficient cash value is not maintained. The plaintiff was on notice of any purported "fraud" at the time he received his Policy in 1986. Under *Foremost* and this Court's prior decisions, plaintiff's claims accrued when he received his Policy and

14

paid his first premium. Accordingly, the plaintiff is precluded from tolling the statute of limitations as a matter of law, and his fraud claims should be dismissed.

### c.    The plaintiff has not pled tolling with the requisite particularity

In any event, even if the plaintiff could in theory meet his burden of establishing the requirements for tolling (which he cannot), he has not done so here. The complaint does not plead the requirements of tolling with the requisite particularity. Accordingly, the Court should not consider any tolling arguments raised by plaintiff under Alabama Code § 6-2-3 (1975). As with any other aspect of an action for fraud, a plaintiff must plead "discovery" with particularity. *See Moore v. Liberty Nat'l Ins. Co.*, 108 F. Supp. 2d 1266, 1273 (N.D. Ala. 2000) ("To have the benefit of Section 6-2-3 . . . the Plaintiff must plead with particularity the fraudulent concealment and must state the time period within which he discovered the concealment of this claim."), *aff'd,* 267 F.3d 1209 (11th Cir. 2001). Here, plaintiff cannot benefit from application of the discovery rule because the complaint fails to allege *any facts* from which it can be determined when or how he allegedly discovered the fraud. Plaintiff's complaint includes only a vague and defective allegation regarding discovery: "The Plaintiff discovered the wrongdoings of the Defendants within two years of filing this lawsuit." Compl. ¶ 24.

The mere allegation that a plaintiff did not discover the defendant's allegedly fraudulent conduct until a date within two years of the complaint's filing is insufficient as a matter of law in the face of a statute of limitations challenge. In *Howard v. American Medical Security Insurance Co.*, No. 1:00-CV-238-LC, 2000 WL 1137238, at \*3 (S.D. Ala. July 26, 2000), the court granted a motion to dismiss where allegations were

15

insufficient for the court to determine whether the statute of limitations had or had not run on the plaintiff's fraud claim. The court explained that "the face of the complaint fails to indicate whether or not Plaintiff filed her action within the two-year statute of limitations" and concluded that the complaint's allegation that the plaintiff "did not discover [the defendant's] fraudulent conduct until less than two years before the suit was filed . . . is insufficient as a matter of law." *Id.* Like the plaintiff in *Howard*, the plaintiff here fails to plead his alleged "discovery" with the required particularity, and his fraud based claims should be dismissed. *See also Angell v. Shannon,* 455 So. 2d 823, 823-24 (Ala. 1984) (affirming dismissal where "[t]he complaint did not state the time or circumstances of the discovery of the alleged fraud").

### 2. **Plaintiff's other tort claims are time barred**

Alabama's two-year limitations period also governs plaintiff's negligence and wantonness claims (Counts III and V). *Jim Walter Homes, Inc. v. Nicholas*, 843 So. 2d 133, 136 (Ala. 2002). Plaintiff's negligence and/or wantonness claims become ripe as soon as plaintiff began paying premiums on his Policy. *Donoghue,* 838 So. 2d at 1037-38 ("[plaintiff] was paying for something that 'did not exist and never would exist' and that he consequently has suffered injury sufficient to ripen his claims"); *see also Casassa v. Liberty Life Ins. Co.,* 949 F. Supp. 825, 832 (M.D. Ala. 1996) ("In Alabama, a negligence and/or wantonness cause of action accrues as soon as the plaintiff is entitled to maintain the action, *i.e.*, at the time of the first legal injury, regardless of whether the full amount of damages is apparent.") (citations and internal quotations omitted). No tolling mechanism can be employed to save plaintiff's negligence and wantonness claims

16

because these claims are not subject to a discovery rule. *See Henson v. Celtic Life Ins. Co.,* 621 So. 2d 1268, 1274 (Ala. 1993) ("There is . . . no 'discovery rule' to toll the running of the limitations period with respect to negligence or wantonness actions; the 'discovery rule' in Alabama is applicable only to fraud actions."); *Casassa,* 949 F. Supp. at 832 n.9 (same). Accordingly, plaintiff's negligence and wantonness claims are time barred.

