IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

WILLIAM LEONARD, JR.                        *

       *

    Plaintiff,                           *

       *

    v.                                *    **CASE NUMBER 3:05-cv-1015F**

       *

**RELIASTAR LIFE INSURANCE**    *

**COMPANY f/k/a NORTHWESTERN**    *    **ORAL ARGUMENT REQUEST**

**NATIONAL LIFE INSURANCE**    *

**COMPANY,**                         *

       *

**Defendants.**

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS THE COMPLAINT AND TO STRIKE CLASS ACTION CLAIMS, OR, ALTERNATIVELY MOTION TO STAY AND CONDUCT DISCOVERY

Defendant Reliastar Life Insurance Company has moved this Court to dismiss Plaintiff's claims based upon *Federal Rules of Civil Procedure*, 12(b), and to strike Plaintiff's class action claims. As Plaintiff will demonstrate to the Court herein, said motion should be denied in its entirety. Additionally, pursuant to Rule 15(a) of *Fed. R. Civ. P.*, a plaintiff may amend his complaint without leave of court "once as a matter of course at any time before a responsive pleading is served." The Defendant's Motion to Dismiss is not a responsive pleading. *Howard v. American Medical Security Insurance Co.*, No. 1:00-CV-238-LC, 2000 WL 1137238, at * 2, FN4. See also *United States v. Gericare Medical Supply INC.*, et al., 2000 WL 33156443 (S.D.Ala.) at *4. Therefore, Plaintiff has filed with the Court an amended complaint to plead more specifically Plaintiff's discovery of the alleged fraud and breach of contract claim (See Plaintiff's First Amended Complaint, attached as Exhibit "A").

## INTRODUCTION

As the Court will note through the arguments brought by Defendant in their Motion to Dismiss, they attempt to argue summary judgment evidence to the Court. For example, Defendant brings forth references to annual reports, which they claim were received by Plaintiff, and make statements as to what these annual reports allegedly explain to Plaintiff.[1] As the Court will note in Plaintiff's Original Complaint, and Amended Complaint (attached as Exhibit "A"), there is no reference to any annual reports or any other documents other than the insurance policy purchased by the Plaintiff. Furthermore, Defendant's statements regarding Plaintiff's receipt of, or understanding of any such information allegedly in his possession are clearly outside the scope of the pleadings.

Remarkably, Defendant even attempts to introduce evidence to the Court regarding the history of interest rates, and makes baseless evidentiary assertions that Plaintiff ignored declining interest rates. Of course, this information is neither referenced in Plaintiff's Complaint, nor does Defendant have any evidence or testimony from Plaintiff regarding whether he ever received, had knowledge of, or ignored any such information. Defendant further asserts that Plaintiff knew exactly how much the Term Insurance Rider cost even though they have no testimony from Plaintiff regarding his knowledge as to the cost of the Term Rider or how this related to the under-funding of his policy, or other allegations in Plaintiff's Complaint. In addition, Defendant apparently attempts to sway the Court with a reference to a legal publication [Kenneth Black, Jr. AND Harold D. Skipper, Jr., LIFE INSURANCE at 39(13th ed. 2000)], whereby they footnote a description of Universal life policies as "transparent" "because the policyholder can see exactly how the policy is

---

[1] See Defendant's Motion pg 2,3

performing"[2]. Needless to say, this information was also not referenced in Plaintiff's Complaint and is clearly outside the pleadings.

Therefore, Defendant has incorrectly stated the law as it applies to balancing a Motion to Dismiss with a Motion for Summary Judgment. Based upon Defendant's own reasoning, the Court should hold Defendant's Motion to Dismiss as a Motion for Summary Judgment because of Defendant's failure to properly comply with the *Federal Rules of Civil Procedure*. Defendant has referenced documents to this Court that are not part of or referred to in Plaintiff's Complaint in any form or fashion. To state otherwise is inaccurate. Defendant has clearly turned their Motion to Dismiss into a Rule 56, *Fed. R. Civ. P.* Motion for Summary Judgment and the Plaintiff urges the Court to rule on it as such.

Alternatively, because Defendant has brought in evidence outside the pleadings (Complaint) filed by the Plaintiff in this action, Plaintiff moves the Court to stay any ruling on the Defendant's motion and allow Plaintiff the opportunity to conduct discovery. Defendant has intentionally attempted to put the Plaintiff at a disadvantage by steering this Court to documents and information outside the scope of his Complaint and they should not be allowed to do so.

## STANDARD OF REVIEW

When considering a motion to dismiss pursuant to Rule 12(b)(6), *Fed. R. Civ. P.*, a court must accept the allegations in the complaint as true, construing them in the light most favorable to the Plaintiff. *See White v. Lemacks*, 183 F. 3d 1253, 1255 (11th Cir. 1999) (citing *Roberts v. Florida Power & Light Co.*, 146 F. 3d 1305, 1307 (11th Cir. 1998), cert denied, 525 U.S. 1139, 119 (S. Ct. 1027, 143 L. Ed. 2d 38 (1999)). A Rule 12(b)(6) motion

---

[2] See Defendant's Motion pg 5

should be granted only if it appears **beyond** doubt that the plaintiffs can prove no set of facts in support of their allegations, which would entitle them to relief. *Id.*

In describing the standard of review of Rule 12(b)(6) motions to dismiss the U.S. Court of Appeals for the Eleventh Circuit has held that "in evaluating the sufficiency of the pleading attacked on motion, both the district court and this court are required to construe the complaint in the light most favorable to the plaintiff and to take the allegations contained therein as true. The Plaintiff need not set forth all the facts upon which the claim is based; rather, a short and plain statement of the claim is sufficient if it gives the defendant fair notice of what the claim is and the grounds upon which it rests." *Harris v. Proctor & Gamble Celluose Co.,* 73 F. 3d 321, 324 (11th Cir. 1996). (citing) *Mann v. Adams Realty Co., Inc.,* 556 F. 2d 288, 293 (5th Cir. 1997)).

It is clear from a review of the Complaint and Amended Complaint filed in this action, that Plaintiff has set forth plain statements to support the claims of fraudulent misrepresentation, fraudulent suppression, et al. (See Exhibit "A" " Copy of the Amended Complaint").

## ARGUMENT

### I.   Plaintiff's Claims for Fraud and Suppression Are Not Barred By the Statute of Limitations

The Defendant attempts to attack Plaintiff's claims of fraudulent misrepresentation and suppression on the basis of the statute of limitations. Defendant also alleges that the Plaintiff has not satisfied his burden to establish tolling of the statute of limitations. As the Court is aware, the statute of limitations for fraud-based actions is two years in the state of Alabama. The two-year statutory period for filing a fraud action begins to run only when

the Plaintiff discovers, or should have discovered, the fraud perpetrated upon him. *Code of Alabama,* 1975 § 6-2-3. As stated, Alabama has a **tolling provision** for causes of action sounding in fraud. Typically, the question of when a Plaintiff should have discovered the fraud perpetrated upon him should not be taken away from the jury unless the Plaintiff actually had knowledge of the facts that would put a reasonable person on notice of the fraud. *Lambert v. Bill Heard*, 695 So. 2d 15 (Ala.Civ.App. 1996); *Liberty Nat. Life Ins. Co. v. McAllister*, 675 So. 2d 1292 (Ala. 1995).