### 3.    Plaintiff's breach of contract claim is time barred

Alabama's six year statute of limitations bars plaintiff's breach of contract claim (Count VI). *See* Ala. Code § 6-2-34(4); *Casassa,* 949 F. Supp. at 831 ("An action for breach of contract including breach of an insurance contract is subject to a six-year statute of limitations.") (dismissing as time barred the alleged breach of an insurance contract on insurer's motion for summary judgment). Moreover, "[t]he statute of limitations on a contract action runs from the time a breach occurs rather than from the time actual damage is sustained." *AC, Inc. v. Baker,* 622 So. 2d 331, 335 (Ala. 1993); *see also Selma Hous. Dev. Corp. v. Selma Hous. Auth.,* No. 04-0449-WS-B, 2005 WL 1981290, at \*17 (M.D. Ala. Aug. 16, 2005) (same) (citation omitted). A breach of contract action based on an alleged oral promise pertaining to an insurance policy, furthermore, accrues "immediately upon issuance, [where] the policies were in nonconformity with, and therefore [in] breach of" the alleged promise. *Alfa Life Ins. Corp. v. Jackson,* 906 So. 2d 143, 151 (Ala. 2005).

The plaintiff has failed to allege any breach of the written insurance contract, so plaintiff's claim can only be based on an alleged oral promise made in 1986. The

plaintiff also contends that his Policy was defective "[a]t inception." Compl. ¶¶ 13, 29 & 35. As the Alabama Supreme Court held in *Alfa Life,* plaintiff's breach of contract action accrued "immediately upon [the] issuance" of his Policy. Any alleged breach that occurred in 1986, nineteen years before the complaint was filed, is time barred and should be dismissed with prejudice.

**B.     Each Of The Plaintiff's Individual Claims Is Deficient As A Matter Of Law And Should Be Dismissed With Prejudice**

In addition to violating the statute of limitations, plaintiff's complaint should be dismissed for failure to state a claim.

**1.     Count I of the complaint fails to state a claim of fraud and should be dismissed**

Plaintiff fails to state a fraud claim because, as a matter of law, he could not have reasonably relied on the alleged oral representations that were contradicted by plaintiff's written Policy terms. The elements of a fraud claim include (i) a false representation; (ii) concerning a material existing fact; (iii) reasonably relied on by the plaintiff; (iv) who was damaged as a proximate result. *Auto-Owners Ins. Co. v. Abston,* 822 So. 2d 1187, 1196 (Ala. 2001) (citation omitted); *Foremost*, 693 So. 2d at 421 (reestablishing the reasonable reliance standard for fraud claims) (citing *Torres v. State Farm Fire & Cas. Co.,* 438 So. 2d 757 (Ala. 1983)). Under Alabama law, a plaintiff can state a claim of fraud based on a purported misrepresentation only in the "*absence of independent knowledge sufficient to arouse [his] suspicion.*" *Ex parte ERA Marie McConnell Realty, Inc,* 774 So. 2d 588, 591 (Ala. 2000) (emphasis in original) (citation and quotation omitted). Indeed, where a purchaser "closes his eyes where ordinary diligence requires

him to see," he cannot state a claim for fraud. *Id.* (internal citations and quotations omitted); *see also Tyler v. Equitable Life Assurance Soc'y,* 512 So. 2d 55, 57 (Ala. 1987) ("[F]raud or misrepresentation cannot be predicated upon a verbal statement made before execution of a written contract when a provision in that contract contradicts the verbal statement.").