Defendant asserts that Plaintiff cannot rely on the discovery rule to toll the limitations period because the Policy was sufficient to put any reasonable person on notice of the alleged fraud, and therefore, his fraud claims are time barred by the two-year statute of limitations. Contrary to Defendants' assertions, the policy language is at best ambiguous and does not come close to addressing what Plaintiff has pled in his Complaint.

First, let us address the specific fraud, suppression and concealment claims being brought by the Plaintiff in this case. Plaintiff has pled that Defendant convinced him to buy life insurance and represented that the **initial premium established and required by Defendant** was and would always be adequate to fund the original policy (Exhibit "A", paragraph 28). It is important for the Court to note that contrary to what Defendant asserts in their motion about the Plaintiff determining the amount and frequency of the premium payments[3], Plaintiff alleges in his Complaint that **it was Defendant that established and required the amount and frequency of the premium to be paid for the policy.** Additionally, Plaintiff has pled that Defendant fraudulently failed to disclose to him that the insurance product he purchased was under-funded and inherently

---

[3] See Defendant's Motion at pg 2

problematic from inception in that the Plan 3 universal life policy sold in conjunction with the term insurance rider would eventually lapse the policy prior to its maturity date regardless of whether credited interest rates declined. **In response to Defendant's erroneous assertion that "Plaintiff offers no explanation as to why he did not discover his alleged claim nineteen years ago when the policy was issued"[4]**, Plaintiff has clearly pled in his Amended Complaint the following: that the defective policy designs and their effect on the Plaintiff's policy were not disclosed to Plaintiff; they were withheld so Plaintiff could not discover the true nature of the insurance product sold by Defendant; they involve complicated accounting and actuarial formulas beyond Plaintiff's reasoning and comprehension; and that any disclosures made by Defendant were inadequate, unreasonable, fraudulent, and beyond Plaintiff's reasoning and understanding. Plaintiff has also pled that Defendant **actively suppressed and concealed** from Plaintiff the true nature of what he was buying, how it worked and the risks associated with such a product. (Exhibit "A", ¶¶ 37, 38, 39 and 40).

The Plaintiff's policy does not disclose that that the initial premium established and required by Defendant would be insufficient to fund the policy. Defendants erroneously argue in their motion that the following specific policy language discloses this very information to the Plaintiffs:

> The amount and frequency of premium payments will affect the accumulation value and cash value and how long the insurance will remain in effect[5]

Contrary to Defendant's assertion, the policy language is ambiguous and unclear as to whether Plaintiff's established periodic premiums will be insufficient to maintain the

---

[4] See Defendant's Motion at pg 3

policy. In fact, the policy language could easily be interpreted to mean simply that if a policyholder does not pay his planned premium on time that he could lose his insurance. Plaintiff has not alleged in the Complaint that he was told he did not have to pay his scheduled premium payments and would still keep his policy, only that the specific premium established and required by Defendant was and would always be sufficient to fund the policy. Also, the policy language certainly does not disclose the fact that the sale of Plaintiff's base universal policy with the term insurance rider would ensure the policy's eventual collapse. The policy language does not come close to disclosing the effect the excess costs associated with the term rider will have on the Plaintiff's accumulation value of his base universal life policy and the life of the policy.

The remaining policy language referenced by Defendant in support of their argument discussing **grace periods** and cash values minus **policy loans**, and monthly deductions, is also equally ambiguous as to whether the specific premiums set by ReliaStar and required of Plaintiff, would be insufficient to sustain the policy and death benefit. This language is also completely silent as to the policy's problematic design inherent with the term insurance rider, which eventually leads to a policy's demise. The fraud and suppression alleged by Plaintiff involves very complicated actuarial and accounting procedures and formulas. There is no disclosure whatsoever in the policy that would have put Plaintiff, or anyone else who purchased this type policy, on notice of the fraud and suppression alleged in the Complaint. **Therefore, Plaintiff has sufficiently met his burden for establishing the requirements for tolling the statute of limitations.**

---

[5] See Defendant's Motion to Dismiss, pg 6.

Additionally, Defendant cites *Owens v. Life Insurance Co. of Georgia*, 289 F. Supp. 2d 1319, 1325 (M.D. Ala. 2003), *Foremost Insurance Company Co. v. Parham*, 693 So. 2d 409, 421 (Ala. 1997), and *Liberty National Life Insurance Co. v. Ingram,* 887 So.2d 222, 223-24 (Ala. 2004), in support of their argument that Plaintiff's fraud and suppression claims are time-barred. There are clear distinctions between the facts as plead in the Present case and the abovementioned cases relied on by Defendants. The claims asserted in all three of these cases, involved the payment of premiums for a specified period of time and then no further premiums from the policyholder would be required, otherwise known as a "vanishing premium" or "paid up" policy. In contrast, THIS CASE involves claims of a fixed or level premium amount continued throughout the life of the policy without reductions in death benefits, and the primary allegation of a defective or deficient policy design, which contributes to the policy's premature demise. Furthermore, as the Court will observe, none of the cases relied on by the Defendant involve a motion to dismiss.

Contrary to Defendant's assertions, the Court in *Owens*, does not base its ruling on the plaintiff's allegation that the agent represented that the amount of insurance coverage would never fall below the face amount of $15,000. The Court specifically addresses the alleged oral misrepresentations by the agent regarding the number of years premiums are payable under the policy, or, more specifically, that the policy would be a "paid up" policy upon plaintiff's reaching age sixty-two. *Id* at p. 1321. The Court observed that the Policy visually indicated the payment of additional premiums for several more years after the plaintiff turned 62 years old. This visual numeric information, regarding the number of premiums payable, directly contradicted the alleged oral representation by the agent. Therefore, the Court acknowledged that the plaintiff should have been on notice of the

pertinent terms of the policy when he received it *Owens*, 289 F. Supp. 2d at pg1325. Obviously, the facts in the Present Case are clearly distinguishable from those in *Owens* because the Plaintiff's policy does not visually or specifically address what is pled in Plaintiff's Complaint. Interestingly, the Court in *Owens* further acknowledges that "Under Alabama law, an individual is not capable of discovering a fraud or negligent misrepresentation by reading and understanding the terms of a contract …………… if the underlying document is ambiguous, i.e., capable of more than one interpretation, and thus hard to understand." *id* at p. 1326. In *Ingram,* the plaintiff also alleged that he purchased a life insurance policy based on misrepresentations that the policy would be "paid up" in 10 years. *Id* at p. 223. Similar to the facts in *Owens,* the plaintiff Ingram was given policy documents and tables that **visually** indicated premiums being paid beyond the promised time period. *Ingram,* 887 So.2d 222, 223-24