In *Baker v. Metropolitan Life Insurance Co.,* 907 So. 2d 419, 420 (Ala. 2005), plaintiff alleged that he was fraudulently induced to purchase a life insurance policy based on purported representations that his policy "would become self-sufficient" after eleven years of premium payments. Plaintiff, however, was given a premium schedule listing that premiums were payable for 73 years. *Id.* at 422. The court held that in light of this disclosure, there was no way that reliance on the agent's alleged misrepresentation "was *reasonable*." *Id.* at 423 (emphasis supplied). Accordingly, summary judgment was affirmed for the defendant without even needing to reach statute of limitations issues because plaintiff could not establish this essential element of fraud. *Id.*

Here, plaintiff alleges that the agent misrepresented that the initial premium "was and would always be adequate to fund the original policy." Compl. ¶¶ 11, 27. Plaintiff's written Policy, however, clearly disclosed that there was no guarantee that the initial $37 bi-weekly premium would fund the initial Policy terms for more than three years. Policy at p. 5. Moreover, contrary to the purported misrepresentation, the Policy disclosed that premiums were "flexible" not fixed. *See* Policy at p. 1. In addition, the Policy provided that "*[n]o agent* or any other person except our elected officers or an Assistant Secretary *can change this contract*." Policy at p. 2 (emphasis added).

19

Under *Foremost,* the plaintiff had a duty to read his Policy documents. *Owens,* 289 F. Supp. 2d at 1325. Accordingly, plaintiff cannot state a claim for fraud because, as a matter of law, he could not have relied on the agent's alleged representations that were contradicted by the written terms of his Policy. *See, e.g., Torres,* 438 So. 2d at 759 (affirming summary judgment for defendant where plaintiffs could not have reasonably relied on the agent's alleged representation that was contradicted by the written policy) (cited with approval in *Foremost,* 693 So. 2d at 421).[10]

### 2. Count II of the complaint fails to state an actionable claim for fraudulent suppression or failure to disclose

Similarly, plaintiff fails to state a claim of fraudulent suppression. To recover on a claim of fraudulent suppression a plaintiff must allege and prove "(1) a duty to disclose the facts, (2) concealment or nondisclosure of material facts by the defendant, (3) inducement of the plaintiff to act, and (4) action by the plaintiff to his injury." *Auto Owners,* 822 So. 2d at 1197 (quoting *Foremost,* 693 So. 2d at 423).[11]

Plaintiff alleges that ReliaStar failed to disclose that plaintiff's Policy was:

> an under-funded hybrid universal life insurance product based on excessive interest rates and unsustainable costs of insurance; an annual renewable term rider in which the premiums established and required by Defendant were insufficient to cover the increasing costs of the rider; and

---

[10] Although *Torres* was temporarily overruled by *Hickox v. Stover,* 551 So. 2d 259 (Ala. 1989), the Alabama Supreme Court subsequently approved the *Torres* case in *Foremost,* when the court overruled *Hickox.* 693 So. 2d at 421.

[11] "Although the term 'inducement' has often been used in the description of the fourth element of suppression, it is clear that plaintiff's . . . 'reasonable reliance' . . . is an essential element of a suppression claim." *Alfa Life Ins. Corp. v. Green,* 881 So. 2d 987, 992 (Ala. 2003) (citations omitted).

> higher mortality charges and/or costs of insurance in order to
> subsidize high credited rates.

Compl. ¶ 35.  As an initial matter, the Alabama Supreme Court has explicitly held that an

insurer, absent special circumstances not present here, has no duty to disclose to a

policyholder how it calculates premium pricing.  *State Farm Fire & Cas. Co. v. Owen*,

729 So. 2d 834, 843 (Ala. 1998).  Indeed, the Supreme Court expressly criticized the

practical ramifications of imposing a duty on an insurer to disclose its pricing and other

internal procedures:

> To uphold [plaintiff's] claim we would have to rule that it is
> the responsibility of every insurer at the point of sale to
> explain fully to potential customers the insurer's internal
> procedures, its ratemaking process and its business practices.
> To impose that responsibility strikes us as highly impractical,
> and it is a responsibility we have not imposed in the past.