As referenced above, Plaintiff's policy is ambiguous at best with regard to Plaintiff's premium being insufficient to fund the policy, and also is completely silent as to the policy's problematic and/or defective design. These circumstances are distinguishable from the circumstances in *Foremost*, *Owen and Ingram* because the language of the contracts along with the documents in those cases were much clearer and less ambiguous than the language contained in Plaintiff's policy. Also, there is no language in the policy relating to the "core" of Plaintiff's suppression claim regarding the term insurance rider and its excessive costs. Even if it is disputed as to when Plaintiff discovered the fraud, the law in Alabama is well settled that the statute of limitations for fraud begins to run only when a Plaintiff discovers the fraud. *Kelly v. Connecticut Mutual Life Insurance Co.,* 628 So. 2d 454 (Ala. 1993). The question of when a plaintiff discovered

or should have discovered the fraud is reserved for the jury. *Kelly*, 628 So. 2d at 458. That question should be taken from the jury and decided as a matter of law only in cases where the plaintiff actually knew facts that would put a reasonable person on notice of the fraud. *Hicks v. Globe Life and Accident Insurance Company*, 584 So. 2d 458 (Ala. 1981). Furthermore, based on the Alabama Supreme Court's reasoning in *Potter*, *supra*, under the reasonable reliance standard, evidence showing that a clear and unambiguous document was submitted to a literate person at the time of purchase does not always trigger the running of the statute of limitations on a fraud claim. *Id.*

Defendant also asserts that the Plaintiff has not pled the tolling of the statute of limitations with the requisite particularity. Defendant argues that the Plaintiff's Complaint fails to allege any facts from which it can be determined when or how he allegedly discovered the fraud. Although Plaintiff believes he has previously pled the tolling with the sufficient particularity and has provided Defendant with the requisite information, Plaintiff has voluntarily filed his First Amended Complaint with the Court (See Plaintiff's First Amended Complaint attached as Exhibit "A") that sets out in greater detail the time and circumstances surrounding Plaintiff's discovery of Defendant's fraudulent conduct. The additional information pled in the Amended Complaint should make Defendant's argument regarding this issue moot. If the Court still finds that the Plaintiff needs to amend his Complaint to plead additional facts, Plaintiff will be happy to comply with the Court's request.

Therefore, Plaintiff has sufficiently met his burden for establishing the requirements for tolling the statute of limitations and Defendant's Motion should be denied.

**II.     Plaintiff Has Alleged Sufficient Facts to State a Claim for Fraud.**

Defendant argues that Plaintiff's fraud claim must fail because he could not have reasonably relied on the representations made by Defendant. In Alabama, the standard of review applicable regarding reliance is reasonable reliance. *Foremost Ins. Co. v. Parham*, 693 So. 2d 409 (Ala. 1997). In *Foremost*, the Alabama Supreme Court revived reasonable reliance as an element of fraud. The court stated that returning to "the reasonable reliance standard" provided "a more practical standard that [allows] the fact finder greater flexibility in determining the issue of reliance based on all the circumstances surrounding a transaction, including the mental capacity, educational background, relative sophistication, and bargaining power of the parties." *Id.* at 41. Additionally, the Alabama Supreme Court emphasized that "a return to the reasonable reliance standard will once again provide a mechanism . . . whereby the trial court can enter a judgment as a matter of law in a fraud case where the **undisputed evidence** indicates that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, **but nonetheless made a deliberate decision to ignore written contract terms**." *Id.* at 421 (Emphasis Added).

The Defendant incorrectly asserts that Plaintiff's claims fail as a matter of law for lack of reasonable reliance. In doing so, the Defendant stretches the principles of *Foremost, supra* too far. Plaintiff does not contend in any way that he ignored any written terms regarding the insurance policy at issue. To the contrary, Plaintiff will testify he attempted to read and understand the policy to the best of his ability, but unfortunately could not understand all of the information. Plus, the policy does not address all the issues Plaintiff raises in his Complaint. Therefore, the only issue the Court has to decide is

whether at this stage of the litigation Plaintiff could have been reasonable in trying to understand the policy based on the information communicated to him by Defendant. To go further is summary judgment evidence.

In Defendant's Motion, they cite *Baker v. Metropolitan Life Insurance*[6] to support their position that Plaintiff could not have reasonably relied on statements that contradicted written documents in his possession. There are differences between the facts in THIS case and the above- mentioned case relied on by the Defendant. The claims asserted in *Baker*, involved the payment of premiums for a specified period of time and then no further premiums from the policyholder would be required, otherwise known as a "vanishing premium". In contrast, THIS CASE involves claims of a fixed or level premium amount continued throughout the life of the policy without reductions in death benefits, with the primary issue being a defective or deficient policy design that substantially contributes to the policy's demise.

In *Baker*, the plaintiff received a premium schedule that **visually indicated** premiums being paid on the policy beyond the specified time period that the plaintiff alleges he was told he would not have to pay. Contrary to the circumstances in *Baker,* the Plaintiff's policy in THIS CASE obviously does not come close to disclosing what the Plaintiff has pled in his complaint. The Court in *Baker* went on to state: "In light of the language contained in the documents surrounding this transaction, and in light of *Ingram* and *Green*, we conclude that Baker (plaintiff) has not produced **substantial evidence** indicating that his reliance, if any, on Baldridge's (defendant agent) alleged misrepresentation was reasonable". id at p. 423. Obviously, those courts at least allowed the plaintiffs to develop

---

[6] *Baker v. Metropolitan Life*, 2005 WL 78774 (Ala. Jan. 14, 2005).

and present evidence to prove their cases. The present Plaintiff asks this Court to allow him the same opportunity.

In *Potter v. First Real Estate Co.,* 844 So. 2d 540 (Ala. 2002), the Alabama Supreme Court stated:

> "Viewing the Foremost Court's description of the problem in *Hicks* as permitting a fraud case to go to the jury in all circumstances where all the plaintiff had to say was that he did not, in fact, know what the contract said, **it is consistent with Foremost to recognize a jury question in a fraud case where the plaintiff's ignorance of the contents of a document is reasonable under the circumstances.**"

(Emphasis Added).    The Defendant does not want to give the Plaintiff the chance or benefit of testimony about her "reliance" or not. If the Court will note, none of the cases relied on by the Defendant involve a motion to dismiss. *Foremost* cannot be applied absent this Plaintiff and Defendant's testimony and all the documents, which are unilaterally held by the Defendant.

Upon further analysis, *Southern Building and Loan v. Dinsmore*, 225 Ala. 550, 144 So. 21 (1932), the Alabama Supreme Court in *Potter* concluded:

> "Pre-*Hicks* precedent in this State--allowing a fraud case to go to a jury on the issue of reasonable-reliance, even when the plaintiff had documents in hand that he or she could have read, and, if read, were inconsistent with the statements allegedly relied on--**indicates that *Foremost*, with its return to the reasonable-reliance standard, does not always require a summary judgment for the defendant whenever the closing documents contradict the allegedly fraudulent misrepresentation.** In our willingness to eliminate a standard that recognized a jury question whenever a plaintiff simply failed to read the agreement, we must avoid embracing a rule, inconsistent with our settled precedent, that would tolerate abuse of special relationships, particularly involving artifices to deceive as to the content of documents when presented at the time the agreement is memorialized. **The challenge is to recognize those circumstances that**

13

> make reliance reasonable even in the face of a clear
> contract document stating the fact alleged to have been
> misrepresented without setting a standard that returns us
> to the rule of *Hicks* ............ Fortunately, *Dinsmore* and
> the pre-justifiable-reliance cases applying it spare us the task
> of reinventing the wheel. Moreover, the rule in *Dinsmore*
> falls within the mainstream of American jurisprudence. See
> *Comment to Restatement (Second) Torts section 545A.*"

(Emphasis Added).