*Id.*[12]

Furthermore, "[w]hen a company discloses material facts in the written materials

provided to the insured, there is no suppression of fact."  *Brown v. Commonwealth Life

Ins. Co.,* 22 F. Supp. 2d 1325, 1330-31 (M.D. Ala. 1998) (citations omitted); *see also Ex

parte Alfa Mut. Fire Ins. Co.*, 742 So. 2d 1237, 1243 (Ala. 1999) ("Where the record

indicates that the information alleged to have been suppressed was in fact disclosed, and

there are no special circumstances affecting the plaintiff's capacity to comprehend, the

---

[12] *See also Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1313 (11th Cir. 2000)
("retailers are under no obligation to disclose their pricing structure to consumers"); *Ex parte
Ford Motor Credit Co.*, 717 So. 2d 781, 787 (Ala. 1997) (there is no "duty that would require the
seller of a good or service, absent special circumstances, to reveal to its purchaser a detailed
breakdown of how the seller derived the sales price of the good or service, including the amount
of profit to be earned on the sale").

plaintiff cannot recover for suppression."). Indeed, there can be no fraudulent suppression, even where the defendant purportedly "previously made an oral misrepresentation," where the alleged misrepresentation is contradicted by documents the plaintiff receives. *Brown,* 22 F. Supp. 2d at 1330 (quoting *Walker v. TranSouth Fin. Corp.,* No. 95-A-672-N, 1996 WL 406836, at *3 (M.D. Ala. July 10, 1996)).

In *Alfa Life Insurance Corp. v. Green,* 881 So. 2d 987 (Ala. 2003), the plaintiff brought claims of fraud and suppression arising out of the purchase of a whole life insurance policy. The plaintiffs alleged that they purchased the policy based on representations that no premiums would be required beyond the ninth year. *Id.* at 988-89. Plaintiffs were given a "Statement of Policy Values" at the time of purchase, however, that contradicted this alleged misrepresentation. *Id.* at 989. Similarly, plaintiffs' policy stated that additional premiums might be required to keep the policy in force if "interest paid is less than projected, or [] cost of insurance rates are increased." *Id.* at 990. Accordingly, the Alabama Supreme Court held that, as a matter of law, plaintiffs could not show reasonable reliance and plaintiff's suppression claim was due to be dismissed.

Here, plaintiff's Policy discloses all "material facts" regarding interest rates, costs of insurance, and premiums necessary to notify plaintiff of the nature of the product he purchased. In particular, the Policy disclosed that premiums were flexible (Policy at p. 1), that interest rates were subject to change (*id.* at p. 7), that the costs of insurance would increase every year (Policy at RLI 00007), that the amount and frequency of premiums would affect how long the insurance would remain in effect (*id.* at p. 4), and that the premium initially established was only guaranteed to keep the initial Policy terms

in effect for three years (*id.* at p. 2). Furthermore, the guaranteed maximum costs of insurance are not improperly "high" as alleged but rather are "based on the Commissioners 1958 Standard Mortality Table." *Id.* at p. 8.

For all of the above reasons, the plaintiff's fraudulent suppression claim should be dismissed. *See, e.g., Brown,* 22 F. Supp. 2d at 1331 (M.D. Ala. 1998).