There is no evidence before this Court that Plaintiff made a deliberate decision to ignore written terms. The written language is, at best, ambiguous as to Plaintiff's claims as pled. Frankly, the Court should be able to see that the language relied upon by the Defendant does not completely address Plaintiff's claims in his Complaint. Based on Plaintiff's Complaint, it cannot be said that Plaintiff "blindly" trusted the Defendant where he should not have. The Plaintiff reasonably relied on Defendant and has stated a viable claim for fraud. Therefore, Defendant's Motion should be denied as to Plaintiff's fraud claim.

**III.    Plaintiff Has Alleged Sufficient Facts to State a Claim for Suppression, Concealment, and Failure to Disclose**

Defendant argues that Plaintiff's suppression claim must fail because Defendant had no duty to disclose. The Defendants rely on *State Farm Fire & Cas. Co. v. Owen*, 729 So. 2d 834 (Ala. 1998), to try and convince the Court there is no duty to disclose involving an insurance company. In *Owen*, the court established that the question of whether there exists a duty to disclose is a matter of law for determination by the Court. *Owen*, 729 So. 2d at p. 840. The facts in *Owen* are completely distinguishable from the facts presently before this Court. In *Owen*, the plaintiff sued State Farm alleging that plaintiff's personal articles insurance policy premium was based internally on the

"appraised value" of the jewelry being insured, but the policy only allowed her the "replacement costs" of the jewelry. Plaintiff alleged that the replacement cost was lower than the appraised value. *Owen,* 729 So. 2d at p. 836. The Supreme Court held that there was no duty to disclose the behind-the-scenes premium rate established by the Defendant, for the Plaintiff's for the plaintiff's personal articles insurance policy.

As the Court can see, the facts alleged in *Owen* are very different than the facts alleged in the present case. Presently, Plaintiff alleges that he was promised and guaranteed certain coverage, provisions, and premiums by the Defendant. There are no such facts or promises in the *Owen* case. In *Owen,* the Defendant did not promise or guarantee the plaintiff would receive "appraisal value". The State Farm contract reached between the parties, set out that "replacement value" would be paid. There were no allegation that State Farm promised nor guaranteed "appraisal value" would be paid. The difference presently before the court is the fact Plaintiff has alleged he is not, did not, and will not receive what the Defendant promised. This is a very distinct difference from *Owen.*

Defendant failed to disclose to Plaintiff that the policy he purchased was under-funded and inherently problematic from inception. The Plan 3 universal life policy sold in conjunction with the term insurance rider lapses the policy prior to its maturity date regardless of whether credited interest rates decline. The excess costs associated with the term rider design and the effect it would have on Plaintiff's policy were not disclosed to Plaintiff. There is no case law in Alabama, or elsewhere to Plaintiff's knowledge, which states that the failure to disclose an intentional fraudulent product design and intentional

scheme to defraud a policyholder are issues which an insurer can conceal from the policyholders.

The Defendants cannot claim they have no duty to disclose an intentional scheme to defraud the Plaintiff. *Code of Alabama,* §6-5-102 (1975) provides, "suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." See also, *Bethel v. Thorn*, 757 So. 2d 1154, 1162 (Ala. 1999) and *Deupree v. Butner,* 522 So. 2d 242, 244-245 (Ala. 1988). It is obvious from Plaintiff's allegations that his primary objective in purchasing the policy of insurance was to be able to keep his established premium and keep the insurance policy in-force until the maturity date. If the Defendants have intentionally designed and marketed an insurance product that was under-funded and doomed from inception, preventing Plaintiff from keeping his coverage and premium through the life of the policy, then the scheme, pricing, and development of the product in that regard are discoverable and a duty to disclose should be imposed upon the Defendant. Therefore, the Plaintiff has stated a viable claim for suppression, concealment and failure to disclose and Defendant's Motion should be denied as to these claims.

**IV.    Plaintiff's Claims for Negligence, Wantonness and Breach of Contract are not Barred by the Statute of Limitations**

Defendant argues that Plaintiff's claims for negligence and wantonness are time barred. While there is no savings clause concerning negligence or wantonness, the Alabama Supreme Court has addressed the statute of limitation issue as it pertains to negligence and

wantonness in a fraudulent transaction. In the case of *Bush v. Ford Life Ins. Co.*, 682 So. 2d

46 (Ala 1996), a negligent procurement case, the Court stated as follows:

> "[A] cause of action accrues when a loss that would trigger
> liability under the policy occurs. *Hickox v. Stover,* 551 So.
> 2d 259, 264 (Ala. 1989). In *Weninegar v. S. S. Steel & Co.,*
> 477 So. 2d 949, 956 (Ala. 1985), the Weninegars filed a
> negligence action against an insurance agent for allowing a
> flood insurance policy to lapse. The Court held that no legal
> injury occurred until the Weninegars' house was flooded and
> the insurer refused to cover the loss.
>
> Here, the event that triggered liability under the policy was
> the death of Ms. Bush, followed by Ford Life's December 14,
> 1990, refusal to honor Mr. Bush's claim. Mr. Bush filed his
> negligent procurement claim against Ben Atkinson on
> December 11, 1992, within the two years allowed by the
> statute of limitations." *Bush v. Ford Life Ins. Co.*, 682 So. 2d
> 46 (Ala 1996)

*supra,* at p 47.

As noted in *Bush*, **the Plaintiff could not have known of any negligence or**

**wantonness the Defendant until he discovered the fraud on or about 2005**, which would

have triggered the Defendant's liability concerning any claims of negligence and/or

wantonness. Simply put, Plaintiff had no injury on these particular claims until he

discovered the fraud. Therefore, he had two years from the time of said injury to file the

negligence and/or wantonness claims against the Defendant. That he did.

Furthermore, the Alabama Supreme Court has more recently spoken to the statute of

limitations issue as it regards negligence. In *Floyd v. Wilson*, 796 So. 2d 303 (Ala. 2001)

the court held that, "there are cases where the act complained of does not itself constitute a

legal injury at the time, but plaintiff's injury only comes as a result of, and in furtherance

and subsequent development of, the act defendant has done. In such cases, the cause of

17

action accrues, and the statute of limitations begins to run, when, and only when, the damages are sustained." *Id.* at 4, citing *Kelley v. Shropshire,* 199 Ala. 602, 605, 75 So. 291, 292 (1917). The court went on to opine that, "if the act complained of does not in and of itself constitute a legal injury on the date on which it was performed, the cause of action does not accrue on that date. It is only when the first legal injury occurs that the cause of action accrues and the limitations period begins to run." *Id.* at 4.

In *Floyd,* the court eventually decided that the claims of negligence were not time barred by the statute of limitations, but rather, that the earliest the limitations period could run on the claim would have been the time when actual damage was incurred as a result of the negligent actions. *Id.* at 5. This clearly supports Plaintiff's position in this case.