### 3.    Counts III and IV should be dismissed for failure to state a claim for negligent or wanton hiring, training, or supervision

"A party alleging negligent or wanton supervision and hiring must . . . prove the underlying wrongful conduct of employees." *Voyager Ins. Cos. v. Whitson,* 867 So. 2d 1065, 1073 (Ala. 2003) (citing *Stevenson v. Precision Standard, Inc.,* 762 So. 2d 820, 825 (Ala. 1999)). Plaintiff cannot prove the alleged underlying wrong of ReliaStar's agent, *i.e.,* the alleged fraud, because plaintiff's claims are time barred and otherwise defective as a matter of law. *See, e.g., Evans v. Mobile Infirmary Med. Ctr.,* No. Civ.A. 04-0364-BH-C, 2005 WL 1840235, at *18 (S.D. Ala. Aug. 2, 2005) (tort claim that is time barred and otherwise due to be dismissed "cannot provide the basis to support a claim for negligent supervision"). Accordingly, the plaintiff's negligent and wanton hiring, training, and supervision claims should be dismissed.

### 4.    Count V of the complaint fails to state a claim that ReliaStar negligently or wantonly failed to procure a suitable product

Plaintiff's own contributory negligence bars his negligent failure to procure suitable insurance claim as a matter of law. *Kanellis v. Pac. Indem. Co.,* No. 2030860, 2005 WL 1253122, at *6 (Ala. Civ. App. May 27, 2005). In *Kanellis,* plaintiffs sued their insurer for negligent failure to procure insurance after the insurer refused to pay a

claim for diminution in value of their vehicle. *Id.* at 1. The Kanellises's written policy, however, provided no such coverage. *Id.* at *6. The court affirmed summary judgment for the insurer (relying on a plaintiff's duty to read his policy documents), and held that the Kanellises's claim was barred by "contributory negligence" which, under Alabama law, "is a complete defense to a claim based on negligence." *Id.* at *6 (citations omitted). In particular, the court held that by failing to read their policy and to discover the absence of purported coverage, "as a matter of law, the Kanellises put themselves in danger's way and had a conscious appreciation of the danger of suffering a monetary loss in the event of a collision . . . ." *Id.* (citing *Hannah v. Gregg Bland & Berry, Inc.,* 840 So. 2d 839, 860 (Ala. 2002) (internal quotations and alterations omitted)).

By failing to read his Policy and to discover that the Policy states that his initial $37.00 bi-weekly premium was only guaranteed to maintain $100,000 of coverage for three years, plaintiff was also negligent. Furthermore, plaintiff failed to notice that the Policy clearly states that it is a "Flexible Premium" policy and that plaintiff may "[c]hange the amount and frequency of [his] premium payments." The significance of plaintiff's negligence is underscored by plaintiff's failure to exercise his option to rescind the Policy under the ten-day free look period. Accordingly, as in *Kanellis,* plaintiff's claims are barred as a matter of law by his own contributory negligence. *See Torres,* 438 So. 2d at 759 (affirming summary judgment for the insurer where the failure to procure insurance "was attributable to the plaintiffs' carelessness and neglect").

### 5. Count VI of the complaint fails to state a claim for breach of contract

Plaintiff fails to state a claim for breach of contract. In addition to pleading the

existence of a valid contract binding the parties in the action, the plaintiff's performance under the contract, the defendant's nonperformance, and damages (*see*, *e.g.*, *Congress Life Ins. Co. v. Barstow*, 799 So. 2d 931, 937 (Ala. 2001)), to state a valid claim for breach of contract, the plaintiff *must* specifically identify a provision that was breached. *See*, *e.g.*, *Fike v. Stratton*, 56 So. 929, 934 (Ala. 1911) ("When a breach of contract is relied upon as the gist of the action or defense, it is necessary that the declaration or plea allege a breach, otherwise it will be demurrable."); *Campbell Constr. Eng'rs, Inc. v. Water Works & Sewer Bd.,* 290 So. 2d 194, 198 (Ala. Civ. App. 1974) ("[i]n order that a complaint withstand a demurrer," it must "set forth the essential terms of the contract with reasonable precision and with such certainty and particularity as to acquaint and apprise defendant in what particular he has failed to perform") (citations omitted); *Great Atl. & Pac. Tea Co. v. Summers*, 148 So. 332, 333 (Ala. Civ. App. 1933) ("A complaint for breach of contract must set forth the *essential facts of the breach* with such certainty as will apprise defendant in what particulars he has failed to perform.") (emphasis added).