In addition, Defendant asserts that Plaintiff's claim for breach of contract is also time Barred. Plaintiff's Amended Complaint alleges the following:

> Defendant entered into a contract with Plaintiff to provide Plaintiff with a base universal life policy along with an additional term insurance rider for a specified planned periodic premium. The planned periodic premium included separate allotted premium amounts to cover the costs associated with each specific coverage. Defendant has breached the terms of Plaintiff's contract **by continually deducting undisclosed and excess costs associated with Plaintiff's term insurance rider from the accumulation value of Plaintiff's base universal policy.** As a result of this breach of contract, plaintiff was injured as alleged above…. (Plaintiff's Amended Complaint ¶¶ 54, 55)

It is clear from what Plaintiff has pled that a separate breach occurred upon each and every occurrence that Defendant deducted excess costs associated with the term insurance rider from Plaintiff's base policy accumulation value throughout the existence of the policy. Therefore the alleged breaches were well within the 6-year statute of limitations for a breach of contract action. Defendant's argument that the only breach could have possibly occurred in 1986 is misguided. Furthermore, the cases cited by Defendant do not involve motions to

dismiss. Plaintiff should be allowed the opportunity to conduct discovery and further pursue his claims for breach.

## V.    **Plaintiff Has Alleged Sufficient Facts to State a Claim for Negligent or Wanton Failure to Procure a Suitable Product.**

Defendant asserts that Plaintiff's own contributory negligence bars his negligent failure to procure insurance claim. Defendant argues that Plaintiff was negligent by failing to read his policy. First, Defendant has no evidence or testimony from Plaintiff that he did not read his insurance policy, but yet again, Defendant makes baseless assumptions as to what Plaintiff did or didn't do. It would also be premature at this stage in the litigation to make assumptions regarding Plaintiff's understanding of the policy language absent the actual testimony of Plaintiff. Second, as previously addressed in the sections above dealing with the issues of statute of limitations and reasonable reliance, Plaintiff's policy is ambiguous at best with regard to Plaintiff's premium being insufficient to fund the policy, and is completely silent as to its problematic and/or defective design. Finally, Defendant's reliance on *Kanellis v. Pac. Indem. Co*, No. 2030860, 2005 WL 1253122 (Ala. Civ. App. May 27, 2005) is misguided as the facts and circumstances are clearly distinguishable from what Plaintiff has pled in his complaint. Plaintiff's allegations clearly demonstrate that Defendant failed to procure the insurance policy, which was represented to the Plaintiff, and for which the Plaintiff paid for. It is also clear from the allegations and facts described above that the negligent or wanton failure to procure insurance was solely attributable to Defendant and not Plaintiff *See Complaint.* Therefore, the Defendants' motion should be denied as it regards to Plaintiff's claims for negligence and/or wanton failure to procure.

**VI.     Plaintiff Has Alleged Sufficient Facts to State a Claim for Negligent or Wanton Hiring, Training, or Supervision.**

Defendant erroneously asserts that Plaintiff cannot prove the alleged underlying wrong of

ReliaStar's agent, because Plaintiff's tort claims are time barred and otherwise defective

as a matter of law, and therefore, the claims for negligent or wanton hiring, training, or

supervision are invalid. As previously addressed in detail within other sections of

Plaintiff's Response, Plaintiff's tort claims including fraud, suppression, negligence and

wantonness ARE NOT time barred, and Plaintiff has stated viable claims in each and

every count of his complaint. Therefore, Plaintiff has alleged sufficient facts to state

claims for negligent or wanton hiring, training, or supervision and Defendant's motion

should be denied as it regards these claims.

**VII.    Plaintiff Has Alleged Sufficient Facts to State a Claim for Breach of Contract**

The Defendants misapply the law and rules of civil procedure in arguing that Plaintiff

has failed to state a claim for breach of contract. The Defendants make an argument that

Plaintiff has failed to "sufficiently" plead his claim for breach of contract. If the Court

will note, the case law relied upon by the Defendants in asking this Court to dismiss

Plaintiff's claim for breach of contract are actually opinions which involve the general

application of Rules 8 and 9, Fed. R. Civ. P. Those are instances where the Court may

have held the Plaintiff insufficiently pled his Complaint, but the entire dismissal of the

Complaint or provisions thereof were not warranted. The Defendants should not be

allowed to seek dismissal under a Rule 12(b)(6), Fed. R. Civ. P., but actually argue that

Plaintiff's Complaint is insufficiently pled under Rules 8 and 9, Fed. R. Civ. P. **As**

**previously addressed, Plaintiff has amended his complaint** to more specifically plead

his claim for breach of contract (See Plaintiff's First Amended Complaint, attached as Exhibit "A"). Therefore, Defendant's argument should be held moot regarding Plaintiff's contract claim. If the Court finds that Plaintiff's claim for breach of contract should be more specifically pled, Plaintiff will be happy to comply with said Order of the Court. However, Plaintiff asserts that his Amended Complaint incorporated and taken in totality clearly puts the Defendant on notice of the breach, how it occurred and the details thereof.

Plaintiff, having fully and completely pled his claim for breach of contract, should be allowed to move forward on said claim and, therefore, the Defendant's Motion should be denied.

## VIII.    **Plaintiff's Class Action Allegations SHOULD NOT Be Stricken**

The Defendant argues that Plaintiff's class action allegations should be stricken because these claims present insurmountable problems of manageability. Defendant argues that because Plaintiff has pled that the common law of Alabama and all other states in the United States, that a multi-state class would be an impossibility. **Defendant's argument is premature at this stage in the litigation and would be better suited for later consideration of a motion for certification of the class.** Plaintiff's Complaint simply leaves open the possibility of the scope of the class size. At this stage in the litigation, it has yet to be determined exactly how many class members there may be, or how many states may be involved. Therefore, a ruling by the Court on these issues without allowing Plaintiff the opportunity to conduct class discovery and further expand on the particulars of the class allegations of the Complaint would be

prejudicial and premature at this stage in the litigation. Furthermore, most all of the cases cited by Defendant in support of their argument deal with court rulings on class certification and not a motions to dismiss.[7]

The Defendant also asserts that Plaintiff's fraud allegations would be inappropriate for class certification due to differing state standards on reliance and the duty to disclose. First, as indicated above, the number of states and differing standards of reliance and duty to disclose have not been established at this stage in the litigation. The cases cited by Defendant do not deal with the specific circumstances of Plaintiff's allegations involving the sale of an insurance product that was under-funded and improperly designed from inception.

The heart of Plaintiff's class allegations deal with Defendant's development and implementation of a widespread scheme to defraud policyholders through the sale of an insurance policy that was fraudulent by design. The commonality of the misrepresentations and omissions involved in this case may alleviate the necessity of testimony as to each element of a fraud or suppression claim. Furthermore, the individual reliance questions regarding Plaintiff's suppression claim are non-existent because there are no disclosures whatsoever regarding the issue of excess costs associated with the term rider, and how this could possibly affect Plaintiff or any class members' accumulation value and eventually lead to their policys' demise.

Courts generally recognize that when a common fraud is perpetrated on a class of persons, those persons should be able to pursue an avenue of proof that does not focus on questions affecting only individual members. If a fraud was accomplished on a **common**

---

[7] See Defendants Motion at pg 26,27 and 28.