Here, plaintiff's allegations regarding breach of contract consist of the following two sentences: "Defendant entered into a contract with Plaintiff. Defendant breached the terms of Plaintiff's contract." Compl. ¶ 52. Having failed to specify how the Policy was allegedly breached, plaintiff's breach of contract claim should be dismissed. *Great Atl. & Pac. Tea Co.,* 148 So. at 333 (demurrer should have been sustained where breach of contract claim failed to state the particulars that the defendant failed to perform).

## II.    PLAINTIFF'S NATIONWIDE CLASS ACTION ALLEGATIONS SHOULD BE STRICKEN

This Court should also strike the plaintiff's class action allegations because, on the face of the complaint, these claims present insurmountable problems of manageability. The plaintiff pleads an individual claim for "fraud" based on an alleged oral representation, while at the same time admitting that this Court would be forced to apply the laws of all 50 states. The complaint affirmatively pleads that the claims of the putative class would be "founded upon the common law of Alabama *and all other states in these United States*." Compl. ¶ 2 (emphasis added). Given this concession, under Eleventh Circuit law, a multi-state class is an impossibility as a matter of law.

The plaintiff seeks compensatory and punitive damages on claims of fraud, negligence, wantonness, and breach of contract. Compl. ¶¶ 2-3. The Eleventh Circuit has held that certifying a nationwide class is not feasible where fifty states' laws must be applied because "even where state laws differ only in nuance, nuance can be significant, leaving [a] district court with the *impossible task* of instructing a jury on the relevant law." *Andrews v. Am. Tel. & Tel. Co.,* 95 F.3d 1014, 1024 (11th Cir. 1996) (emphasis added) (citations and internal quotations omitted). Similarly, in *Sikes v. Teleline, Inc.,* 281 F.3d 1350, 1367 n.44 (11th Cir. 2002), the Eleventh Circuit determined that the application of the fifty states' laws "alone would render the class unmanageable." (citing *Andrews,* 95 F.3d at 1024; *Castano v. Am. Tobacco Co.,* 84 F.3d 734, 741-43 & n.15 (5th Cir. 1996) (differences in the states' fraud and negligence laws preclude nationwide certification); *In re Rhone-Poulenc Rorer Inc.,* 51 F.3d 1293, 1300-01 (7th Cir. 1995) (differences in the states' negligence laws render a nationwide class unmanageable)).

26

Accordingly, by conceding on its face that the law of all 50 states would need to be applied, the complaint renders a national class untenable as a matter of law. The Court should strike and dismiss the national class action allegations.

The district court faced a similar situation in *Chilton Water Authority v. Shell Oil Co.,* No. Civ. A. 98-T-1452-N, 1999 WL 1628000, at \*8 (M.D. Ala. May 21, 1999). In *Chilton*, the plaintiff brought a putative nationwide class action alleging claims of fraud and negligence. On the defendant's motion to strike, this Court struck the nationwide class allegations as "unmanageable." *Id.* at \*8. The Court held that "fraud is inherently an ***inappropriate claim*** to be resolved on a nationwide class basis" because of differing state standards on reliance and the duty to disclose. *Id.* at \*7 (emphasis added) (citing *Mack v. Gen. Motors Acceptance Corp.,* 169 F.R.D. 671, 677-78 (M.D. Ala. 1996)). The Court found that the "same problems which plague[d] plaintiffs' fraud claims also plague[d] their negligence claim." *Id.* at \*8. The Court held that:

> The law of negligence, including subsidiary concepts such as duty of care, forseeability, and proximate cause may . . . differ among the states only in nuance, . . . [b]ut nuance can be important, and its significance is suggested by a comparison of differing state pattern instructions on negligence and differing judicial formulations of the meaning of negligence and the subordinate concepts.