**basis,** there is no valid reason why those affected should be foreclosed from proving it on

that basis. See *Cope v. Metro Life Ins. Co.,* 82 Ohio St.3d 426, 696 N.E.2d 1001; *Shields*

*v. Lefta, Inc.* (N.D.Ill.1995), 888 F.Supp. 891, 893; *Murray v. Sevier* (D.Kan.1994), 156

F.R.D. 235, 248-249. Furthermore, it is not necessary to establish inducement and

reliance upon material omissions by direct evidence.   When there is nondisclosure of a

material fact, courts permit inferences or presumptions of inducement and reliance.

Thus, cases involving common omissions across the entire class are generally certified as

class actions, notwithstanding the need for each class member to prove these elements.

See *Davis, supra,* 158 F.R.D. at 176-177; *Murray, supra,* 156 F.R.D. at 249, fn. 11;

*Heastie,* supra, 125 F.R.D. at 678;  *Adams v. Little Missouri Minerals Assn.* (N.D.1966),

143 N.W.2d 659, 683;  37 *American Jurisprudence 2d* (1968) 305, *Fraud and Deceit,*

*Section 228.*  See, also, *Skalbania, supra,* 443 N.E.2d at 360;  *Vasquez, supra,* 4 Cal.3d

at 814-815, 94 Cal.Rptr. at 805, 484 P.2d at 972-973.

     In *Cope v. Metropolitan Life Insurance, Co.,* 82 Ohio St.3d 426, 696 N.E.2d

1001, insureds brought action alleging that life insurer's agents targeted existing

policyholders, sold them replacement insurance as new insurance, and intentionally

omitted mandatory disclosure warnings. The Court in *Cope* held that the insureds

satisfied requirements of predominance and superiority for class action. In its ruling the

Court noted  the following:

> Recently, the United States Supreme Court declared that "[p]redominance is a
> test readily met in certain cases alleging consumer or securities fraud or violations
> of the antitrust laws." *Amchem Prods., Inc. v. Windsor* (1997), 521 U.S. 591, 117
> S.Ct. 2231, 2250, 138 L.Ed.2d 689, 713.  As the Supreme Court of California
> explained in *Vasquez v. Superior Court of San Joaquin Cty.* (1971), 4 Cal.3d 800,
> 808, 94 Cal.Rptr. 796, 800-801, 484 P.2d 964, 968-969:

> "Frequently numerous consumers are exposed to the same dubious practice by the same seller so that proof of the prevalence of the practice as to one consumer would provide proof for all. Individual actions by each of the defrauded consumers are often impracticable because the amount of individual recovery would be insufficient to justify bringing a separate action; thus an unscrupulous seller retains the benefits of its wrongful conduct.   A class action by consumers produces several salutary by-products, including a therapeutic effect upon those sellers who indulge in fraudulent practices, aid to legitimate business enterprises by curtailing illegitimate competition, and avoidance to the judicial process of the burden of multiple litigation involving identical claims.   The benefit to the parties and the courts would, in many circumstances, be substantial." *Vasquez*, at 800

In addition, reliance may be presumed for fraud-based common law claims when the alleged omissions and misrepresentations are uniform and material and the class members acted in a manner consistent with reliance. See *Vasquez v. Superior Ct. of San Joaquin County*, 4 Cal.3d 800, 94 Cal.Rptr. 796, 804-05, 484 P.2d 964, 972-73 (1971) (holding that where material misrepresentations are made to class members an inference of reliance arises to the entire class). The alleged omissions and representations alleged by Plaintiff are uniform and material with the other members of the class in that the distinct policy design would lend itself to the same facts and circumstances for all class members. It is clear from reviewing all the allegations in Plaintiff's Complaint and the cases cited above that questions of law or fact common to the members of the proposed class predominate over any questions affecting only individual members.

Defendant also asserts that Plaintiff's claims for punitive damages are inherently unmanageable and impossible to adjudicate in a class action because states may differ in their treatment of punitive damages. As the Court will note, the U.S. Supreme Court has promulgated punitive damages in *State Farm v. Campbell,* 538 U.S. 408, 123 S.Ct. 1513, 155 LEd.2d 585 (2003), for all states to follow.

Therefore, Plaintiff's class action allegations should not be stricken.

24

## CONCLUSION

The Plaintiff has clearly set out facts, which, if proven, would entitle him to the relief sought as to all of his claims. Therefore, Defendant's Motion to Dismiss and Motion to Strike should be denied. None of the parties have been deposed and no written discovery has been undertaken by any of the parties. It is clear from the law and arguments herein that Plaintiff's claims should go forward and he should be allowed to present evidence to this Court through the depositions of the Defendant and through the discovery of all the internal documents, etc. which are in the sole possession of the Defendant.

WHEREFORE, Plaintiff moves the Court to DENY Defendant's Motion to Dismiss the Complaint and Striking Plaintiff's Class Action Allegations.

JOSEPH H. AUGHTMAN(AUG001)
JOHN E. TOMLINSON (TOMO14)
Attorneys for Plaintiff

OF COUNSEL:

BEASLEY, ALLEN, CROW
METHVIN, PORTIS, & MILES, P.C.
P.O. Box 4160
Montgomery, AL 36103-4160
(334) 269-2343

## CERTIFICATE OF SERVICE

I hereby certify that I have filed the original of the foregoing document in this Court with copies to be served upon all Defendants of record as listed below by placing a copy of same in the United States Mail, first class, postage prepaid on this the  24ᵗʰ day of  _January_ , 2006.

## Attorney(s) for Defendant Reliastar Life Insurance Company

*Michael L. Bell*
S. Andrew Kelly
Lightfoot, Franklin & White, L.L.C.
The Clark Building
400 20ᵗʰ Street North
Birmingham, AL 35203

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **WILLIAM LEONARD, JR.** | * | |
| | * | |
| **Plaintiff,** | * | |
| | * | |
| **v.** | * | **CASE No. 3:05-CV-01015-MEF-CSC** |
| | * | |
| **RELIASTAR LIFE INSURANCE** | * | |
| **COMPANY f/k/a NORTHWESTERN** | * | **DEMAND FOR JURY TRIAL** |
| **NATIONAL LIFE INSURANCE** | * | |
| **COMPANY,** | * | |
| | * | |
| **Defendant.** | | |

### FIRST AMENDED COMPLAINT

Pursuant to Rule 15(a) of the *Federal Rules of Civil Procedure*, William Leonard, Jr., hereby amends his original Complaint individually, and as class representative against Defendant.

### INTRODUCTION

1.     This is a national class action against Defendant Reliastar Life Insurance Company for compensatory and punitive damages for fraud, suppression, breach of contract, negligence, wantonness, and/or other wrongful conduct.

2.     The claims in this action are founded upon the common law of Alabama and all other states in these United States for fraud, suppression, breach of contract, negligence, wantonness, and other wrongful conduct.

### CLASS ACTION ALLEGATIONS

3.     This action seeks exclusively a money recovery for Defendant's violation of the common law of the states. Plaintiff seeks punitive damages and compensatory damages for each class member for Defendant's fraud, and other wrongful conduct as alleged herein.