*Id.* (alteration in original) (citing *In re Am. Med. Sys., Inc.,* 75 F.3d 1069, 1085 (6th Cir. 1996)); *see also In re Rhone-Poulenc,* 51 F.3d at 1300-01 ("The voices of the quasi-sovereigns that are the states of the United States sing negligence with a different pitch."). Further, the Court found that plaintiff's request for punitive damages "also complicate[d] resolution of this matter on a class basis [because] . . . [s]tates differ in

27

their treatment of punitive damages." *Chilton,* 1999 WL 1628000, at \*8 (citing *Mack,* 169 F.R.D. at 678); *accord Dubose v. First Sec. Sav. Bank,* 183 F.R.D. 583, 588 (M.D. Ala. 1997)).[13]

In this case, the plaintiff's fraud, negligence, and breach of contract claims, which are further complicated by plaintiff's request for punitive damages, are inherently unmanageable and impossible to adjudicate in a class action. Moreover, the plaintiff's claims could never be properly certified because they would involve countless individual issues arising out of each policyholder's individual transaction and unique circumstances. *See, e.g., Sikes,* 281 F.3d 1350, 1365 (11th Cir. 2002) (decertifying putative RICO mail and wire fraud class because "class members must show, *on an individual basis,* that they relied on the misrepresentations") (emphasis in original) (quoting *Andrews v. Am. Tel. & Tel. Co.,* 95 F.3d 1014, 1023 (11th Cir. 1996) (decertifying RICO fraud class); *Briggs v. Countrywide Funding Corp.,* 183 F.R.D. 576, 582 (M.D. Ala. 1997) ("there appears to be no way to resolve the reliance issue on a class wide basis") (citations and internal quotations omitted); *Dubose v. First Sec. Sav. Bank,* 183 F.R.D. 583, 588 (M.D. Ala. 1997) ("[r]esolution of [fraud] claims . . . will require the court to examine the facts and circumstances of each individual case"); *Mack,* 169 F.R.D. at 678 ("resolving the issue of reliance will require the court to examine the representations made . . . to each

---

[13] In the same way, a breach of contract claim can prove impossible to manage on a nationwide basis because "the Court would have to conduct thousands of fact-intensive mini-trials to determine breach and damages with respect to each [class] member's contract-based claims . . . [and] the laws of 50 jurisdictions would be applicable to these claims." *Clopton v. Budget Rent A Car Corp.,* 197 F.R.D. 502, 509 (M.D. Ala. 2000) (citations omitted); *accord Shelley v. AmSouth Bank,* No. Civ.A.97-1170-RV-C, 2000 WL 1121778, at \*11 (S.D. Ala. July 24, 2000) (breach of contract claim "raises individual issues that predominate over common issues"), *aff'd,* 247 F.3d 250 (11th Cir. 2001).

claimant"). Accordingly, the plaintiff's class allegations should be stricken.

## CONCLUSION

For the reasons set forth above, the complaint is barred by the statute of limitations and the plaintiff's claims are otherwise defective as a matter of law. In addition, plaintiff's class action allegations are legally untenable. Accordingly, this Court should enter an Order granting this Motion, dismissing the complaint in its entirety, and striking the class action allegations.

Respectfully submitted,

_____

Michael L. Bell, Esq. (BELLM6182)
S. Andrew Kelly, Esq. (KELL3760)
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, Alabama 35203-3200
Telephone: (205) 581-0700
Facsimile: (205) 581-0799

*Attorneys for Defendant*
*ReliaStar Life Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of December, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Jere L. Beasley, Esq. (libby.rayborn@beasleyallen.com)
W. Daniel Miles, III, Esq. (dee.miles@beasleyallen.com)
Joseph H. Aughtman, Esq. (jay.aughtman@beasleyallen.com)
John E. Tomlinson, Esq. (john.tomlinson@beasleyallen.com)
Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
P. O. Box 4160
Montgomery, AL  36103-4160

143792