1


EXHIBIT
A

4.      Certification under Rule 23(b)(3) *Fed. R. Civ. P.* is proper.

5.      Plaintiff seeks certification of a national class action against Defendant for the fraud and other wrongful conduct alleged in this Complaint. The Plaintiff class consists of the following:

> A)      All residents of the United States who purchased a Plan 3 Flexible Premium Adjustable Life policy with an Enhanced Protection Term Insurance Rider from Defendant Reliastar f/k/a Northwestern National Life Insurance Company. Said class of Plaintiffs are further defined as follows:
>
> > a)      Those persons living on the date that final judgment is entered in this action;
> >
> > b)      The person does not have a pending action against Defendant, on the date of the Court's certification order, wherein the recovery sought is based in whole or in part on the type of claims asserted herein;
> >
> > c)      Persons are excluded from the class as to Defendant who have previously obtained a judgment; settled any claims against Defendant concerning the type claims asserted herein; or have previously executed releases releasing any such claims against the Defendant; or who signed an arbitration agreement with Defendant.

6.      Rule 23(a), and Rule 23(b), *Fed. R. Civ. P.* requirements are met because:

> a.      Plaintiff estimates that the proposed class consists of not less than several thousand members throughout the United States, and joinder of all members in this action is impracticable.

> b.      There are questions of law and fact common to the class, including, but not exclusively limited to:

> > i.      Whether Defendant guaranteed and/or represented to Plaintiffs that their premium would stay level and/or fixed throughout the life of their policy.

2

ii.      Whether Defendant failed to disclose and/or suppressed from Plaintiffs that the Plan 3 base policy was under funded by the premiums determined and required by Defendant; that the Plan 3 had higher mortality charges to subsidize higher credited interest rates; and that the premium determined and required by Defendant for the Enhanced Protection Rider was based on the first year cost of insurance and was insufficient to pay the increasing cost of the rider, which would ultimately lead to the lapse of the entire policy prior to the maturity date.

iii.      Whether the Plaintiffs are entitled to the class-wide relief sought in the Complaint.

c.      The common questions predominate over any questions affecting only individual members.

d.      The named Plaintiff is an adequate representative of the class. The claims of the Plaintiff as class representative are typical of those of the class members in that they were subjected to the same unlawful treatment, and Plaintiff suffered the same type harm as suffered by other members of the class. The class representative will vigorously pursue the claims on behalf of the class, and will fairly, and adequately protect the interests of the class. Plaintiff's counsel is experienced and professionally able to properly represent the class.

e.      The claims of the representative party are typical of the claims of each member of the class, and are based on or arise out of similar facts constituting the wrongful conduct of Defendant.

f.      A class action is far superior to any other available method for the fair and efficient adjudication of this controversy.

7.      This action complies with the *Class Action Fairness Act of 2005*.

a.      This District Court has original jurisdiction of this civil action because the controversy exceeds the sum or value of $5 million, exclusive of interest and cost, and is a class action in which there are members of the class of Plaintiffs who are citizens of states different

3

from the Defendant; there are members of the class of Plaintiffs who are citizens of foreign states and there are members of the class of Plaintiffs who are citizens of this state and there are Defendants who are citizens of foreign states.

b.    Upon information and belief, Plaintiff pleads that less than 1/3 of the proposed class members in the aggregate are citizens in this state.

## STATEMENT OF THE PARTIES

8.    Plaintiff William J. Leonard, Jr., is over the age of nineteen (19) years and resides in Lee County, Alabama.

9.    Defendant Reliastar Life Insurance Company f/k/a Northwestern National Life Insurance Company (hereinafter referred to as "Reliastar") is a foreign corporation doing business by agent in Lee County, Alabama.

## STATEMENT OF THE FACTS

10.    On or about September 13, 1986, in Lee County, Alabama, Billy R. Hayes (hereinafter referred to as "Hayes"), an agent and/or representative of Defendant, approached Plaintiff about purchasing life insurance.

11.    At this time, Hayes convinced Plaintiff to buy life insurance and represented to Plaintiff that the initial premium established and required by Defendant was and would always be adequate to fund the original policy terms.

12.    Based on representations made by Hayes, Plaintiff agreed to purchase the policy of insurance, to-wit: Policy No. B2-076-716

13.    What the Defendant actually sold Plaintiff was, in reality, an under-funded hybrid universal life insurance product based on excessive interest rates and unsustainable costs of insurance; an annually renewable term rider in which the premiums established and required by

4

Defendant were insufficient to cover the increasing costs of the rider; and higher mortality charges and/or costs of insurance in order to subsidize high credited rates. These factors ensure the policy's eventual collapse or requirement for increased premiums. At inception, the design of the insurance product was inherently problematic in that the base Plan 3 policy sold in conjunction with the term rider would eventually lapse prior to its maturity date regardless of whether credited interest rates declined.

14.     These defective policy designs and their effect on the Plaintiff's policy were either not disclosed to Plaintiff or misrepresented to Plaintiff. They were withheld or misrepresented so Plaintiff could not discover the true nature of the insurance product sold by Defendant. They involve complicated accounting and actuarial formulas beyond Plaintiff's comprehension.

15.     Defendant failed to disclose any of the facts as stated herein, but any disclosures made by Defendant were inadequate, unreasonable, fraudulent, and beyond Plaintiff's reasoning and understanding.

16.     On or about February, 2005, Plaintiff made inquiries regarding the status of his insurance policy, which subsequently led to Plaintiff's discovery of the fraudulent conduct of Defendant.

17.     Plaintiff has been injured and damaged by the wrongdoing of Defendant. Specifically, Plaintiff has spent substantial sums of money on a product that is not as promised by Defendant. He has suffered financially and has continued to suffer mental anguish and emotional distress.

18.     When Defendant presented the life insurance product to Plaintiff, they held

themselves out as experts on insurance matters. Defendant indicated to Plaintiff that they were acting in the best interest of Plaintiff with regard to the matters being discussed and represented. Plaintiff believed and trusted Defendant and relied upon the representations they made and the apparent expertise they professed.

19.     The matters Defendant made representations about involve sophisticated and complicated matters, which are beyond the knowledge and understanding of the Plaintiff. The Plaintiff could not reasonably have been expected to know and understand this scheme such that he could have appreciated or even been aware of the extreme risk he was being subjected to by Defendant.

20.     The representations made by Defendant were false and Defendant knew that these representations were false at the time they were made.

21.     Defendant actively suppressed and concealed from Plaintiff the true nature of what he was buying, how it worked and the risks associated with such a product.

22.     At all times material hereto, Hayes was an agent and or representative of Defendant and was acting within the line and scope of his agency in dealing with Plaintiff.

23.     Defendant entered into a pattern and practice of fraudulent and wrongful conduct which included the fraud practiced on Plaintiff.

24.     The conduct by Defendant was intentional, gross, wanton, malicious, and/or oppressive.

25.     The Plaintiff discovered the wrongdoings of the Defendant within two years of filing this lawsuit.

## COUNT ONE

26     Plaintiff re-alleges all prior paragraphs of the Complaint as if set out here

in full.

27.    On or about September 13, 1986, in Lee County, Alabama, Hayes, an

agent and/or representative of Defendant, approached Plaintiff about purchasing life insurance.

28.    At this time, Hayes convinced Plaintiff to buy life insurance and

represented to Plaintiff that the initial premium established and required by Defendant was and

would always be adequate to fund the original policy.

29.    Based on representations made by Hayes, Plaintiff agreed to

purchase the policy of insurance, to-wit: Policy No. B2-076-716.

30.    What the Defendant actually sold Plaintiff was, in reality, an under-funded

hybrid universal life insurance product based on excessive interest rates and unsustainable costs of

insurance; an annually renewable term rider in which the premiums established and required by

Defendant were insufficient to cover the increasing costs of the rider; and higher mortality charges

and/or costs of insurance in order to subsidize high credited rates. These factors ensure the policy's

eventual collapse or requirement for increased premiums. At inception, the design of the insurance

product was inherently problematic in that the base Plan 3 universal life policy sold in conjunction

with the term rider would eventually lapse prior to its maturity date regardless of whether credited

interest rates declined.

31.    These defective policy designs and their effect on the Plaintiff's

policy were misrepresented to Plaintiff. They were misrepresented so Plaintiff could not

discover the true nature of the insurance product sold by Defendant. They involve complicated

accounting and actuarial formulas beyond Plaintiff's comprehension.

32.    The matters Defendant made representations about involve sophisticated

and complicated matters, which are beyond the knowledge and understanding of the Plaintiff. The Plaintiff could not reasonably have been expected to know and understand this scheme such that he could have appreciated or even been aware of the extreme risk he was being subjected to by Defendant

33.    The representations made by Defendant were false and Defendant knew that these representations were false at the time they were made.

34.    On or about February of 2005, Plaintiff made inquiries regarding the status of his insurance policy, which subsequently led to Plaintiff's discovery of the fraudulent conduct of Defendant.

35.    As a proximate consequence of the Defendant's fraud, Plaintiff was injured and damaged as follows: Plaintiff has made payments on a policy that was not as represented; he has lost the value of his premium payments; he has lost interest on the premium payments; he has lost the use of his money; he does not have the entire benefits of the policy that was represented to him; he has suffered mental anguish and emotional distress and will continue to do so; and he has been otherwise injured and damaged.

WHEREFORE, Plaintiff demands judgment against Defendant in such an amount of compensatory and punitive damages as a jury deems reasonable and may award, plus interest and costs.

### COUNT TWO

36.    Plaintiff re-alleges all prior paragraphs of the Complaint as if set forth here in full.

37.    At the aforesaid times and places, Defendant fraudulently failed to disclose

8

to Plaintiff that what the Defendant actually sold him was, in reality, an under-funded hybrid universal life insurance product based on excessive interest rates and unsustainable costs of insurance; an annually renewable term rider in which the premiums established and required by Defendant were insufficient to cover the increasing costs of the rider; and a product with higher mortality charges and/or costs of insurance in order to subsidize high credited rates. These factors ensure the policy's eventual collapse or requirement for increased premiums. At inception, the design of the insurance product was inherently problematic in that the base Plan 3 universal life policy sold in conjunction with the term rider would eventually lapse prior to its maturity date regardless of whether credited interest rates declined.

38.    Defendant actively suppressed and concealed from Plaintiff the true nature of what he was buying, how it worked and the risks associated with such a product.

39.    These defective policy designs and their effect on the Plaintiff's policy were not disclosed to Plaintiff. They were withheld so Plaintiff could not discover the true nature of the insurance product sold by Defendant. They involve complicated accounting and actuarial formulas beyond Plaintiff's comprehension.

40.    Defendant failed to disclose any of the facts as stated herein, but any disclosures made by Defendant were inadequate, unreasonable, fraudulent, and beyond Plaintiff's reasoning and understanding.

41.    As a proximate consequence of Defendant's non-disclosure and/or suppressive conduct, Plaintiff was injured and damaged as alleged in paragraph 35 above.

WHEREFORE, Plaintiff demands judgment against Defendant in such an amount of compensatory and punitive damages as a jury deems reasonable and may award, plus interest and costs.

## COUNT THREE

42.     Plaintiff re-alleges all prior paragraphs of the Complaint as if set forth here in full.

43.     Defendant negligently hired, trained, or supervised its agent and/or representative Hayes.

44.     As a proximate result of Defendant's negligence, Plaintiff was injured and damaged as alleged in paragraph 35 above.

WHEREFORE, Plaintiff demands judgment against said Defendant in such an amount of compensatory damages as a jury deems reasonable and may award, plus interest and costs.

## COUNT FOUR

45.     Plaintiff re-alleges all prior paragraphs of Complaint as if set forth here in full.

46.     Defendant wantonly hired, trained, or supervised its agent and/or representative Hayes.

47.     As a proximate result of Defendant's wantonness, Plaintiff was injured and damaged as alleged in paragraph 35 above.

WHEREFORE, Plaintiff demands judgment against said Defendant in such an amount of compensatory and punitive damages as a jury deems reasonable and may award, plus interest and costs.

## COUNT FIVE

48.     Plaintiff re-alleges all prior paragraphs of the Complaint as if set forth here in full.

49.     Defendant negligently and/or wantonly failed to procure a suitable product for Plaintiff as represented.

50.     Defendant had a duty to procure a suitable product for Plaintiff as represented.

51.     Defendant breached its duty.

52.    As a proximate consequence of Defendant's negligence and/or wantonness, Plaintiff was injured and damaged as alleged in paragraph 35 above.

WHEREFORE, Plaintiff demands judgment against Defendant in such an amount of compensatory and punitive damages as a jury deems reasonable and may award, plus interest and costs.

## COUNT SIX

53    Plaintiff re-alleges all prior paragraphs of the Complaint as if set forth here in full.

54    Defendant entered into a contract with Plaintiff to provide Plaintiff with a base universal life policy along with an additional term insurance rider for a specified planned periodic premium. The planned periodic premium included separate allotted premium amounts to cover the costs associated with each specific coverage. Defendant has breached the terms of Plaintiff's contract by continually deducting undisclosed and excess costs associated with Plaintiff's term insurance rider from the accumulation value of Plaintiff's base universal policy.

55.    As a result of this breach of contract, Plaintiff was injured and damaged as alleged in paragraph 35 above.

WHEREFORE, Plaintiff demands judgment against Defendant in such an amount of compensatory damages including all incidental and consequential damages as a jury deems reasonable and may award, plus their interest and costs.

/s/ Jere L. Beasley
JERE L. BEASLEY (BEA020)


/s/ Dee Miles
W. DANIEL "DEE" MILES, III (MIL060)


/s/ Jay Aughtman
JOSEPH H. "JAY" AUGHTMAN (AUG001)


/s/ John E. Tomlinson
JOHN E. TOMLINSON (TOM014)
Attorneys for Plaintiff

OF COUNSEL:

BEASLEY, ALLEN, CROW
METHVIN, PORTIS, & MILES, P.C.
P.O. Box 4160
Montgomery, AL 36103-4160
(334) 269-2343


**JURY DEMAND**

PLAINTIFF HEREBY DEMANDS TRIAL BY JURY ON ALL ISSUES OF THIS CAUSE.


/s/ John E. Tomlinson
OF COUNSEL

12