UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM LEONARD, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:05-CV-01015-MEF-CSC |
| vs. | ) | |
| | ) | |
| RELIASTAR LIFE INSURANCE | ) | |
| COMPANY f/k/a NORTHWESTERN | ) | |
| NATIONAL LIFE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## AFFIDAVIT OF WENDY PAQUIN

STATE OF MINNESOTA          :
                            :
COUNTY OF HENNEPIN          :

Wendy Paquin, being duly sworn, states as follows:

1.      My name is Wendy Paquin. I am over twenty-one years of age, and am competent to testify to the facts and statements set forth in this Affidavit. I am employed by ReliaStar Life Insurance Company ("ReliaStar") as Assistant Secretary and Senior Contract Analyst.

2.      ReliaStar's practice is to maintain, in the regular course of its business, copies of insurance policy forms filed with and approved by state insurance departments for the states in which ReliaStar desires to sell such products. I am familiar with these business records maintained by ReliaStar, and I regularly work with and refer to these records in the course of performing my duties at ReliaStar. The statements made in this Affidavit are based on my personal knowledge or review of the business records of ReliaStar.

3.     In August 1983, Northwestern National Life Insurance Company, now known as ReliaStar, filed for approval with the Alabama Department of Insurance (the "Department"), the Flexible Premium Adjustable Whole Life Insurance Policy Form number 82-800. Policy Form number 82-800 was the same form of the policy issued to William J. Leonard, Jr. effective on or about September 24, 1986. Policy Form 82-800, which includes the costs of insurance and all other policy charges, was reviewed and approved by the Department on August 11, 1983. Attached hereto as Exhibit "1" is a copy of Policy Form 82-800 and other documents submitted to the department for approval bearing the Alabama Department's "APPROVED" stamp dated August 11, 1983.

4.     Northwestern National Life Insurance Company filed a similar request with the Department on October 26, 1984 for approval of Term Insurance Rider, Form number 82-370. The Term Insurance Rider Form number 82-370 was the same form issued to William J. Leonard, Jr. as part of his policy number B2-076-716. The Term Insurance Rider Form 82-370, which includes the costs of insurance (the only charge associated with the rider), was reviewed and approved by the Department on November 1, 1984. Attached hereto as Exhibit "2" is a copy of Term Insurance Rider Form number 82-370 bearing the Alabama Department's "APPROVED" stamp dated November 1, 1984.

Further affiant sayeth naught.

_____
WENDY PAQUIN

SWORN TO and SUBSCRIBED before
me this 16th day of February, 2006 by
Wendy Paquin.

_____
NOTARY PUBLIC
STATE OF MINNESOTA

TINA M. NELSON
Notary Public
Minnesota
My Commission Expires January 31, 2007

2

# EXHIBIT 1



LAW DEPT.

AUG 1 5 1983

# NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY

August 4, 1983

Hon. W. G. Ward, Jr.
Commissioner of Insurance
Department of Insurance
Administration Building
64 North Union Street
Montgomery, Alabama  36130

Received in Office

AUG 8 1983

DEPARTMENT OF INSURANCE
ALABAMA

LIFE FILING

APPROVED

AUG 11 1983

Department of Insurance
Alabama

Attn: Mr. Esse Langston

RE:  Individual Flexible Premium Adjustable
     Death Benefit Whole Life
     Insurance Policy   82-800
     Modification Rider  82-880
     (New Submission)

Dear Commissioner:

We are enclosing the above forms, completed in sample fashion, for filing with
your Department.  The above policy is a new product developed by our Company.

The above flexible premium adjustable death benefit whole life policy's accumu-
lation values are the accumulation with interest of net premiums, less the cost
of insurance based on the net amount at risk under the policy, less partial
withdrawals and less a monthly administrative charge.  The cash values are
equal to the above accumulation values less a surrender charge.  The surrender
charge is structured so that it never exceeds the maximum expense allowance under
the Standard Nonforfeiture Law.  This policy offers two Death Benefit Options
(the level amount option and additional amount option).  The amount of Death
Benefits payable upon the insured's death depends upon the option chosen.  The
policy was designed so that it could be used as a front loaded product, a rear
loaded product, or a combination front and rear loaded product.  We intend to
market this policy as a combination front and rear loaded product with the loads
and charges itemized on the Policy Data Pages.  We certify in our actuarial
memorandum that any combination of charges will not exceed what is permitted
under the Standard Nonforfeiture Law.  We are enclosing an actuarial memorandum
which will explain the policy in greater detail.

Modification Rider 82-880 is also enclosed for filing with your Department.  This
rider modifies the Partial Withdrawal provision of the above policy.  This rider
will be used if the market situation dictates that NWNL offer a more liberal
partial withdrawal provision.

Hon. W. G. Ward, Jr.
Page 2
August 4, 1983

Also enclosed is a sample annual report and a sample projection report. The annual report includes a one year projection of results using the actual accumulation value on the date of the report, projected mortality and interest for the next policy year, the payment of the planned periodic premiums, and any other assumptions specified. The projection report shows projected future Death Benefits and values based on the Death Benefit Option the insured specifies, planned periodic premiums the insured chooses, and any other assumptions specified by the insured or Northwestern National Life Insurance Company.

The Flesch score for the above policy and rider as scored according to a computer our Company uses, is over 40. Specifically, I certify on behalf of Northwestern National Life Insurance company that the Flesch scale analysis readability score for the above policy and rider is 58.

Our General-use Application 28464a _____, which was approved on  Jan. 24, 1983, will be used in applying for this policy.

The above policy and rider was approved by Minnesota, our State of Domicile, on July 29, 1983.

We would appreciate your review and approval of this submission.

Sincerely,

Deborah A. Ljungkull
Senior Paralegal
Assistant Secretary

slk

Enclosures

## Flexible Premium Adjustable Whole Life Insurance Policy

Death Benefit Payable at Death

Flexible Premiums Payable during the
Insured's Lifetime

Adjustable Face Amount

Nonparticipating

**Notice**

Right to Return Policy

Please read this policy carefully. If you do not want it, you may return it to us or your agent within 10 days after you receive it and ask us to cancel it. As soon as you return it, we will consider it void from the start and refund any premium paid.

**Index**

| | Page |
|---|---|
| Accumulation Values | 6 |
| Age and Sex | 15 |
| Annual Report | 16 |
| Beneficiary | 10 |
| Cash Values | 9 |
| Claims | 17 |
| Control of Policy | 11 |
| Definitions | 2 |
| Face Amount Change | 5 |
| General Provisions | 15 |
| Grace Period | 5 |
| Incontestability | 15 |
| Insured | A |
| Monthly Deduction | 7 |
| Nonforfeiture Provisions | 8 |

| | Page |
|---|---|
| Ownership | 11 |
| Partial Withdrawal | 9 |
| Payment of Proceeds | 15 |
| Policy Data | A |
| Policy Loans | 9 |
| Premiums | 4 |
| Reinstatement | 5 |
| Settlement Options | 12 |
| Suicide | 15 |
| Summary of Benefits | 2 |
| Ten Day Free Look | 1 |
| Termination | 16 |

Additional benefits, if any, are listed on the Policy Data Page and follow page 2. Additional restrictions follow page 2.



**Northwestern National Life Insurance Company**

Box 20
Minneapolis
Minnesota 55440

We will pay the proceeds if we receive written proof that the insured died while this policy was in force. This policy also provides other benefits and rights. We issue this policy in consideration of the application and payment of the initial premium.

Executed at our
Home Office

John G. Turner _____ President

William F. Spanton _____ Secretary

Countersigned _____ Registrar



**Summary of Benefits**

**Living Benefits**

While the insured is alive, subject to this policy's provisions, you may:

Change the Face Amount.

Change the amount and frequency of your premium payments.

Surrender this policy or make a partial withdrawal for cash.

Receive a cash loan.

Assign this policy as collateral.

Enjoy any other rights this policy allows.

**Death Benefits**

At the insured's death, the proceeds payable include:

The Death Benefit then in force.

*Plus* any additional amount provided by rider on the life of the insured.

*Minus* any policy loans and loan interest due.

*Minus* any unpaid monthly deductions.

**The Contract**

Read your policy carefully! This policy is a legal contract. You rely on us to provide its benefits; we rely on you to pay its premiums. The entire contract is:

This policy.

*Plus* all applications, Policy Data Pages, riders, and amendments attached at time of issue.

*Plus* all applications, Policy Data Pages, riders, and amendments agreed upon later.

Unless fraudulent, all statements made by or on behalf of anyone covered by this policy are representations and not warranties. No statement can be used to cancel this policy or can be used for our defense if we refuse to pay a claim, unless it is found in an application, rider, or amendment.

No agent or any other person except our elected officers or an Assistant Secretary can change this contract.

**Definitions**

**General Definitions**

| The Insured | The person whose life is insured under this policy while this policy is in force. The Policy Data Page lists the insured. |
|---|---|
| You, Your | The owner of this policy as shown on the Policy Data Page, unless changed as allowed in this policy. The insured owns this policy unless another owner is named. |
| We, Us, Our | Northwestern National Life Insurance Company at our Home Office in Minneapolis, Minnesota. |
| Written, In Writing | A written request or notice, signed and dated, and received at our Home Office, in a form we accept. You may get forms for this purpose from us. |
| In Force | The terms of this policy are in effect. |
| Proceeds | The amount we pay when the insured dies or when this policy is surrendered. |
| The Code | The Internal Revenue Code of 1954, as amended. |

POLICY NUMBER                          B -000-000

| | |
|---|---|
| POLICY DATA PAGE | INSURED                          JOHN DOE<br>ISSUE AGE AND SEX               35 - MALE<br>POLICY DATE                     07-01-1983<br>ISSUE DATE                      07-01-1983<br>STATUS*                         1 EFFECTIVE DATE: 07-01-1983 |

\* 'STATUS" IS USED TO              POLICY DATE, '2' IS FOR
SEQUENCE ANY POLICY                THE DATA AFTER THE
CHANGES.  FOR EXAMPLE,             FIRST CHANGE, ETC.
A STATUS OF '1'
INDICATES THE ORIGINAL

DEATH BENEFIT OPTION               OPTION A
                                   (LEVEL AMOUNT OPTION)

INITIAL FACE AMOUNT                $100,000
PREMIUM RATE CLASS                 STANDARD

CURRENT FACE AMOUNT                $100,000

MINIMUM FACE AMOUNT                $25.000

MINIMUM MONTHLY PREMIUM            $84.92

INITIAL PREMIUM                    $150.00

PLANNED PERIODIC PREMIUM           AMOUNT $150.00
                                   FREQUENCY:  MONTHLY

POLICY LOAN INTEREST RATE          7.4%, PAYABLE IN ADVANCE

PERCENT OF PREMIUM CHARGE          5%

MONTHLY POLICY CHARGE              NONE

MONTHLY AMOUNT CHARGE              NONE

MONTHLY ADMINISTRATIVE CHARGE      $4.00

GUARANTEED INTEREST BASE           NONE

PERCENT OF PARTIAL WITHDRAWAL      20%  IN EACH POLICY YEAR AFTER
                                        THE FIRST POLICY YEAR

FORM NUMBERS: 82-800, 82-000, 82-810, 82-820, 82-830, 82-840, 82-850, 82-860, 82-870, 82-88

CONTINUED
ON NEXT PAGE

PAGE A

```
                POLICY NUMBER                    B -000-000
```

| POLICY<br>DATA PAGE<br>(CONTINUED) | INSURED<br>ISSUE AGE AND SEX<br>POLICY DATE<br>ISSUE DATE<br>STATUS* | JOHN DOE<br>35 - MALE<br>07-01-1983<br>07-01-1983<br>1 EFFECTIVE DATE: 07-01-83 |
|---|---|---|
| | * 'STATUS' IS USED TO<br>SEQUENCE ANY POLICY<br>CHANGES. FOR EXAMPLE,<br>A STATUS OF '1'<br>INDICATES THE ORIGINAL | POLICY DATE, '2' IS FOR<br>THE DATA AFTER THE<br>FIRST CHANGE, ETC. |

TABLE OF SURRENDER CHARGES

| POLICY<br>MONTH | POLICY<br>YEAR: 1983 | 1984 | 1985 | 1986 | 1987 | 1988 |
|---|---|---|---|---|---|---|
| JAN | .00 | 1459.50 | 1459.50 | 1459.50 | 1459.50 | 1459.50 |
| FEB | .00 | 1459.50 | 1459.50 | 1459.50 | 1459.50 | 1459.50 |
| MAR | .00 | 1459.50 | 1459.50 | 1459.50 | 1459.50 | 1459.50 |
| APR | .00 | 1459.50 | 1459.50 | 1459.50 | 1459.50 | 1459.50 |
| MAY | .00 | 1459.50 | 1459.50 | 1459.50 | 1459.50 | 1459.50 |
| JUN | .00 | 1459.50 | 1459.50 | 1459.50 | 1459.50 | 1459.50 |
| JUL | 1459.50 | 1459.50 | 1459.50 | 1459.50 | 1459.50 | 1447.34 |
| AUG | 1459.50 | 1459.50 | 1459.50 | 1459.50 | 1459.50 | 1435.18 |
| SEP | 1459.50 | 1459.50 | 1459.50 | 1459.50 | 1459.50 | 1423.01 |
| OCT | 1459.50 | 1459.50 | 1459.50 | 1459.50 | 459.50 | 1410.85 |
| NOV | 1459.50 | 1459.50 | 1459.50 | 1459.50 | 1459.50 | 1398.69 |
| DEC | 1459.50 | 1459.50 | 1459.50 | 1459.50 | 1459.50 | 1386.53 |

| POLICY<br>MONTH | POLICY<br>YEAR: 1989 | 1990 | 1991 | 1992 | 1993 | 1994 |
|---|---|---|---|---|---|---|
| JAN | 1374.36 | 1228.41 | 1082.46 | 936.51 | 790.56 | 644.61 |
| FEB | 1362.20 | 1216.25 | 1070.30 | 924.35 | 778.40 | 632.45 |
| MAR | 1350.04 | 1204.09 | 1058.14 | 912.19 | 766.24 | 620.29 |
| APR | 1337.88 | 1191.93 | 1045.98 | 900.03 | 754.08 | 608.13 |
| MAY | 1325.71 | 1179.76 | 1033.81 | 887.86 | 741.91 | 595.96 |
| JUN | 1313.55 | 1167.60 | 1021.65 | 875.70 | 729.75 | 583.80 |
| JUL | 1301.39 | 1155.44 | 1009.49 | 863.54 | 717.59 | 571.64 |
| AUG | 1289.23 | 1143.28 | 997.33 | 851.38 | 705.43 | 559.48 |
| SEP | 1277.06 | 1131.11 | 985.16 | 839.21 | 693.26 | 547.31 |
| OCT | 1264.90 | 1118.95 | 973.00 | 827.05 | 681.10 | 535.15 |
| NOV | 1252.74 | 1106.79 | 960.84 | 814.89 | 668.94 | 522.99 |
| DEC | 1240.58 | 1094.63 | 948.68 | 801.73 | 656.78 | 510.83 |

| POLICY<br>MONTH | POLICY<br>YEAR: 1995 | 1996 | 1997 | 1998 |
|---|---|---|---|---|
| JAN | 498.66 | 352.71 | 206.76 | 60.81 |
| FEB | 486.50 | 340.55 | 194.60 | 48.65 |
| MAR | 474.34 | 328.39 | 182.44 | 36.49 |
| APR | 462.18 | 316.23 | 170.28 | 24.33 |
| MAY | 450.01 | 304.06 | 158.11 | 12.16 |
| JUN | 437.85 | 291.90 | 145.95 | .00 |
| JUL | 425.69 | 279.74 | 133.79 | .00 |
| AUG | 413.53 | 267.58 | 121.63 | .00 |
| SEP | 401.36 | 255.41 | 109.46 | .00 |
| OCT | 389.20 | 243.25 | 97.30 | .00 |
| NOV | 377.04 | 231.03 | 85.14 | .00 |
| DEC | 364.88 | 218.93 | 72.98 | .00 |

THIS TABLE APPLIES TO THE
INITIAL FACE AMOUNT. A TABLE
OF ADDITIONAL SURRENDER CHARGES
WILL APPLY FOR EACH APPROVED
INCREASE IN THE FACE AMOUNT.

Policy
Data Page

Table of Monthly Guaranteed Cost of
Insurance Rates Per $1,000

| Male Attained Age | Rate | Male Attained Age | Rate | Male Attained Age | Rate |
|---|---|---|---|---|---|
| 0 | .36927 | | | | |
| 1 | .13669 | 36 | .22671 | 71 | 4.71692 |
| 2 | .12420 | 37 | .24214 | 72 | 5.09966 |
| 3 | .11918 | 38 | .26088 | 73 | 5.49760 |
| 4 | .11459 | 39 | .28256 | 74 | 5.92258 |
| 5 | .11043 | 40 | .30716 | 75 | 6.38757 |
| 6 | .10669 | 41 | .33384 | 76 | 6.90620 |
| 7 | .10376 | 42 | .36260 | 77 | 7.49028 |
| 8 | .10167 | 43 | .39387 | 78 | 8.14300 |
| 9 | .10084 | 44 | .42806 | 79 | 8.85700 |
| 10 | .10168 | 45 | .46600 | 80 | 9.62445 |
| 11 | .10376 | 46 | .50810 | 81 | 10.43681 |
| 12 | .10751 | 47 | .55482 | 82 | 11.28618 |
| 13 | .11293 | 48 | .60853 | 83 | 12.17114 |
| 14 | .11876 | 49 | .66366 | 84 | 13.09631 |
| 15 | .12502 | 50 | .72664 | 85 | 14.06748 |
| 16 | .13169 | 51 | .79505 | 86 | 15.09034 |
| 17 | .13793 | 52 | .86932 | 87 | 16.17587 |
| 18 | .14294 | 53 | .95025 | 88 | 17.34344 |
| 19 | .14710 | 54 | 1.03831 | 89 | 18.62109 |
| 20 | .15085 | 55 | 1.13471 | 90 | 20.04580 |
| 21 | .15376 | 56 | 1.24073 | 91 | 21.66244 |
| 22 | .15626 | 57 | 1.35719 | 92 | 23.52590 |
| 23 | .15836 | 58 | 1.48455 | 93 | 25.69963 |
| 24 | .16002 | 59 | 1.62403 | 94 | 28.33894 |
| 25 | .16211 | 60 | 1.77650 | | |
| 26 | .16461 | 61 | 1.94239 | | |
| 27 | .16752 | 62 | 2.12333 | | |
| 28 | .17127 | 63 | 2.32107 | | |
| 29 | .17544 | 64 | 2.53768 | | |
| 30 | .18003 | 65 | 2.77608 | | |
| 31 | .18502 | 66 | 3.03929 | | |
| 32 | .19046 | 67 | 3.32978 | | |
| 33 | .19671 | 68 | 3.64685 | | |
| 34 | .20462 | 69 | 3.98676 | | |
| 35 | .21463 | 70 | 4.34500 | | |

Policy
Data Page

Table of Monthly Guaranteed Cost of
Insurance Rates Per $1,000

| Female Attained Age | Rate | Female Attained Age | Rate | Female Attained Age | Rate |
|---|---|---|---|---|---|
| 0 | .32594 | | | | |
| 1 | .12585 | 36 | .18003 | 71 | 2.77608 |
| 2 | .11251 | 37 | .18502 | 72 | 3.03929 |
| 3 | .10751 | 38 | .19046 | 73 | 3.32978 |
| 4 | .10251 | 39 | .19671 | 74 | 3.64685 |
| 5 | .09834 | 40 | .20462 | 75 | 3.98676 |
| 6 | .09501 | 41 | .21463 | 76 | 4.34500 |
| 7 | .09251 | 42 | .22671 | 77 | 4.71692 |
| 8 | .09084 | 43 | .24214 | 78 | 5.09966 |
| 9 | .09001 | 44 | .26088 | 79 | 5.49760 |
| 10 | .09001 | 45 | .28256 | 80 | 5.92258 |
| 11 | .09084 | 46 | .30716 | 81 | 6.38757 |
| 12 | .09168 | 47 | .33384 | 82 | 6.90620 |
| 13 | .09334 | 48 | .36260 | 83 | 7.49028 |
| 14 | .09418 | 49 | .39387 | 84 | 8.14300 |
| 15 | .09584 | 50 | .42806 | 85 | 8.85700 |
| 16 | .09817 | 51 | .46600 | 86 | 9.62445 |
| 17 | .10258 | 52 | .50810 | 87 | 10.43681 |
| 18 | .10758 | 53 | .55487 | 88 | 11.28618 |
| 19 | .11251 | 54 | .60653 | 89 | 12.17114 |
| 20 | .11918 | 55 | .66366 | 90 | 13.09631 |
| 21 | .12502 | 56 | .72664 | 91 | 14.06748 |
| 22 | .13169 | 57 | .79505 | 92 | 15.09034 |
| 23 | .13793 | 58 | .86932 | 93 | 16.17587 |
| 24 | .14294 | 59 | .95025 | 94 | 17.34344 |
| 25 | .14710 | 60 | 1.03831 | | |
| 26 | .15085 | 61 | 1.13471 | | |
| 27 | .15376 | 62 | 1.24073 | | |
| 28 | .15626 | 63 | 1.35719 | | |
| 29 | .15836 | 64 | 1.48455 | | |
| 30 | .16002 | 65 | 1.62403 | | |
| 31 | .16211 | 66 | 1.77650 | | |
| 32 | .16461 | 67 | 1.94239 | | |
| 33 | .16752 | 68 | 2.12333 | | |
| 34 | .17127 | 69 | 2.32107 | | |
| 35 | .17544 | 70 | 2.53768 | | |

## Policy Definitions

| | |
|---|---|
| **Face Amount** | The Face Amount shown on the Policy Data Page. You may change the Face Amount as described in this policy. |
| **Death Benefit** | This policy provides two Death Benefit Options. The option in effect is shown on the Policy Data Page. |
| **Option A (Level Amount Option)** | The Face Amount includes the accumulation value. In this case, the Death Benefit is the greater of: |

1

The Face Amount on the date of death; or

2

140% of the accumulation value when the insured's age is 40 or less. Starting on the Policy Anniversary when the insured's age is 41, this percentage of accumulation value will decrease by 1% on each policy anniversary through age 75. At age 75 or more, the percentage is 105%.

| | |
|---|---|
| **Option B (Additional Amount Option)** | The accumulation value is in addition to the Face Amount. In this case the Death Benefit is the greater of: |

1

The Face Amount on the date of death, plus the accumulation value on the date of death; or

2

140% of the accumulation value when the insured's age is 40 or less. Starting on the Policy Anniversary when the insured's age is 41, this percentage of accumulation value will decrease by 1% on each policy anniversary through age 75. At age 75 or more, the percentage is 105%.

| | |
|---|---|
| **Policy Date** | The date the initial premium is due. The Policy Data Page shows the Policy Date. We measure policy anniversaries, policy months, policy years, and Monthly Anniversary Dates from the Policy Date. |
| **Monthly Anniversary Date** | The day of the month that is the same day of the month as your Policy Date. For example, if your Policy Date is March 2, 1978, then the second day of each month is your Monthly Anniversary Date. |
| **Net Premium** | The Net Premium is credited to the accumulation value as described in this policy's Accumulation Values provision. The Net Premium is calculated as 1 multiplied by 2 (1x2), where: |

*Continued*

Net Premium

**1**

is the premium paid.

**2**

is 1.000 minus the Percent of Premium Expense Charge shown on the Policy Data Page.

**Premiums**

The initial premium, which is shown on the Policy Data Page, is the amount paid on or before the delivery of this policy. There is no insurance until the initial premium is paid. All premiums are payable in advance of the period to which they apply.

The amount and frequency of premium payments will affect the accumulation value and cash value and how long the insurance will remain in effect.

We may require proof which satisfies us that the insured is still insurable if any payment, planned or unscheduled, would increase the difference between the Death Benefit and the accumulation value during the current policy year.

Even though Planned Periodic Premiums and Unscheduled Additional Premiums state otherwise, we reserve the right to refuse to accept any premium which

would disqualify your policy for favorable tax treatment under Sections 72 and 101 or any other applicable sections of the Code. If premiums paid during any Policy Year exceed the maximum permitted under Section 101 of the Code, we will return the excess premiums with interest to you within 60 days after the end of the policy year. However, you have the right to pay the premium required to keep this policy in force to the end of the policy year.

Pay premiums by sending them to the address shown below. Upon request, we will send you a receipt signed by one of our officers. Please include your policy number. The current address for payment is:

**Northwestern National Life Insurance Company**
**Box 430**
**Minneapolis**
**Minnesota 55440**

### Planned Periodic Premiums

You may pay planned periodic premiums once a year, every 6 months, or every 3 months. These modes are referred to as annual, semi-annual, or quarterly. If you choose, we can also deduct planned periodic premiums from your bank account monthly.

The amount and frequency of the planned periodic premiums you have chosen are shown on the Policy Data Page. You may change the frequency and amount of planned periodic premiums by notifying us in writing of the change.

The amount of any planned periodic premium must be at least $25. We reserve the right to limit the amount of any increase.

Depending on the frequency of premium payment and the method of payment you have chosen, we will send you periodic premium notices. In any case, we will send these notices to you at least once a year.

### Unscheduled Additional Premiums

Premium payments other than the planned periodic premiums may be made at any time while this policy is in force. We can limit the number and amount of these additional payments.

## Grace Period

If, on any Monthly Anniversary Date, the cash value minus any policy loans is less than the monthly deduction for the policy month to follow, we will give you a grace period of 61 days to pay a premium large enough to cover the monthly deduction. We will send you notice of the required premium at least 30 days before we lapse this policy.

If that required premium is not paid within the grace period, we lapse this policy. A lapsed policy is no longer in force and has no cash value.

If the insured dies during the grace period, we deduct any unpaid monthly deductions from the proceeds.

The policy has a Minimum Monthly Premium shown on the Policy Data Page. The Minimum Monthly Premium is increased when the Face Amount is increased or when a new rider is added or increased. The new Minimum Monthly Premium will be shown on a new Policy Data Page. We will not lapse this policy during the first 2 policy years, if on each Monthly Anniversary Date during the period, 1 is greater than 2, where:

**1**

is the sum of all premiums paid to date minus any policy loans and partial withdrawals.

**2**

is the sum of the Minimum Monthly Premiums since the Policy Date, including the month following the Monthly Anniversary Date.

Also, we will not lapse this policy during the 24 policy months following the effective date of an increase in Face Amount, if on each Monthly Anniversary Date during the period 1 is greater than 2, where:

**1**

is the sum of all premiums paid since the effective date of the increase in Face Amount minus any policy loans and partial withdrawals since that date.

**2**

is the sum of Minimum Monthly Premiums since the effective date of the increase in Face Amount, including the month following the Monthly Anniversary Date.

## Reinstatement

Reinstatement means putting a lapsed policy back in force. You can reinstate this policy anytime within 5 years after it has lapsed as long as you have not surrendered it for its cash value.

To reinstate this policy and any riders:

**1**

You must submit proof which satisfies us that all insureds are still insurable.

**2**

You must pay a premium large enough to keep the policy in force for at least 2 months.

This policy will be reinstated only as of a Monthly Anniversary Date. If you have met conditions 1 and 2 and an insured

dies before the Monthly Anniversary Date on which the policy would be reinstated, we will pay the Death Benefit as of that Monthly Anniversary Date. The accumulation value on the date of reinstatement will be the amount provided by the premium paid to reinstate this policy. Subsequent accumulation values will be calculated as shown in the Accumulation Values provision.

After reinstatement, the Surrender Charges will be those in effect on the date of termination, reduced in the same proportion as the accumulation value on the date of termination bore to the Surrender Charge on that date. The Surrender Charge will not be less than zero.

## Face Amount Change

After the first policy year, you may change your Face Amount by notifying us in writing. Changes are allowed only if this policy continues to qualify as Life Insurance as defined by the Code. Changes listed in 1, 2 and 3 below go into effect on the Monthly Anniversary Date that follows the date we receive your request. If we receive your request on a Monthly Anniversary Date, the change goes into effect on that day. The Face Amount in effect at any time must be

at least equal to the Minimum Face Amount shown on the Policy Data Page.

Increases in the Face Amount must be at least $5,000. Increases cannot be made after the policy anniversary following the insured's 75th birthday.

Decreases in Face Amount are allowed only if the cash value is greater than zero. At least 6 months must elapse between decreases.

continued

Face Amount Change

Changes are subject to the following:

**1**

If a decrease in Face Amount is requested, the reduction will be applied in the following order:

**a**

To the most recent increase in Face Amount.

**b**

To the next most recent increases in Face Amount.

**c**

To the Initial Face Amount on the Policy Date or the current Face Amount if smaller.

**2**

If the Additional Amount Option is in effect, you may request in writing to change to the Level Amount Option. In this event, the Face Amount of this policy is changed so that it equals the Death Benefit in force immediately preceding the effective date of the change.

**3**

If the Level Amount Option is in effect, you may request in writing to change to the Additional Amount Option. This change reduces the Face Amount so that it then equals the Death Benefit minus the accumulation value immediately preceding the effective date of the change.

**4**

An increase will require written proof the insured is still insurable. An approved increase will go into effect on the Monthly Anniversary Date on or next following the date of the approval. If an increase is approved, additional Surrender Charges will be applied to that increase. We will send you written notice of the amount and duration. The Minimum Monthly Premium will be increased when the Face Amount is increased. As specified in the Grace Period provision, a new period will begin during which this policy will not terminate if at least Minimum Monthly Premiums are paid.

---

**Accumulation Value and Nonforfeiture Provisions**

**Accumulation Values**

The accumulation value on the Policy Date will be the initial Net Premium paid on that date minus the monthly deduction for the first policy month. On each subsequent Monthly Anniversary Date, the accumulation value will be calculated as 1 minus 2, plus 3 minus 4 $(1 - 2 + 3 - 4)$, where:

**1**

is the accumulation value on the preceding Monthly Anniversary Date plus one month's interest.

**2**

is any partial withdrawals since the preceding Monthly Anniversary Date plus interest from the date of withdrawal to the Monthly Anniversary Date.

**3**

is the total of all Net Premiums received since the preceding Monthly Anniversary Date plus interest from the date received to the Monthly Anniversary Date.

**4**

is the monthly deduction (as described in the Monthly Deduction provision) for the

policy month following the Monthly Anniversary Date.

On any day other than a Monthly Anniversary Date, the accumulation value will be calculated as 1 minus 2 plus 3 $(1 - 2 + 3)$, where:

**1**

is the accumulation value on the preceding Monthly Anniversary Date plus interest from the Monthly Anniversary Date to the date of the calculation.

**2**

is any partial withdrawals since the preceding Monthly Anniversary Date plus interest from the date of withdrawal to the date of the calculation.

**3**

is the total of all Net Premiums received since the preceding Monthly Anniversary Date plus interest from the date received to the date of the calculation.

Interest Rate on Accumulation Value

The guaranteed interest rate applied in the calculation of the accumulation value is .36748% per month, compounded monthly. This is equivalent to 4½% per year, compounded yearly. Interest in excess of the guaranteed rate may be applied in the calculation of the accumulation value in a manner which our Board of Directors determines. However, interest in excess of .36748% per month, compounded monthly,

will not apply to any part of the accumulation value that is less than the Guaranteed Interest Base, which is shown on the Policy Data Page.

The interest rate applied to any portion of the accumulation value which represents a loan may be less than the interest rate applied to the rest of the accumulation value.

## Monthly Deduction

"Monthly deduction", as used in this policy, refers to a charge which is made against the accumulation value. It does not refer to your premium payment.

The monthly deduction for a policy month will be calculated as 1, plus 2, plus 3, plus 4 (1 + 2 + 3 + 4), where:

**1**

is the cost of insurance (as described below) and the cost of any rider benefits for the policy month.

**2**

is the Monthly Policy Charge. This charge and the Term during which it is applied is shown on the Policy Data Page.

**3**

is the Monthly Amount Charge per $1000 (shown on the Policy Date Page) multiplied

by the Face Amount divided by $1,000. This charge applies to the Initial Face Amount and to any increases in Face Amount during the Term shown on the Policy Data Page. The Term applies to the Initial Face Amount from the Effective Date of the policy and to any increases in Face Amount from the effective date of that increase. This charge is not made if the increase in Face Amount is due solely to a change of Death Benefit from the Additional Amount Option to the Level Amount Option. This charge applies to the Face Amount of the Additional Insured Rider in the same way that it applies to this policy's Face Amount.

**4**

is the Monthly Administrative Charge shown on the Policy Data Page. This charge applies in all policy years. The Monthly Administrative Charge is subject to change but will not exceed $5.

## Cost of Insurance

We determine the cost of insurance on a monthly basis. The cost of insurance is determined separately for the Initial Face Amount and any increases made later. If the Level Amount Option is in effect and there have been increases in the Face Amount, then the accumulation value will first be considered to be a part of the Initial Face Amount. If the accumulation value on the Monthly Anniversary Date exceeds the Initial Face Amount, it will be considered to be a part of any increases in Face Amount in the order of these increases. The cost of insurance is calculated as 1 multiplied by the result of 2 minus 3 [1 x (2 - 3)] where:

**1**

is the cost of insurance rate as described in the Cost of Insurance Rates provision.

**2**

is the Death Benefit at the beginning of the policy month, divided by 1.0036748.

**3**

is the accumulation value at the beginning of the policy month.

## Cost of Insurance Rates

The monthly cost of insurance rate for this policy is based on the insured's sex, attained age, and premium rate class as shown on the Policy Data Page. If your Death Benefit is a percentage of the accumulation value as described under the definition of "Death Benefit" in Level Amount Option, item 2, or Additional Amount Option, item 2, the premium rate class with the most recent effective date will apply. Attained age means age last birthday on the prior policy anniversary. We will determine monthly cost of insurance rates based upon expectations as to future cost factors. Any change in cost of insurance rates will apply to all in the same insurance class whose policies have been in force for the same period of time.

The cost of insurance rates for those in other than a rated premium class can never be greater than those shown in the Table of Monthly Guaranteed Cost of Insurance Rates. For Face Amounts for insureds in a rated premium class, the guaranteed cost of insurance rates are calculated by multiplying the rates shown in the Table of Guaranteed Cost of Insurance Rates by the Premium Class Rating Factor shown on the Policy Data Page. The guaranteed maximum rates are based on the Commissioners 1958 Standard Ordinary Mortality Table.

## Basis of Computations

Guaranteed cash values are based on the Commissioners 1958 Standard Ordinary Mortality Table, age last birthday, with interest at 4½% per year, compounded yearly. Where required, a detailed statement of the method of computation of

cash values under this policy has been filed with the insurance department of the state in which this policy was delivered. Cash values under this policy are not less than the minimums required by the state in which this policy was delivered.

## Nonforfeiture Provisions

### Continuation of Insurance (Extended Insurance)

In the event planned periodic premiums are not continued, insurance coverage under this policy and any benefits provided by rider will be continued until the cash value minus any policy loans is not large enough to cover the monthly deduction. In this event, the policy will continue in force

until the end of the grace period. (See the Grace Period provision.) The Face Amount and Death Benefit Option during the continuation of insurance will be the same as when planned periodic premiums were last being paid unless you make later changes in the Face Amount.

### Paid-up Option

At any time before the policy anniversary following the insured's 95th birthday, you may use the cash value minus any policy loans to purchase single premium paid-up life insurance. The amount by which this insurance exceeds its cash value cannot be greater than the amount by which this policy's death benefit exceeds this policy's accumulation value. On the policy anniversary following the insured's 95th birthday, the cash value minus any policy loans will

automatically be used to purchase single premium paid-up life insurance. We base the single premium for paid-up insurance on the insured's sex, age, and premium classes at the time this option is exercised and the single premium life insurance rates in effect at that time. These rates may not exceed the net single premium rates based on the Commissioners 1958 Standard Ordinary Mortality Table, age last birthday, with 4½% interest.

**Cash Value,
Full Cash
Surrender, and
Partial Withdrawal
Benefits**

## Cash Value

The cash value of this policy is the accumulation value minus any Surrender Charge.

## Surrender Charge

The Surrender Charge is a charge against the accumulation value. The amount and duration of the Surrender Charges is shown on the Table of Surrender Charges on the Policy Data Page.

Additional Surrender Charges will apply to any approved increase in the Face Amount and increases to this policy resulting from the Insured's Cost of Living Rider, if attached to this policy. We will send you written notice of the amount and duration. This charge is not made if the increase in Face Amount is due solely to a change of Death Benefit from the Additional Amount Option to the Level Amount Option.

Any decrease in Face Amount will not reduce the original or any additional Surrender Charges.

## Full Cash Surrender

You may surrender this policy for its full cash value by sending us written notice. The amount of the cash surrender will be equal to the cash value minus any policy loans.

The cash value within 30 days of a policy anniversary may not be less than the cash value on such anniversary, minus any subsequent partial withdrawals.

## Partial Withdrawal

After the first policy year, you may withdraw part of your policy for cash by sending us written notice. The amount of any partial withdrawal must be at least the minimum partial withdrawal we currently require. The maximum partial withdrawal equals the cash value times the Percent of Partial Withdrawal shown on the Policy Data Page but not to exceed the amount available at full cash surrender. Only one partial withdrawal is allowed in any policy year. The accumulation value is reduced by the amount of the partial withdrawal.

If the Level Amount Option is in effect, the Face Amount will be reduced by the amount of the partial withdrawal requested. The Face Amount after withdrawal may not be less than the Minimum Face Amount shown on the Policy Data Page. We have the right to wait to pay for up to 6 months after we receive notice.

The reductions in Face Amount due to any partial withdrawal will be applied in the following order:

**1**

To the most recent increase in Face Amount.

**2**

To the next most recent increases in Face Amount.

**3**

To the Initial Face Amount or the current Face Amount if smaller.

**Policy Loans**

## Cash Loans

After the first policy year, if this policy has a loan value, you may use it as security to take out a loan from us. We will not lend you more than the loan value. We will deduct any unpaid policy loans before paying the proceeds.

The loan value is the total of:

The cash value.

*Minus* unpaid policy loans.

*Minus* loan interest to the end of the then current policy year.

## Loan Interest

We charge interest at the loan interest rate shown on the Policy Data Page, unless we charge a lower rate. We will let you know in writing of any change in the loan interest rate. We will also notify all collateral assignees we have on record of the change. If you have an existing loan, we will give notice of any increase in the loan interest rate at least 30 days before the increase goes into effect. We will never increase the loan interest rate beyond that shown on the Policy Data Page or change the rate more often than once in any 12-month period. Also, we will never increase the loan interest rate by more than 1% per year.

On the date of the loan, interest is due in advance until the next policy anniversary. After that, interest for each full year is due in advance. Unpaid interest becomes a part of the existing loan, and we charge interest on it.

## Repayment

You may repay all or part of any policy loan during the insured's lifetime. If not repaid during the insured's lifetime, we deduct the policy loan from the proceeds.

When you make a payment on a policy loan, you must tell us that you are making a loan payment.

When there is an outstanding policy loan, we reserve the right to consider the sum of any payments, planned or unscheduled, we receive as policy loan repayments and not as premium payments.

## Beneficiary

The beneficiary is named to receive the proceeds to be paid at the insured's death. You may name one or more beneficiaries on the application. Later, you may name, add, or change beneficiaries by written request as described below. You may also choose to name a beneficiary whom you cannot change without his or her consent. This is an irrevocable beneficiary.

## Naming, Adding, or Changing Beneficiaries

You can name, add, or change beneficiaries by written request if all of these are true:

**1**
This policy is in force.

**2**
The insured is alive.

**3**
We have the written consent of all irrevocable beneficiaries.

A change will take effect as of the date it is signed but will not affect any payment we make or action we take before receiving your notice.

## Paying Proceeds

We pay death proceeds in the following order:

**1**
Collateral assignees, if any, have first priority.

**2**
The beneficiary, if any, receives any proceeds that remain. If there is more than one beneficiary, each receives an equal share, unless you have requested another method in writing. To receive proceeds, a beneficiary must be living on the 10th day after the insured's death.

**3**
If there are no beneficiaries, you receive any proceeds that remain.

| Control of Policy | Ownership |
|---|---|

As owner, you have the rights and duties outlined in this policy. However, we need the written consent of all irrevocable beneficiaries if you wish to do any of these:

**1**
Surrender this policy or make a partial withdrawal for cash.

**2**
Receive a cash loan.

**3**
Exercise the Paid-up Option before the insured's age 95.

**4**
Change the owner.

**5**
Name or change a contingent owner.

**6**
Add either a Children's Insurance Rider or a Additional Insured Rider or make an increase in either rider's Face Amount that requires proof of insurability.

**7**
Change a beneficiary.

**8**
Choose or change a Settlement Option.

**9**
Assign this policy or any of its benefits as collateral.

We also need the written consent of any collateral assignee if you wish to do 1 through 6 above. Your rights, as outlined in this policy, end at the insured's death.

## Collateral Assignment

You can assign the benefits of this policy as collateral for a debt. This limits your rights to the cash value and the beneficiary's rights to the proceeds. A collateral assignment does not change the owner. A collateral assignee does not have ownership rights.

An assignment is not binding on us until we receive written notice of it. We assume no responsibility as to the validity of any assignment. When we pay proceeds, we may rely on what the collateral assignee states as the debt due.

## Changing Ownership

You can change the owner of this policy by sending us written notice. This is called an "absolute assignment." You transfer all your rights and duties as owner to a new owner. The new owner can then make any change the policy allows.

You can also name a contingent owner who will own this policy at your death. You may name, change, or withdraw a contingent owner by sending us written notice.

An absolute assignment or contingent owner request:

| |
|---|
| Does not change the coverage or the beneficiary. |
| Applies only if we receive your notice. |
| Takes effect from the date signed. |
| Does not affect any payment we make or action we take before receiving your notice. |
| Is not a collateral assignment. |

**Settlement Options**

Settlement Options are ways of paying the proceeds of this policy. These options apply to:

**1**

Payment of proceeds at death.

**2**

Proceeds payable upon total surrender of this policy for its cash value.

We pay the proceeds to a payee. A payee is one to whom we may pay part or all of the proceeds or interest. The primary payee is the first person to whom benefits are payable. If the primary payee dies before we have made all payments under Option 2, 3, or 4, we pay the remaining payments to any contingent payee. We pay the proceeds in one sum, unless one or more of the following options are requested and we agree to it. We will also use any other method of payment that is acceptable to you and to us.

Under Options 2, 3, 4, and 5 we pay the first installment as of the date we issue a supplemental contract to pay the proceeds.

Under Option 6 we pay the first installment at the end of the interval it applies to.

**Option 1**

The proceeds are left with us to earn interest. The withdrawal rights, the length of time we will hold the proceeds, and any future change of option are subject to our approval.

**Option 2**

We pay the proceeds with interest in equal installments for the amount you choose at equal intervals until the proceeds and interest are all paid. The interval you choose may be a month, 3 months, 6 months, or a year. The amount chosen for each installment must be such that the total installments payable in any 12 months is at least 7% of the total amount of the proceeds.

The last installment will be for the remaining proceeds and interest and might not be equal to the other installments.

**Option 3**

We pay the proceeds in equal installments at equal intervals for the number of years you choose. The interval may be a month, 3 months, 6 months, or a year. Use the Option 3 Table to determine the amount of each installment. If you ask, we will tell you the payment amounts for numbers of years or intervals not shown.

**Option 3 Table**

| Number of Years | Monthly Payments Per $1000 of Proceeds |
|---|---|
| 5 | $18.12 |
| 10 | $ 9.83 |
| 15 | $ 7.10 |
| 20 | $ 5.75 |
| 25 | $ 4.96 |

**Option 4**

The proceeds are used to provide an annuity with 60, 120, 180, or 240 months "certain." This means that we continue paying the primary payee in equal monthly installments for as long as the primary payee lives with a number of months "certain." "Certain" means that we make payments for at least as long as the period you choose (either 60, 120, 180, or 240 months), no matter when the primary payee dies. If the primary payee dies before the "certain" period ends, the remaining payments are payable to the contingent payee.

We compute the installments using the calendar year in which the proceeds are applied and the payee's sex and age at that time. We require written proof of the payee's age. The Option 4 Table shows the amount of each installment for a 120-month "certain" period plus as long after as the primary payee lives. We compute the amount of each installment for the other "certain" periods on a similar basis. If you ask, we will tell you any of these payment amounts.

Option 4 Table
Monthly Income
Per $1000 of Proceeds
Monthly Income with 120 Months
Certain if Year of Settlement is:

| Male Age | 1980-1984 | 1985-1989 | 1990-1994 | After 1994 |
|---|---|---|---|---|
| 50 | $5.41 | $5.15 | $4.86 | $4.50 |
| 55 | $5.81 | $5.56 | $5.26 | $4.88 |
| 60 | $6.31 | $6.07 | $5.77 | $5.38 |
| 65 | $6.92 | $6.71 | $6.42 | $6.03 |
| 70 | $7.63 | $7.46 | $7.21 | $6.85 |

| Female Age | 1980-1984 | 1985-1989 | 1990-1994 | After 1994 |
|---|---|---|---|---|
| 50 | $5.09 | $4.84 | $4.56 | $4.23 |
| 55 | $5.44 | $5.19 | $4.90 | $4.56 |
| 60 | $5.88 | $5.65 | $5.35 | $5.00 |
| 65 | $6.45 | $6.24 | $5.95 | $5.58 |
| 70 | $7.19 | $7.00 | $6.74 | $6.38 |

## Option 5

The proceeds are used to provide a "joint and two-thirds to survivor" life income for two payees. We make monthly payments jointly to the two payees as long as they both live. When one payee dies, the other receives two-thirds of the amount of the joint monthly payment for life. Payments stop when both payees have died. We compute the payment amounts using the calendar year in which the proceeds are applied and the payees' sexes and ages when the proceeds are applied. The original monthly payment for joint payees, one male and one female, is shown for selected ages in the Option 5 Table. We will quote values for other age and sex combinations upon request.

Option 5 Table
Original Monthly Installment
for Each $1000 of Proceeds
According to the Age
and Sex of Each Payee.

| | Male Age | | |
|---|---|---|---|
| Female Age | 60 | 65 | 70 |
| 60 | $5.65 | $5.95 | $6.29 |
| 65 | $5.99 | $6.36 | $6.77 |
| 70 | $6.39 | $6.86 | $7.39 |

## Option 6 (Annuity Option)

The proceeds are used to provide an annuity. Each annuity installment is 103% of the payment that we would make if the payee had used the proceeds to buy a similar, nonparticipating, single premium immediate annuity at our rates on the date the proceeds are applied. We pay these installments at the end of the interval they apply to. We will not apply this option if a similar option would be more favorable to the payee when proceeds are applied.

## Choosing Options

Settlement Options are chosen or withdrawn by making a written agreement with us or by sending us written notice. Our approval is needed for an option to be chosen or withdrawn. Before the insured's death, only you can choose or withdraw an option. After the insured's death, a beneficiary may choose an option depending on prior restrictions made by you or a collateral assignee. A change of beneficiary or owner withdraws all chosen options; you must choose again any options you want.

We issue a supplemental contract for proceeds applied under any option. We need not accept an option where less than $2,500 will be applied for each payee. In this case, we may pay a payee's proceeds in one sum. Under an installment option, each payment must be at least $25. If needed, we may increase the time between payments to 3 months, 6 months, or a year to make each payment at least $25.

Death of Payee

Unless we have agreed otherwise, if a payee dies after we have paid or credited proceeds under Option 1, we will pay the proceeds and any unpaid interest in one sum to the payee's estate. Unless we have agreed otherwise, if a payee dies after we have paid or credited proceeds under Option 2, 3, or 4, we will pay the remaining payments to any contingent payees. If there are no contingent payees, we pay the following amounts to the primary payee's estate:

1

Under Option 2 - any unpaid sum left with us plus any unpaid interest on that sum.

2

Under Option 3 – the commuted value (based on 3½% a year compound interest) of any unpaid installments.

3

Under Option 4 – the commuted value (based on 3½% a year compound interest) of any unpaid installments remaining in the "certain" period.

Protection of Proceeds

Unless we have agreed otherwise, a payee may not do any of the following:

1

Withdraw any part of the proceeds or interest.

2

Change the fixed payment intervals or the length of the payment period.

3

Change the settlement option.

4

Change the amount of payment.

5

Surrender the supplemental contract for cash.

6

Borrow against the supplemental contract.

7

Assign the supplemental contract.

If the payee chooses Option 1, 2, or 3, the payee may change the option and transfer the funds that remain to a new option. This applies unless prevented by a written agreement with us.

A payee's creditors may not claim any of the proceeds or interest. This provision applies unless altered by federal or state law.

Interest on Settlement Options

We base the interest rate for funds under Options 1 and 2 on the interest rate we declare on funds that we consider to be in the same classification based on the option, restrictions on withdrawal, and other factors. The interest rate will never be less than 3½% a year compounded annually.

In determining amounts to be paid under Options 3 and 4, we assume interest at 3½% a year compounded annually. Also, for Option 3 and "certain" periods under Option 4, we credit any excess interest we may declare on funds that we consider to be in the same classification based on the option, restrictions on withdrawal, and other factors.

## Termination

This policy ends when any of the following occur:

**1**

The end of the grace period if the required premium is not paid.

**2**

The insured dies.

**3**

You ask us in writing to surrender this policy for its full cash value.

**4**

The policy anniversary following the insured's 95th birthday.

If we make a monthly deduction from the accumulation value after terminating this policy, the deduction is not considered a reinstatement of the policy or a waiver of the terminations. That deduction will be credited to the accumulation value as of the date of the deduction.

## Annual Report

Each year we will send you free of charge an annual report showing your cash value and accumulation value as of the date of the report, the premiums paid, interest credited, and the loans and charges since the last report. We will send you additional reports for a fee upon request.

## Projection Report

If you ask, we will provide a report which shows projected future results. The report will be based on the following assumptions:

**1**

The Death Benefit Option you specify.

**2**

Planned periodic premiums you specify.

**3**

Accumulation value at the end of the prior policy year.

**4**

Any other necessary assumptions specified by you or us.

We will charge a fee for each report.

## Deferment

We may defer granting a loan or paying any cash surrender or partial withdrawals for the period law permits, but not beyond 6 months. We cannot defer granting a loan solely to pay premiums on one of your policies with us. If we defer paying the cash surrender or partial withdrawal for 30 days or more, we pay interest at 3-1/2% a year from the surrender or withdrawal date to the payment date.

## Nonparticipating

This contract does not entitle you to participate in our surplus.

## Amendment

We reserve the right to amend this policy in order to include any future changes relating to this policy's remaining qualified for treatment as a Life Insurance policy under the following:

• The Code.

• Internal Revenue Service rulings and regulations.
• Any requirements imposed by the Internal Revenue Service.

We will send you a copy of any amendments promptly.

## Disclaimer

We are not liable for any tax or tax penalty you owe resulting from failure to comply with the requirements of the Code, Regulations and Rulings imposed on this policy.

**General Provisions**    Payment of Proceeds

We pay all proceeds from this policy from our Home Office in Minneapolis, Minnesota. Before paying the proceeds, we may require that you send us this policy. We make payments under Settlement Options 4, 5, and 6 only to a natural person in that person's own right. In settling this policy, we deduct all policy loans, unpaid loan interest, and unpaid monthly deductions due on or before the insured's death.

We pay interest on the proceeds at death for the time between the insured's death and:

1
The date we pay proceeds, or

2
The date we issue a supplemental contract,

whichever is earlier.

Interest on these funds is never less than 3 ½ % compounded annually.

### Incontestability

This policy has a 2 year contestable period running from the Issue Date shown on the Policy Data Page. After this policy has been in force during the insured's lifetime for 2 years from the Issue Date, we cannot claim your policy is void or refuse to pay any proceeds with respect to the Initial Face Amount unless the policy has lapsed.

If you make a Face Amount increase or premium payment that requires proof of insurability, the corresponding Death Bene-

fit increase has its own 2 year contestable period running from the effective date of the increase in Death Benefit.

If this policy is reinstated, this provision will be measured from the date of reinstatement.

### Age and Sex

If the insured's age or sex is misstated, we adjust the proceeds by the difference between the monthly deductions made and those that should have been made. In

adjusting the proceeds we will use the interest rates we have credited on the accumulation value at the time the deductions were originally made.

### Suicide

If the insured commits suicide, while sane or insane, within 2 years of the Issue Date, we only refund all premiums already paid on this policy and any attached riders, minus any policy loans, and minus partial withdrawals.

Also, if the insured commits suicide, while sane or insane, within 2 years of the effective date of an increase in Face Amount or premium payment that requires proof of insurability, for the proceeds associated with that increase, we only refund the cost of insurance for that increase.

## Modification Rider

This rider is a part of the base policy whose number is shown below. If not shown below, the Base Policy Number is shown on the Policy Data Page.

| Rider Data | Base Policy Number |
| --- | --- |

It is hereby agreed that this policy is amended to add the following wording:

The first paragraph under the Partial Withdrawal provision is changed to read as follows:

After the first policy year, you may partially withdraw part of your policy for cash by sending us written notice. The amount of a partial withdrawal must be for at least the minimum partial withdrawal amount we currently require. The amount of a partial withdrawal cannot be greater than the amount available at full cash surrender. Only one partial withdrawal can be made in any policy year.

The Maximum Withdrawal Without Surrender Charge in any policy year is equal to the cash value times the Percent of Partial Withdrawal shown on the Policy Data Page, but not to exceed the amount available at full cash surrender.

If in any policy year, the partial withdrawal requested is less than or equal to the Maximum Withdrawal Without Surrender Charge, the accumulation value will be reduced by the amount of the partial withdrawal. We will not deduct a Surrender Charge from the accumulation value.

If in any policy year, the partial withdrawal requested is greater than the Maximum Withdrawal Without Surrender Charge, we will reduce the accumulation value as follows:

1

by the Maximum Withdrawal Without Surrender Charge. We will not deduct a partial Surrender Charge from the accumulation value for this portion of the partial withdrawal; and

2

by the amount of the partial withdrawal in excess of the Maximum Withdrawal Without Surrender Charge; and

3

by a partial Surrender Charge based on the excess partial withdrawal amount in item 2. The partial Surrender Charge will be in proportion to the charge that would apply to a full cash surrender. The proportion will be computed as the excess partial withdrawal amount in item 2, divided by the result of the accumulation value (reduced as stated in item 1) minus the Surrender Charge. Future Surrender Charges will be reduced in the same proportion.



**Nothwestern National Life Insurance Company**

Box 20
Minneapolis
Minnesota 55440

Executed at our
Home Office

| John G. Turner | President |
| --- | --- |
| William F. Spanton | Secretary |
| Countersigned | Registrar |

## Flexible Premium Adjustable Whole Life Insurance Policy

Death Benefit Payable at Death

Flexible Premiums Payable during the Insured's Lifetime

Adjustable Face Amount

Nonparticipating

**Notice**

To make a claim or exercise your rights under this policy, please write to us at the address below and include your policy number:



**Northwestern National Life Insurance Company**

Box 20
Minneapolis
Minnesota 55440

Writing directly to us will save time and expense. You do not need to hire any person, firm, or corporation unless, because of a dispute, you wish to.

POLICY NUMBER                    B-000-000

| ANNUAL REPORT REPORT | THE PLAN   3 | | A FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY |

| PREPARED FOR | INSURED<br>ISSUE AGE AND SEX<br>OWNER<br>ADDRESS<br><br>DATE OF REPORT<br>POLICY DATE | JOHN DOE<br>MALE - 35<br>JOHN DOE<br>123 MAIN STREET<br>ANYTOWN, USA<br>JULY 1, 1984<br>JULY 1, 1983 |

| POLICY | STATUS OF YOUR POLICY<br>OF LAST ANNUAL REPORT<br><br>FACE AMOUNT<br>DEATH BENEFIT OPTION<br>PLANNED PERIODIC PREMIUM<br>ACCUMULATION VALUE<br>CASH VALUE | (THIS SECTION WILL APPEAR<br>ON ALL ANNUAL REPORTS<br>AFTER THE FIRST ONE.) |

PREVIOUS
POLICY
YEAR'S
TRANS-
ACTIONS

| MONTH/YEAR | PREMIUMS RECEIVED | EXPENSES CHARGED | COST OF INSURANCE |
|---|---|---|---|
| 4/82 | | | |
| 5/82 | | | |
| etc. | | | |

| MONTH/YEAR | INTEREST CREDITED* | PARTIAL SURRENDERS | ENDING ACCUMULATION VALUE |
|---|---|---|---|
| 4/82 | | | |
| 5/82 | | | |
| etc. | | | |

| MONTH/YEAR | ENDING CASH VALUE | TOTAL LOAN | |
|---|---|---|---|

*THE ACCUMULATION VALUE
WAS CREDITED INTEREST AT
THE RATE OF 11.50% THE

LOANED PORTION OF THE ACCUMULATION
VALUE WAS CREDITED INTEREST AT
THE RATE OF X%.

| CURRENT POLICY STATUS (AS OF JULY 1, 1983). | FACE AMOUNT<br>DEATH BENEFIT OPTION<br>PLANNED PERIODIC PREMIUM<br>ACCUMULATION VALUE<br>CASH VALUE |

PAGE 1

POLICY NUMBER                           B-000-000

| ANNUAL REPORT (CONTINUED) | THE PLAN 3 | A FLEXIBLE PREMIUM ADJUSTABLE LIFE INSURANCE POLICY |
|---|---|---|

| HISTORY OF FACE AMOUNT | FACE AMOUNT | PREMIUM RATE CLASS | EFFECTIVE DATE |
|---|---|---|---|

| PROJECTION OF POLICY | BASED ON YOUR POLICY'S CASH VALUE OF $          ON (POL. ANN. DATE), AND THE PAYMENT OF YOUR CURRENT PLANNED PERIODIC PREMIUM OF $          PER (PERIOD) FOR THE NEXT POLICY YEAR, | YOUR POLICY'S CASH VALUE ON (NEXT POL. ANN.) WILL BE $          . THIS AMOUNT IS BASED ON OUR CURRENT INTEREST RATE AND COST OF INSURANCE ASSUMPTIONS. |
|---|---|---|

| PROVIDED BY | COMPANY | NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY |
|---|---|---|
| | AGENT | |
| | ADDRESS | |

| | | |
|---|---|---|
| | POLICY NUMBER | 30-000-000 |
| | STATEMENT OF POLICY COST AND BENEFIT INFORMATION | |
| | STATEMENT PREPARATION DATE | 7-01-1983 |
| PREPARED FOR | INSURED ISSUE AGE AND SEX | JOHN DOE 35- MALE |
| AGENT | NAME | |
| | ADDRESS | |
| | COMPANY ADDRESS | NORTHWESTERN NATIONAL LIFE INS 20 WASHINGTON AVENUE SOUTH MINNEAPOLIS MINNESOTA   55440 |
| POLICY INFORMATION | INITIAL FACE AMOUNT PREMIUM | $100,000 STANDARD |
| | DEATH BENEFIT OPTION | OPTION A (LEVEL AMOUNT OPTION) |
| | INITIAL PREMIUM | $150.00 |
| | PLANNED PERIODIC PREMIUM | AMOUNT:  $150.00 FREQUENCY:  MONTHLY |
| | POLICY LOAN INTEREST RATE | 7.4% PAYABLE IN ADVANCE |

CONTINUED
ON NEXT PAGE

PAGE 1

(CONTINUED)          POLICY NUMBER

|  | STATEMENT OF POLICY COST AND BENEFIT INFORMATION | 7-01-1983 |
|---|---|---|

| PREPARED FOR | INSURED ISSUE AGE AND SEX | JOHN DOE 35 - MALE |
|---|---|---|

TABLE OF VALUES*

| POLICY YEAR | END OF YEAR DEATH BENEFIT GUARANTEED | CURRENT | END OF YEAR CASH VALUE GUARANTEED | CURRENT |
|---|---|---|---|---|
| 1 | 100,000 | 100,000 | 0.00 | 34.75 |
| 2 | 100,000 | 100,000 | 1,478.36 | 1,690.67 |
| 3 | 100,000 | 100,000 | 3,027.53 | 3,525.80 |
| 4 | 100,000 | 100,000 | 4,629.40 | 5,561.89 |
| 5 | 100,000 | 100,000 | 6,283.87 | 7,821.53 |
| 10 | 100,000 | 100,000 | 16,105.74 | 24,224.03 |
| 15 | 100,000 | 100,000 | 27,401.18 | 51,861.73 |
| 20 | 100,000 | 124,680 | 39,600.61 | 98,809.10 |
| 25 | 100,000 | 216,543 | 53,838.55 | 178,818.04 |
| 30 | 100,000 | 364,094 | 71,093.44 | 313,731.57 |

| LIFE INSURANCE COST INDEXES ARE USEFUL ONLY FOR THE COMPARISON OF TWO OR MORE SIMILAR POLICIES AN EXPLA- | NATION OF THE INTENDED USE OF THE INDEXES IS PROVIDED IN THE LIFE INSURANCE BUYERS GUIDE. |
|---|---|

INDEXES PER $1,000*

| SURRENDER COST INDEX | GUARANTEED | CURRENT |
|---|---|---|
| 10 YEAR | 5.81 | -0.34 |
| 20 YEAR | 6.59 | -10.21 |
| NET PAYMENT COST INDEX | | |
| 10 YEAR | 18.00 | 18.00 |
| 20 YEAR | 18.00 | 17.57 |

| POLICY YEAR | END OF YEAR ACCUMULATION VALUE GUARANTEED | CURRENT | |
|---|---|---|---|
| 1 | 1,442.05 | 1,494.25 | THE SURRENDER CHARGE APPLICABLE TO THE INITIAL FACE AMOUNT IS ZERO AFTER 15 POLICY YEARS.  IF THERE ARE NO SUBSEQUENT FACE AMOUNT INCREASES, THE CASH VALUES AND ACCUMULATION VALUES ARE EQUAL AFTER 15 YEARS |
| 2 | 2,938.86 | 3,150.17 | |
| 3 | 4,487.03 | 4,985.30 | |
| 4 | 6,088.90 | 7,021.39 | |
| 5 | 7,743.37 | 9,281.03 | |
| 10 | 16,835.49 | 24,953.78 | |
| 15 | 27,401.18 | 51,861.73 | |

| *VALUES AND INDEXES SHOWN ARE BASED ON THE DEATH BENEFIT OPTION CHOSEN AT ISSUE, THE INITIAL FACE AMOUNT, AND PAYMENT OF THE INITIAL PREMIUM AND THE PLANNED PERIODIC | PREMIUM.  CURRENT DEATH BENEFIT, CURRENT ACCUMULATION VALUES AND CURRENT CASH VALUES ARE BASED ON THE CURRENT COST C INSURANCE RATES AND AN INTEREST RATE OF 11.50%. |
|---|---|

NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY
*****PROJECTION REPORT AS OF: 07/01/93*****
POLICY NUMBER: 80-000-000
*************************************************

INFORMATION FOR PRIMARY INSURED
*************************************************

NAME OF INSURED: JOHN DOE
ISSUE AGE OF INSURED: MALE 35
PREMIUM RATE CLASS OF INSURED: STANDARD
RATING OF INSURED: 100%
CURRENT FACE AMOUNT OF INSURED: $100,000 (OPTION A)
PREMIUM MODE: MONTHLY

ACCUMULATION VALUE ON 07/01/93:       $24,953.78
CASH VALUE ON 07/01/93:               $24,224.03
EXISTING POLICY LOANS ON 07/01/93:    $      0.00
CASH SURRENDER VALUE ON 07/01/93:     $24,224.03

| AGE | END OF POLICY YEAR | ANNUAL PREMIUM | DEATH BENEFITS GUARANTEED | DEATH BENEFITS CURRENT* | ACCUMULATION VALUES GUARANTEED | ACCUMULATION VALUES CURRENT* | CASH VALUES GUARANTEED | CASH VALUES CURRENT* |
|---|---|---|---|---|---|---|---|---|
| 44 | 10 |   | 100,000.00 | 100,000.00 | 18,835.49 | 24,953.78 | 16,105.74 | 24,224.03 |
| 45 | 11 | 1,800.00 | 100,000.00 | 100,000.00 | 18,827.04 | 29,224.09 | 18,243.24 | 28,840.29 |
| 46 | 12 | 1,800.00 | 100,000.00 | 100,000.00 | 20,878.52 | 33,986.48 | 20,440.67 | 33,547.03 |
| 47 | 13 | 1,800.00 | 100,000.00 | 100,000.00 | 22,980.76 | 38,298.30 | 22,698.65 | 38,006.93 |
| 48 | 14 | 1,800.00 | 100,000.00 | 100,000.00 | 25,161.08 | 42,231.08 | 24,881.64 | 42,608.93 |
| 49 | 15 | 1,800.00 | 100,000.00 | 100,000.00 | 27,401.18 | 61,561.73 | 27,401.18 | 61,961.73 |
| 50 | 16 | 1,800.00 | 100,000.00 | 100,000.00 | 29,701.88 | 59,274.85 | 29,701.88 | 59,274.85 |
| 51 | 17 | 1,800.00 | 100,000.00 | 100,000.00 | 32,063.98 | 67,663.82 | 32,063.98 | 67,663.82 |
| 52 | 18 | 1,800.00 | 100,000.00 | 100,000.00 | 34,505.00 | 76,664.61 | 34,505.00 | 76,664.61 |
| 53 | 19 | 1,800.00 | 100,000.00 | 111,000.00 | 37,015.13 | 87,258.66 | 37,015.13 | 87,258.66 |
| 54 | 20 | 1,800.00 | 100,000.00 | 124,680.00 | 39,600.61 | 98,609.10 | 39,600.61 | 98,609.10 |
| 55 | 21 | 1,800.00 | 100,000.00 | 139,728.00 | 42,288.35 | 111,840.11 | 42,298.35 | 111,840.11 |
| 56 | 22 | 1,800.00 | 100,000.00 | 156,284.00 | 45,016.79 | 125,892.42 | 45,016.79 | 125,892.42 |
| 57 | 23 | 1,800.00 | 100,000.00 | 174,493.00 | 47,817.41 | 141,172.40 | 47,817.41 | 141,172.40 |
| 58 | 24 | 1,800.00 | 100,000.00 | 194,523.00 | 50,795.21 | 159,289.64 | 50,795.21 | 159,289.64 |
| 59 | 25 | 1,800.00 | 100,000.00 | 216,843.00 | 53,838.65 | 178,818.04 | 53,838.65 | 178,818.04 |
| 60 | 26 | 1,800.00 | 100,000.00 | 240,758.00 | 56,997.78 | 200,489.33 | 56,997.78 | 200,489.33 |
| 61 | 27 | 1,800.00 | 100,000.00 | 267,375.00 | 60,285.66 | 224,542.09 | 60,285.66 | 224,542.09 |
| 62 | 28 | 1,800.00 | 100,000.00 | 296,927.00 | 63,717.83 | 251,235.62 | 63,717.83 | 251,235.62 |
| 63 | 29 | 1,800.00 | 100,000.00 | 308,927.00 | 67,212.88 | 280,236.08 | 67,212.88 | 280,236.08 |
| 64 | 30 | 1,800.00 | 100,000.00 | 366,094.00 | 71,093.46 | 313,731.67 | 71,093.46 | 313,731.87 |

* CURRENT VALUES ARE BASED ON THE CURRENT INTEREST RATE AND THE COST OF INSURANCE RATES.
  CURRENT VALUES ARE SUBJECT TO CHANGE.

  THE CURRENT INTEREST RATE IS 15.50% IS CREDITED TO THE ACCUMULATION VALUE.
  THE GUARANTEED INTEREST RATE IS 4.50%. THE PORTION OF THE ACCUMULATION
  VALUE WHICH IS LOANED IS CURRENTLY CREDITED WITH INTEREST AT THE RATE OF 6.00%.

  THIS REPORT DOES NOT INCLUDE ANY PREMIUMS RECEIVED OR POLICY LOANS OR PARTIAL WITHDRAWALS WHICH
  MAY HAVE TAKEN PLACE AFTER 07/01/93.

Northwestern National Life Insurance Company
Actuarial Memorandum - Flexible Premium
Adjustable Whole Life Insurance Policy
Policy Form 82-800
July 29, 1983

# I. DESCRIPTION OF POLICY CHARACTERISTICS

This is a flexible premium adjustable death benefit life insurance policy.

## A. Death Benefits

This policy offers two Death Benefit Options.  The amount of Death Benefit payable upon the insured's death depends upon the option chosen.

### 1. Option A (Level Amount Option)

The total Death Benefit is the greater of:

a. The Face Amount on the date of death; or

b. 140% of the accumulation value when the insured's age is 40 or less.  Starting on the Policy Anniversary when the insured's age is 41, this percentage of accumulation value will decrease by 1% on each policy anniversary through age 75.  At age 75 or more, the percentage is 105%.

### 2. Option B (Additional Amount Option)

The total Death Benefit is the greater of:

a. The Face Amount on the date of death, plus the accumulation value on the date of death; or

b. 140% of the accumulation value when the insured's age is 40 or less.  Starting on the Policy Anniversary when the insured's age is 41, this percentage of accumulation value will decrease by 1% on each policy anniversary through age 75.  At age 75 or more, the percentage is 105%.

## B. Accumulation and Cash Values

The methodology underlying the determination of accumulation values may be viewed as a retrospective accumulation at interest of net premiums (equal to a constant percentage of the gross premium), less the cost of insurance based on the net amount at risk under the policy, and less a monthly administrative charge not to exceed $5.00.  The cash values are equal to the accumulation values less a surrender charge.  The surrender charge is structured so that it never exceeds the maximum expense allowance under the SNFL.

## C. Nonforfeiture Benefits

There are 2 nonforfeiture benefits available under this policy:

Northwestern National Life Insurance Company, Policy Form 82-800                2.

1. Continuation of Insurance (Extended Insurance) - For any policy month
   in which no premium is received, the policy will be treated as paid-up
   term insurance, comparable to extended term insurance on traditional
   policies.  The cost of insurance rates during this period will be those
   used while the policy was on a premium paying status.  Benefits will be
   continued until the policy terminates in accordance with the Grace Period
   provision.

2. Paid-Up Option - This is comparable to the reduced paid-up option of
   traditional policies.  The owner may elect, at any time prior to the
   policy anniversary following the insured's 95th birthday, to purchase
   paid-up life insurance with the policy's cash value (less any loans).
   On the policy anniversary following the insured's 95th birthday, the
   policy will be automatically changed to fully paid-up life insurance
   using the cash value (less any loans) as the single premium.  The single
   premiums for this insurance will be the single premium life rates in
   effect when the option is chosen, but those rates cannot exceed the net
   single premiums based on the Commissioners 1958 Standard Ordinary
   Mortality Table (1958 CSO) and 4-1/2% interest.

D. Flexibility

At issue the owner selects both a premium amount (planned periodic premium)
and the Face Amount of insurance subject to the minimum amounts.  A Death
Benefit Option is also selected.

A continuation of the original combination of premium, Face Amount, and Death
Benefit Option will result in a coverage period which could range from a very
short term of coverage to a whole life policy with a very limited premium
payment period, depending upon the relationship of the selected values.

At any time while the policy is in-force, the owner may change the planned
periodic premiums and, after the first policy year, may change the Face
Amount of insurance.  Decreases may not lower the Face Amount below the minimum
amount.  Evidence of insurability is required for any increase in Face Amount,
except those provided by an Automatic Cost of Living Rider, and for any premium
payments which would increase the net amount at risk.

Northwestern National Life Insurance Company, Policy Form 82-800          3.

## II. BASIS OF VALUES

### A. Interest

The minimum guaranteed interest rate applied in the calculation of accumula-
tion values under this policy is 4-1/2% per annum.  The Company may apply
increased rates of interest in the calculation of accumulation values.
Currently the Company plans to apply an interest rate greater than 4-1/2%
only to the portion of the accumulation value which exceeds the Guaranteed
Interest Base, which initially will be $0.  The Company may credit a
different rate of interest to the accumulation values which are loaned than
to those which are not loaned.  Because of the retrospective approach used
for the calculation of cash values, the use of the increased rate of interest
(i.e. one greater than the guaranteed rate of 4-1/2% will produce increased
cash values.  Therefore, such use is not in conflict with the maximum interest
rate defined in the Standard Nonforfeiture Law.

### B. Cost of Insurance

The guaranteed maximum cost of insurance rates applied in the calculation of
cash values under this policy are based on the Commissioners 1958 Standard
Ordinary Mortality Table.  Appropriate actuarial adjustments will be made
to the guaranteed maximum rates for those in a rated (substandard) premium
class.  The Company may use cost of insurance rates lower than the guaranteed
maximum rates, thus producing lower costs of insurance and higher cash values
than those generated by the guaranteed rates.

C. The same basis of values applies to both premium paying and paid-up term
insurance (extended insurance).

D. The policy provides for the calculation of accumulation values on a monthly
basis, using the retrospective accumulation approach described in I.B. above.
The policy may be fully surrendered for its cash value.  Also, once each
policy year after the first, a partial withdrawal is allowed subject to a
maximum of a specified percentage of the cash value.  No fee is charged for
partial withdrawals.

Northwestern National Life Insurance Company, Policy Form 82-800                 4.

## III. DEMONSTRATION OF COMPLIANCE WITH STANDARD NONFORFEITURE LAW (SNFL)

For Flexible Premium Adjustabe Life (FPAL), the ultimate plan of insurance at any point in time prior to termination is unknown due to the following:

1. Flexibility of premium payments and death benefits.

2. Amount of interest in excess of 4-1/2% credited to cash values.

3. Monthly cost of insurance rates less than the maximum permitted.

Therefore, it is impossible to calculate FPAL cash values using a prospective type formula. The SNFL defines minimum cash values using a prospective formula, but that formula can be mathematically converted to a retrospective form. The method of calculating FPAL cash values was designed in such a way so that it is consistent with the retrospective equivalent of the SNFL cash value formula.

The following section will demonstrate that FPAL cash values are greater than minimum cash values required by the SNFL formula using the following approach:

1. It will be shown that the FPAL cash value formula is consistent with the formula required by the SNFL.

2. Minimum FPAL cash values will be generated by using the minimum interest rate of 4-1/2% and maximum cost of insurance rates which are based on 1958 CSO mortality table, in the cash value formula. Excess interest and/or lower cost of insurance rates will result in cash values greater than those based on the guaranteed 1958 CSO 4-1/2% basis. The 1958 CSO mortality table combined with 4-1/2% interest is an acceptable basis for calculating cash values according to SNFL.

3. It will be shown that the first year surrender charges for FPAL will at all times be less than the maximum expense allowance permitted by the SNFL.

4. It will further be shown that the surrender charges in renewal years will always be less than the unamortized expense charges permitted by SNFL.

5. The combination of items 1, 2, 3 and 4 above ensures that regardless of the incidence and amount of FPAL premium payments and benefit changes, FPAL cash values will be greater than the minimum SNFL cash values generated by the retrospective equivalent of the SNFL formula.

The following is a definition of terms used in the cash value formulas:

$t$ = duration from policy date measured in months

$n$ = policy year

Northwestern National Life Insurance Company, Policy Form 82-800          5.

$i'$   = interest rate applied to accumulation values which equals $(1.045)^{1/12} - 1$

$t^{q}x$   = 1/12 of the 1958 CSO mortality rate for age x where x is the "age last birthday" as of the policy anniversary prior to month t

$P_t$   = net premium credited to the accumulation value for the month t. This is the gross premium multiplied by the result of 1.00 minus the Percent of Premium Charge shown on the Policy Data Page. Therefore, the net premium is always a constant percentage of the gross premium. All gross premiums are assumed to be paid monthly at the beginning of each month.

$_0E_x$   = surrender charge at time n=0. This is a charge per \$1,000 Face Amount and varies by issue age and sex.

$_nE_x$   = surrender charge at the end of policy year n. The surrender charge remains level for 5 years after issue and subsequently grades uniformly to zero for n $\geq$ 16.

$_tAV$   = accumulation value fund at end of month t.

$_tCV$   = cash value at end of month t

$C_t$   = maximum monthly cost of insurance for month t

The FPAL accumulation value just prior to receipt of the initial premium is zero.

The FPAL accumulation value just after receipt of the initial premium is $P_1$.

The FPAL accumulation at the end of the first month just prior to the payment of the second month's premium is:

(1)   $_1AV = (1+i') \cdot P_1 - (1+i') \cdot C_1$

where:   $C_1 = _1q_x \left( \dfrac{F_1}{1+i'} - P_1 + C_1 \right)$

(2)   $C_1 = \dfrac{_1q_x}{1 - _1q_x} \cdot \left( \dfrac{F_1}{1+i'} - P_1 \right)$

Substituting (2) into (1), we have:

(3)   $_1AV = (1+i') \cdot P_1 - (1+i') \cdot \dfrac{_1q_x}{1 - _1q_x} \left( \dfrac{F_1}{1+i'} - P_1 \right)$

After combining terms, (3) can be expressed as:

Northwestern National Life Insurance Company, Policy Form 82-800                    6.

$$(4) \quad _1AV = \frac{P_1 \cdot (1+i') - {_1}q_x \cdot F_1}{1 - {_1}q_x}$$

$$(5) \quad _1CV = {_1}AV - {_0}E_x$$

For month 2 through 11, formula (4) becomes:

$$_tAV = \frac{({_{t-1}}AV + P_t) \cdot (1+i') - {_t}q_x \cdot F_t}{1 - {_t}q_x}$$

and formula (5) becomes:

$$_tCV = {_t}AV - {_0}E_x$$

Now it is necessary to show that the FPAL cash value formula (5) is identical in form to the SNFL formula for calculating minimum cash values.

The first year minimum cash value required by the SNFL is calculated using a prospective formula involving the present value of future benefits less the present value of future adjusted premiums. This prospective form can be converted into the following retrospective form by using the technique described on Page 106 of Jordan's text on Life Contingencies:

Definitions:

| | | |
|---|---|---|
| $i$ | = | .045 |
| $q_{x+t}$ | = | 1958 CSO mortality rate where age x+t is the "age last birthday" as of the t'th policy anniversary |
| $P_t^A$ | = | adjusted premium in year 1 |
| $P_t$ | = | net premium in year t |
| $P_{OL}^A$ | = | adjusted premium for an ordinary life policy |
| $EC$ | = | SNFL maximum initial expense allowance |
| $_tF$ | = | life insurance proceeds in year t |
| $_tMCV$ | = | SNFL minimum cash value at end of year t |
| $_tV$ | = | net level reserve at end of year t |

The prospective version of cash value formula can be rewritten into a retrospective recursive form as follows:

Northwestern National Life Insurance Company, Policy Form 82-800

7.

$$(_{t-1}CV + P^A) \cdot (1+i) = {}_tCV + q_{x+t-1}({}_tF - {}_tCV)$$

or equivalently

$$_tCV = \frac{(_{t-1}CV + P^A)(1+i) - q_{x+t-1} \cdot {}_tF}{1 - q_{x+t-1}} \quad \text{for } t > 1$$

For t-1, since

$$_0CV = A - P^A \cdot \ddot{a} = A - (A + EC) = -EC$$

Then, the retrospective formula for calculating the SNFL minimum cash value at the end of the first year is:

(6) $$\quad _1MCV = \frac{(P_1^A - EC)(1+i) - {}_1F \cdot q_x}{1 - q_x}$$

which can be re-arranged to:

(7) $$\quad _1MCV = \frac{P_1^A(1+i) - {}_1F \cdot q_x}{1 - q_x} - \frac{EC(1+i)}{1 - q_x}$$

The retrospective formulas for calculating the FPAL cash values, formula (4) and formula (5) are repeated below for comparison with formula (7):

(4) $$\quad _1AV = \frac{P_1(1+i') - {}_1q_x \cdot F_1}{1 - {}_1q_x}$$

(5) $$\quad _1CV = {}_1AV - {}_0E_x = \frac{P_1(1+i') - {}_1q_x \cdot F_1}{1 - {}_1q_x} - {}_0E_x$$

Formula (5) and Formula (7) are identical with the following exceptions:

(a) Formula (5) develops cash values on a monthly basis while Formula (7) is an annual calculation. All the terms in formula (5) are monthly equivalents of the annual values. For example:

$$_1q_x = \frac{1}{12}q_x \qquad (1+i') = (1+i)^{1/12}$$

Northwestern National Life Insurance Company, Policy Form 82-800                     8.

(b) The term $_0E_x$ in formula (5) is analogous to EC in formula (7). It will be demonstrated that the value of $_0E_x$ can never exceed EC, the maximum initial expense allowance under the SNFL. This is a necessary condition in substantiating that the FPAL cash value formula satisfies minimum cash value requirements.

For renewal periods after the first year, the same consistency as demonstrated above exists. Consider the t+1st monthly cash value where $t > 11$, and $1 \leq n < 15$ just prior to the payment of the month1 premium, $P_{t+1}$, which is due at the beginning of the t+1st month. The FPAL formula is:

(8) $\quad _{t+1}AV = (_tAV + P_{t+1})(1 + i') - (1 + i') \cdot C_{t+1}$

where $\quad C_{t+1} = \ _{t+1}q_x \cdot \left[ \dfrac{F_{t+1}}{1+i'} - (_tAV + P_{t+1} - C_{t+1}) \right]$

(9) $\quad C_{t+1} = \dfrac{_{t+1}q_x}{1 - _{t+1}q_x} \left[ \dfrac{F_{t+1}}{1+i'} - (_tAV + P_{t+1}) \right]$

Substituting (9) in (8), we have:

(10) $\quad _{t+1}AV = (_tAV + P_{t+1})(1+i') - (1+i') \dfrac{_{t+1}q_x}{1 - _{t+1}q_x} \left[ \dfrac{F_{t+1}}{1+i'} - (_tAV + P_{t+1}) \right]$

(11) $\quad _{t+1}AV = \dfrac{(_tAV + P_{t+1})(1+i') - _{t+1}q_x \cdot F_{t+1}}{1 - _{t+1}q_x}$

and

(12) $\quad _{t+1}CV = \ _{t+1}AV - _nE_x$

Northwestern National Life Insurance Company, Policy form 82-800                 9.

Using the retrospective method of calculating the SNFL minimum cash value for duration t+1, we have:

$$(13) \qquad _{t+1}\dot{MCV} = \ _{t+1}V - EC \cdot \frac{\ddot{a}_{z+t+1}}{\ddot{a}_z}$$

but $\quad _{t+1}V = \ _{t+1}AV \qquad$, since

$$(14) \qquad _{t+1}V = \frac{(_tV + P)(1+i) - q_{x+t}}{1 - q_{x+t}}, \text{ using the restrospective formula for } _{t+1}V.$$

This is analogous to formula (11), above, which is also an accumulation of net premiums with interest and survivorship.

The SNFL formula (13) is the same as the FPAL formula (12) except for the monthly versus annual time period and the amortization of the first year expense charge.

Effectively, the SNFL formula amortizes the initial expense charges over the premium paying period of the policy while the cash value formula keeps the initial expense charge level for the first 5 years, and then amortizes it over the subsequent 10 years.

We will now demonstrate that the FPAL surrender charge, $_nE_x$ , is at all times less than the unamortized portion of the SNFL maximum $_nE_x$ initial expense allowance, $EC \cdot \frac{\ddot{a}_{x+n}}{\ddot{a}_x}$ . As a result of this demonstration, we can be sure that the FPAL cash values exceed the SNFL minimum cash values in all years and, as such, are in compliance with the SNFL.

The formula for the SNFL maximum initial expense allowance per thousand is:

$$(16) \qquad EC = .40\left[\frac{P^A}{40}\right] + .25\left[\begin{array}{c} P^A \\ \frac{P^A_{cc}}{40} \end{array}\right] + 20$$

where the smallest quantity in brackets is used. This expense allowance is determined in conjunction with the adjusted premium, $P^A$, as shown in the following formula:

$$(17) \qquad P^A = \frac{A + EC}{\ddot{a}}$$

EC is subsequently amortized over the premium paying period of the policy. However, $_nE_x$ remains level for the first 5 years and then grades uniformly to zero in years 16 and later. As a result, the critical demonstration is that $_5E_x$ less than the unamortized portion of EC at the end of the fifth year.

Northwestern National Life Insurance Company, Policy Form 82-800                    10.

That is, it must be demonstrated that:

$$(18) \quad {}_5E_x \equiv {}_5E_x < EC \cdot \frac{\ddot{a}_{x+5}}{\ddot{a}_x}$$

If formula (18) is true, it is obvious that, for $n \leq 5$, ${}_nE_x$ is less than the unamortized portion of EC; during this period the value ${}_nE_x$ of ${}_nE_x$ is level while unamortized portion of EC decreases to its smallest value for the period (equal to $EC \cdot \frac{\ddot{a}_{x+5}}{\ddot{a}_x}$).

Further, it can also be shown that, for $n > 5$, ${}_nE_x$ will continue to be less than the unamortized portion of EC. This result can be shown by comparing how ${}_nE_x$ and the unamortized portion of EC decrease after the fifth year. The unamortized portion of EC can continue to be expressed as follows:

$$(19) \quad EC \cdot \frac{\ddot{a}_{x+n}}{\ddot{a}_x} = EC \cdot \frac{\ddot{a}_{x+5}}{\ddot{a}_x} \cdot \frac{\ddot{a}_{x+n}}{\ddot{a}_{x+5}} \quad \text{for } n > 5$$

However, since ${}_nE_x$ decreases uniformly to zero over the 10 years from $n = 5$ to $n = 15$, it can be also expressed as:

$$(20) \quad {}_nE_x = {}_5E_x \cdot \frac{15-n}{10} \quad \text{for } 5 \leq n \leq 15$$

By comparing formulas (19) and (20), and using the relationship in (18), we can make the following statement for $5 \leq n \leq 15$ because the quantity $(15-n)/10$ is always less than $\ddot{a}_{x+n}/\ddot{a}_{x+5}$, it is clear that, after the initial 5 years, the value of ${}_nE_x$ decreases more rapidly than the unamortized portion of EC. Therefore, if (18) is true, it can be said that ${}_nE_x$ is at all times less than the unamortized portion of EC.

We will now calculate minimum values of EC and the remaining unamortized portion which remains after 5 years. Analysis of formula (17) suggests that, although the flexible nature of FPAL does not allow an exact calculation, it is possible to put a lower bound on the value of $P^A$. It is clear that the value of $P^A$ cannot be less than the net premium for a one year term policy. This value for $P^A$ can then be used in formula (16) to produce a lower bound on the value of EC.

For example, a minimum value of EC can be calculated for female age 60 as follows: The net premium for a $1,000 one year term policy is 11.91077. Using formula (16), the value of EC must be at last $(.40 \times 11.91077) + (.25 \times 11.91077) + 20.00$ which is 24.74.

The attached table shows, by age, the minimum value of EC and the corresponding minimum unamortized portion of EC which remains after 5 years. The initial surrender charge we will use for FPAL (${}_nE_x$) will not exceed the values of the minimum unamortized portion of EC shown.

Northwestern National Life Insurance Company, Policy Form 82-800          11

The above demonstration has shown that the surrender charges will always be less than the unamortized portion of the expense allowance provided in the SNFL.  Future policy series may involve a different surrender charge pattern and/or a front-end expense charge.  We certify that any combination of surrender charges and front-end expense charges we might use will always be less than the expense allowance provided in the SNFL.

The policy form does not contain a table of cash values, since future cash values after the issue date will vary due to the following:

   1. Flexibility of future premium payments and death benefits.

   2. Interests credited in excess of the 4-1/2% minimum.

   3. Cost of insurance rates less than the guaranteed maximum.

The method of calculating cash values is described in the policy form and annually the Company will furnish the insured a statement showing the current cash values.

Table of Minimum SNFL Expense Allowances

| Male Age | Female Age | Minimum Value of EC | $\dfrac{\ddot{a}_x + 5}{\ddot{a}_x}$ | Unamortized Value After 5 Years |
|---|---|---|---|---|
| 0 | 0-6 | 22.76 | .99 | 22.56 |
| 1 | 7 | 21.02 | .99 | 20.76 |
| 2 | 8 | 20.93 | .99 | 20.65 |
| 3 | 9 | 20.89 | .99 | 20.59 |
| 4 | 10 | 20.86 | .98 | 20.54 |
| 5 | 11 | 20.82 | .98 | 20.49 |
| 6 | 12 | 20.80 | .98 | 20.45 |
| 7 | 13 | 20.77 | .98 | 20.40 |
| 8 | 14 | 20.76 | .98 | 20.37 |
| 9 | 15 | 20.75 | .98 | 20.35 |
| 10 | 16 | 20.76 | .98 | 20.34 |
| 11 | 17 | 20.77 | .98 | 20.34 |
| 12 | 18 | 20.80 | .98 | 20.35 |
| 13 | 19 | 20.84 | .98 | 20.37 |
| 14 | 20 | 20.89 | .98 | 20.41 |
| 15 | 21 | 20.93 | .98 | 20.43 |
| 16 | 22 | 20.98 | .98 | 20.46 |
| 17 | 23 | 21.03 | .97 | 20.48 |
| 18 | 24 | 21.07 | .97 | 20.50 |
| 19 | 25 | 21.10 | .97 | 20.50 |
| 20 | 26 | 21.13 | .97 | 20.50 |
| 21 | 27 | 21.15 | .97 | 20.49 |
| 22 | 28 | 21.17 | .97 | 20.48 |
| 23 | 29 | 21.18 | .97 | 20.46 |
| 24 | 30 | 21.19 | .96 | 20.43 |
| 25 | 31 | 21.21 | .96 | 20.41 |
| 26 | 32 | 21.23 | .96 | 20.39 |
| 27 | 33 | 21.25 | .96 | 20.37 |
| 28 | 34 | 21.28 | .96 | 20.36 |
| 29 | 35 | 21.31 | .95 | 20.34 |
| 30 | 36 | 21.34 | .95 | 20.32 |
| 31 | 37 | 21.38 | .95 | 20.31 |
| 32 | 38 | 21.42 | .95 | 20.30 |
| 33 | 39 | 21.47 | .95 | 20.29 |
| 34 | 40 | 21.53 | .94 | 20.29 |
| 35 | 41 | 21.60 | .94 | 20.31 |
| 36 | 42 | 21.69 | .94 | 20.34 |
| 37 | 43 | 21.81 | .93 | 20.39 |
| 38 | 44 | 21.95 | .93 | 20.47 |
| 39 | 45 | 22.11 | .93 | 20.56 |
| 40 | 46 | 22.29 | .93 | 20.66 |
| 41 | 47 | 22.49 | .92 | 20.78 |
| 42 | 48 | 22.71 | .92 | 20.92 |
| 43 | 49 | 22.94 | .92 | 21.06 |
| 44 | 50 | 23.19 | .91 | 21.22 |
| 45 | 51 | 23.48 | .91 | 21.41 |

-2-

| Male Age | Female Age | Minimum Value of EC | $\dfrac{\ddot{a}_x + 5}{\ddot{a}_x}$ | Unamortized Value After 5 Years |
|---|---|---|---|---|
| 46 | 52 | 23.79 | .91 | 21.61 |
| 47 | 53 | 24.14 | .91 | 21.85 |
| 48 | 54 | 24.52 | .90 | 22.11 |
| 49 | 55 | 24.95 | .90 | 22.41 |
| 50 | 56 | 25.42 | .89 | 22.74 |
| 51 | 57 | 25.93 | .89 | 23.11 |
| 52 | 58 | 26.48 | .89 | 23.50 |
| 53 | 59 | 27.09 | .88 | 23.94 |
| 54 | 60 | 27.74 | .88 | 24.41 |
| 55 | 61 | 28.46 | .88 | 24.93 |
| 56 | 62 | 29.25 | .87 | 25.51 |
| 57 | 63 | 30.12 | .87 | 26.15 |
| 58 | 64 | 31.06 | .86 | 26.85 |
| 59 | 65 | 32.10 | .86 | 27.62 |
| 60 | 66 | 33.24 | .86 | 28.47 |
| 61 | 67 | 34.47 | .85 | 29.39 |
| 62 | 68 | 35.82 | .85 | 30.41 |
| 63 | 69 | 37.28 | .85 | 31.52 |
| 64 | 70 | 38.89 | .84 | 32.75 |
| 65 | 71 | 40.66 | .84 | 34.12 |
| 66 | 72 | 42.62 | .84 | 35.64 |
| 67 | 73 | 44.77 | .83 | 37.32 |
| 68 | 74 | 46.00 | .83 | 38.21 |
| 69 | 75 | 46.00 | .83 | 38.05 |
| 70 | | 46.00 | .82 | 37.87 |
| 71 | | 46.00 | .82 | 37.67 |
| 72 | | 46.00 | .81 | 37.45 |
| 73 | | 46.00 | .81 | 37.23 |
| 74 | | 46.00 | .81 | 37.03 |
| 75 | | 46.00 | .80 | 36.87 |

Age used in calculating premium _____

| | | |
|---|---|---|
| Basic Plan (including QS factor) | _____ | |
| Rider | _____ | |
| Premium Waiver | _____ | |
| Acc. Death Ben. (ADB) | _____ | |
| Future Purch. Option (FPO) | _____ | |
| Add. Ins. Rider (AIR) | _____ | |
| Spouse Ins. Rider (SIR) | _____ | |
| Child. Ins. Rider (CIR) | _____ | |
| Waiver on RA | _____ | |
| Other (Rating, etc.) | _____ | |
| TOTAL ANN. PREM. | $ 150.00 | |

**MODE OF PAYMENT**
☐ Annually
☐ Semi-Annually (.515)
☐ Quarterly (.2625)
☐ Month-O-Matic (.0875)
☐ Government Allot (.0875)
☐ Payroll Deduction (.0875)
☐ Single Premium
☐ Master Account Plan
☐ Other _____

Address for Premium Notices if other than Residence:

No. _____  Street _____

City _____  State _____

Zip Code _____  County _____

**Initial Settlement**

$_____ Cash Collected
$_____ Home Office Credit - Explain
$_____ C.O.D.
$ 150.00 TOTAL

Cash Received at H.O.

Amt _____

By_____

| Agency | PRINT Name _____ | Number _____ | % |
|---|---|---|---|
| Agent 1 | _____ | | |
| Agent 2 | _____ | | |

Pay first _____ %
of first year
PREMIUM to: _____

1. Examination (if required) will be made by __Dr. John      Smith__ of __Any City__
   If made by other than appointed examiner, explain _____

2. How long have you known the Proposed Insured? __5 yrs__ Are you related? __No__ If so how? _____

3. Explain occupation and duties of Proposed Insured __CPA__
   Name and Address of Employer __ABC    Inc__ __Any City, Any State__

4. Did you personally interview the Proposed Insured when writing this application? If no, the non-medical privilege is not available.

   Yes  No  If 4 "No" or 5 or 6 is "Yes" Explain

5. Does Proposed Insured engage in hazardous sports?  ☒ ☐

6. Have you any information which is not covered in this application in regard to the Proposed Insured's general health, use of liquor, and general reputation?  ☐ ☒

7. How much insurance does spouse own payable to Proposed Insured or other dependents? __10,000.00__

8. What are Proposed Insured's MONTHLY earnings from Occupation? __2000.00__ Investments? __500.00__ Other Sources? ___

9. What is the purpose of insurance applied for on Proposed Insured? __Personal   Protection__
   • If business insurance such as Keyperson, Partnership or Stock Retirement, explain in detail _____
   • If part of a pension plan, explain _____

10. If additional information is needed to complete underwriting, may we call the Proposed Insured? ☒ Yes  ☐ No
    If yes, phone number and best time to call. __(XXX)__ __XXX-XXXX__ __5:00__

11. To the best of your knowledge and belief, will the proposed insurance or annuity replace or change any existing insurance or annuity? ☐ Yes ☒ No  If yes, explain in remarks.

12. Have you delivered The Notice Regarding Consumer Reports and the Notice Regarding MIB, Inc. to the Proposed Insured(s)? ☒ Yes ☐ No

13. If settlement was accepted, was the Temporary Insurance Agreement and Receipt completed and delivered to the Proposed Owner or Recognized Applicant? ☒ Yes ☐ No

If Applicant lives in a rural area: Give R.F.D. #_____ Lives _____ miles in a _____ direction from _____
Lived at this location_____years.
If Applicant has moved in last 3 years - List former addresses. _____

REMARKS:

_Richard Roe_
Signature of Agent

(XXX) XXX-XXXX
Phone No. (include Area Code)

Northwestern National Life Insurance Company (We)

Minneapolis, Minnesota

**TEMPORARY INSURANCE AGREEMENT AND RECEIPT (Receipt)**
**FOR APPLICATION NO.** 255158 **(Application)**

**NOTICE:** The insurance you applied for is **not** now in effect. If, at the time all the Conditions in the Receipt have been met, and the Receipt has not ended, We will either:

1. Pay the Temporary Insurance Amount if an Event listed in the Table of Benefits (Table) occurs; or
2. Issue the amount of insurance applied for (limited by the amount listed for that type of insurance in the Table) if We can insure all proposed insureds on the basis applied for.

**A. CONDITIONS.**

1. At least 10% of the initial annual premium is paid (one monthly premium if the pre-authorized check method of collection is used) on all insurance applied for.
2. All parts of the Application, including medical exams and tests, if required, are completed, and no material misstatements were made.
3. No proposed insured has:
   a) In the past 12 months been treated by any physician or other practitioner for, or had any known or suspected heart attack, stroke or cancer other than of the skin.
   b) Been advised by any physician or other practitioner within the last 60 days to have any diagnostic test or surgery not yet performed.
4. An Event or change in insurability, which occurs after all the other Conditions were met, was not the result of an intentional act.

**B. AMOUNT.** The Temporary Insurance Amount in this and ALL OTHER RECEIPTS still in effect is the insurance applied for or the amount listed in the Table for that Event, whichever amount is less. No other benefit will be provided if the Temporary Insurance Amount is paid.

**TABLE OF BENEFITS**

| Event | Type of Insurance | Amount |
|---|---|---|
| 1. Death (natural or accidental of the Proposed Insured) | Life | $500,000 |
| 2. Death of the Proposed Additional Insured. | Additional Insured Rider AIR | $500,000 |
| 3. Death of the Proposed Insured Spouse | Spouse Rider - SIR | $55,000 |
| 4. Death of a Proposed Insured Child | Children's Rider - CIR | $5,000 |
| 5. Death of the Proposed Recognized Applicant | Waiver on Recognized Applicant - RA | Waiver of Premium until the Proposed Insured Child reaches age 25 |

**C. BENEFICIARY.** If Event 1 or 2 occurs, We will pay the Temporary Insurance Amount to the beneficiary listed in the Application, if living, otherwise to the Proposed Owner or Recognized Applicant. If Events 3 or 4 occur, We will pay the Temporary Insurance Amount to the Proposed Insured. If the Temporary Insurance Amount is not sufficient to pay the designated share to each beneficiary, each share will be reduced pro rata until the total amount of all shares equals the Temporary Insurance Amount.

**D. PREMIUMS.**

1. We will first apply premiums to all policies which become effective as a result of the Application.
2. We will refund the premiums if all these conditions are met:
   a. No claim is paid under this Receipt.
   b. No coverage becomes effective under the policy applied for.
   c. No coverage becomes effective under a policy we offer other than the policy applied for.
3. We will keep part of the premium equal to the premium for the kind, amount, and period of coverage (but not less than one month) given under this Receipt if a benefit is paid under the Receipt. Any remaining premium will be refunded.

**E. TERMINATION.** The Temporary Insurance under this Receipt will end at the earliest of:

1. The date our Home Office approves the Application as applied for.
2. The date the Proposed Owner or Recognized Applicant is offered:
   a. A policy other than that applied for;
   b. A notice that the Temporary Insurance has ended; or
   c. A notice rejecting the Application.
3. The date an Event listed in the Table occurs.
4. The date 75 days after the date of this Receipt.

**NO AGENT CAN CHANGE THIS RECEIPT. THIS RECEIPT IS NOT EFFECTIVE IF GIVEN FOR A CHECK OR DRAFT THAT IS NOT HONORED. ALL PREMIUM CHECKS MUST BE MADE PAYABLE TO THE COMPANY: DO NOT MAKE CHECK PAYABLE TO THE AGENT OR LEAVE THE PAYEE BLANK.**

AGENT'S STATEMENT: I received $ _150.00_ _____ with the Application bearing the same number and date as this Receipt.

Dated: _July_ _____ , 19 _83_          _Oskar Roe_

                                           Agent

33785a



## APPLICATION FOR INSURANCE

## INSTRUCTIONS TO AGENTS

Receipt and Temporary Insurance Agreement

1. Give to the applicant only if at least 10% of the initial annual premium (one monthly premium if a preauthorized method of collection is used) is taken with the application.
2. Except as provided in the Receipt, you do not have authority to bind coverage.
3. You do not have authority to vary the terms of the Receipt.

The check or money order is to be made payable to NWNL.

Settlement may not be accepted, nor may the Receipt be given, if:

1. The amount of this application (including ADB) plus all previously issued or applied for coverage with NWNL exceeds $1,000,000,
2. The amount of this application (including ADB) exceeds $500,000, or
3. Either question 8A or 8B on the Part 1 is answered "Yes."

You must detach the notices regarding consumer reports, M.I.B. and information practices, and give them to the applicant.

Additional responses of any proposed insured may be recorded in Part IV if more space is needed.



NORTHWESTERN NATIONAL
LIFE INSURANCE COMPANY
HOME OFFICE · MINNEAPOLIS, MINNESOTA

## AUTHORIZATION AND ACKNOWLEDGMENT

For underwriting and claim purposes, I give my permission to:

Any physician or other medical practitioner; hospital; clinic; insurance company; MIB, Inc.; or any other organiza-
tion to give Northwestern National Life Insurance Company (NWNL) ALL INFORMATION on my behalf
(except as limited below). This includes: findings on medical care; psychiatric or psychological care or examination;
or surgery, as they apply to me or any of my children who are to be insured.

LIMITATIONS, if any:

I give my permission to NWNL to get consumer or investigative consumer reports about these same persons.

I understand that all or part of this information may be sent to MIB, Inc. It may also be made available to any NWNL:
reinsurer; employee; or contractor, who processes transactions that concern any insurance I may have applied for or have with
NWNL.

I know that my medical records, including any alcohol or drug abuse information, may be protected by Federal Regulations -
42CFR Part 2. I give my permission to NWNL to get any and all such information for the purposes described in this form. I spe-
cifically consent to the re-disclosure of such information as set forth in this form. I may revoke this permission as it applies to
any information protected by this Federal Regulation at any time, but not to the extent action has been taken in reliance on it.

I understand that my further written consent will be required before any information described above is given, sold, transferred,
or, in any way, relayed to another party not before specified. My further consent must be provided on a form that states the new
use of the information or why another party needs it.

With regard to any investigative consumer report on me, please contact me at home or work between the hours of ___8:00___
and ___4:00___. My phone number is ( _XX X_ ) ___x x x– x x x x___ .
                                              (area code)          (number)

I know that I have a right to get a copy of this form. A photocopy of this form will be as valid as the original. This form will be
valid for 2 years from the date shown below.

I acknowledge that I have been given: NWNL's Notice Regarding Information Practices; Notice Regarding Consumer Reports;
and Notice Regarding MIB, Inc.

| _July 1, 1983_ | _John Doe_ |
|---|---|
| Date | Signature of Proposed Insured if age 15 or older |

| | |
|---|---|
| Signature of Proposed Insured Spouse | Signature of Recognized Applicant or Guardian |

28793

### CONSUMER PRIVACY NOTICE
#### Notice Regarding Consumer Reports

Insurance companies commonly ask an outside source to verify and add to the information given in an application. The agency
that makes the report will be one that is discreet and impartial. If you wish, we will send you the name, address, and phone
number of any agency we ask to prepare a consumer report about you.

Consumer reports are used to help us decide if you are eligible for the insurance you have applied for. The report deals with
your mode of living; character; general reputation; and such personal items as your health; job; and finances. It may include in-
formation on the following: your marital status; past and present employment record; job duties; driving record; health history;
use of alcohol and drugs; and hazardous sports activities. The agency may get information in these ways: by talking to you; to
members of your family; to business associates; to financial sources; to friends, or to others you know.

We use the report only to be sure that each application is evaluated on a fair basis. We will not reveal any of the information we
obtain to your friends or associates.

You can ask that the agency interview you if you so state on the authorization form. The agency will then try to get in touch
with you.

The information may be kept by the consumer reporting agency; it may also later be given to others who have a legitimate need
for these reports. It will be given only to the extent permitted by these laws: the Federal Fair Credit Reporting Act; your state's
Fair Credit Reporting Act; or your state's Insurance Information and Privacy Protection Act, if any. The agency will give you a
copy of the report if you ask for one and give proper identification.

34969

### Notice Regarding MIB, Inc. (Medical Information Bureau)

We or our reinsurers may make brief reports to MIB. The reports will include the factors that affect the insurability of any person for whom coverage is being requested.

MIB is a nonprofit organization of life insurance companies. It operates an information exchange for its members. If you apply to some other member company for life or health coverage, or send in a claim for benefits, MIB may supply that company with any information in its file. If you ask, MIB will arrange for disclosure of the information it has about you in its file. However, only the licensed physician you choose will be given medical information. If you feel the information in MIB's file is not correct, you may contact MIB. Ask them to correct it as provided in the Federal Fair Credit Reporting Act. The address of the MIB's information office is: Post Office Box 105, Essex Station, Boston, Mass. 02112. MIB's phone number is (617) 426-3660.

We or our reinsurers may also release information in our files. We may release it to other life insurance companies to whom you may apply for life or health insurance or to whom a claim for benefits may be submitted.

### Notice Regarding Information Practices

To issue an insurance policy, we need to obtain information about you and any other persons proposed for insurance. Some of that information will come from you. Some will come from other sources. That information and any information collected by us later may, in certain circumstances, be disclosed to third parties without your specific permission.

You have a right to access and correction with respect to the information collected about you. This right does not extend to information which relates to a claim or civil or criminal proceeding.

If you wish to have a more detailed explanation of our information practices, please write to us at: Box 20, Minneapolis, Minnesota 55440.

Application to NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY Minneapolis, Minnesota

**A. Proposed Insured (You)** (Include maiden or former name)

_John Doe_

| Sex | Date of Birth | Place of Birth |
|---|---|---|
| ☐ M  ☒ F | _3 - 3 - 48_<br>Mo.  Day  Yr. | _Any State_  _USA_<br>State  Country |

Residence  _# 110 Main Street_
No.    Street

_Any City_  _Any State_  _xxxxx_  _Union_
City  State  Zip Code  County

☐ See Agents Report - Address For Premium Notice is Different

**B.** ☐ Owner or ☐ Recognized Applicant (RA)  Date of Birth
(if other than Proposed Insured)

Mo  Day  Yr

**C.** ☐ Contingent Owner or ☐ Contingent RA

**F. Declarations by Proposed Insured**

1. Life Ins. in force. (If none, so state.)

| Company | Life Amount | ADB Amount |
|---|---|---|
| _None_ | | |
| | | |
| | | |
| | | |

2. Have you smoked cigarettes in last 12 months?
☐ Yes  ☒ No

3. Have you used tobacco in any form in last 12 months?
☐ Yes  ☒ No  Give details ___

**D. Insurance Information**

Amt. of Basic Policy $_100,000.00_

| Plan | |
|---|---|
| _Plan 3_ | ☐ PAR<br>☒ NP |
| Term<br>Rider | Plan | Years | Initial Amount | ☐ NSB | ☐ Waiver<br>on RA |

**Prem. Waiver**
☐ Yes  ☒ No
Waiver on Term
☐ A  ☐ B

The Plan Death  1. ☒ Level Amt. 2. ☐ Additional Amt.
Ben. Option

ADB Amt. _____  SIR Amt. _____
FPO Amt. _____  CIR Amt. _____
AIR Amt. _____  Other _____

Is automatic prem. loan wanted, if available? ☐ Yes ☐ No
If Yes, select: ☐ Limited ☐ Unlimited

Par Policies: Dividends shall purchase paid-up additions (Opt. 2)
unless another option is selected: ☐ Applied to prem. (Opt. 1)
☐ Cash (Opt.3) ☐ Left on deposit (Opt. 4) ☐ Other _____

**E. Beneficiary** Give name, date of birth and relationship to
Proposed Insured; If corporation, give state of incorporation.

_____
_____
_____
_____

Contingent:
_____
_____

Unless otherwise stated, the designation is revocable and benefi-
ciaries of like class shall share equally with right of survivorship.

| | | Yes | No | If "Yes," give details |
|---|---|---|---|---|
| 4. | Will any existing life, health or annuity coverage be replaced, lapsed or surrendered? | ☐ | ☒ | here or in Part IV. |
| 5. | Do you have any other application pending for life or health insurance? | ☐ | ☒ | |
| 6. | Have you in the last 3 years engaged in or do you contemplate: skindiving; skydiving; hang gliding; or vehicle racing? If "yes" complete Part VI: Avocation and Professional Sports Questionnaire, which will become part of this application. | ☐ | ☒ | |
| 7. | Have you in the last 5 years made, or do you contemplate: flights in aircraft other than as a passenger on a scheduled airline? If "yes" complete Part VI: Aviation Questionnaire, which will become part of this application. | ☐ | ☒ | |
| 8. | Has any proposed insured: | | | |
| A. | In the past 12 months been treated by any physician or other practitioner for, or had any known or suspected: heart attack; stroke; or cancer other than of the skin? | ☐ | ☒ | |
| B. | Been advised by any physician or other practitioner within the last 60 days to have any diagnostic test or surgery not yet performed? | ☐ | ☒ | |

Note: For non-medical application, Part II on reverse side is a part hereof.
Additional Declarations (if any) in Part IV or Part VI are a part hereof.

**G. Special Request** (Do not use for extra or optional policy requests)  **I. Home Office Change**

**All who sign agree that:**

1. No benefits will be provided under any proposed insurance until a policy is delivered to the Proposed Owner or the Recognized Applicant if there has been a change in the insurability of any proposed insured: (a) after this application is signed; and (b) before the first premium is paid.

2. Except in states where changes in the following require the written consent of the Proposed Owner or Recognized Applicant, all changes in the "Home Office Change" space will be accepted as part of the policy: amount; classification; age at issue; plan; or benefit.

3. The responses in Parts I, II, IV, and VI of this application and in any amendment or change to any part are a) complete and true to the best of their knowledge or belief; and b) to be considered the basis for any insurance issued.

4. Knowledge of any proposed insured is knowledge of the Proposed Owner or of the Recognized Applicant.

5. They accept, and have read and understand the terms of the Receipt that has the same number as this application when premiums are paid with this application. Premiums of $_150.00_ (enter amount or none) have been paid with this application. If premiums were paid with this application, they acknowledge receipt of the Temporary Insurance Agreement and Receipt.

Signed at _Any City_  State of _Any State_ this _1_ day of _July_ 19 _83_

Witnessed by _John Doe_ _Roe_
Agent

Signature of Proposed Insured _____  _xxx-xx-xxxx_
Social Security No.

Witnessed by _____
Agent

Signature of Proposed Owner or Recognized Applicant  Social Security No.
(if other than Proposed Insured)

13464a

PART II – Declarations To: NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY, Minneapolis, Minnesota

1. Full name _John Doe_
2. (a) Exact height and weight? _6_ ft.  in. _180_ lbs. (b) Date last weighed? _January 5, 1983_
3. Has your weight changed in the last year? _No_  If "yes," explain _____
4. Name and address of your regular physician? _Dr. John Smith_
   Date last consulted? _Jan. 5, 1983_  Why? _Annual Exam_
5. Have you ever had any disease or injury of the following organs or any sickness listed below? (Give details under #6.)

| | Yes | No | | Yes | No | | Yes | No |
|---|---|---|---|---|---|---|---|---|
| Paralysis or epilepsy | ☐ | ☒ | High blood pressure | ☐ | ☒ | Venereal disease | ☐ | ☒ |
| Convulsions or fainting | ☐ | ☒ | Liver, gallbladder, jaundice | ☐ | ☒ | Cancer, tumor, goiter | ☐ | ☒ |
| Brain, nervous system | ☐ | ☒ | Stomach, ulcers, indigestion | ☐ | ☒ | Anemia, gout, arthritis | ☐ | ☒ |
| Nervous or mental disorder | ☐ | ☒ | Rectum or hernia | ☐ | ☒ | Rheumatism, neuritis | ☐ | ☒ |
| Lungs, bronchitis, asthma | ☐ | ☒ | Chronic diarrhea | ☐ | ☒ | Bone or joint disorder | ☐ | ☒ |
| Tuberculosis, blood spitting | ☐ | ☒ | Kidney, bladder, prostate | ☐ | ☒ | Disease of eyes or ears | ☐ | ☒ |
| Heart or chest pains | ☐ | ☒ | Kidney stone, albumin | ☐ | ☒ | Heart murmur | ☐ | ☒ |
| Arteriosclerosis or | | | Blood or pus in urine | ☐ | ☒ | Rheumatic fever | ☐ | ☒ |
| varicose veins | ☐ | ☒ | Diabetes or sugar in urine | ☐ | ☒ | Large or small bowel | ☐ | ☒ |

| 6. Nature of Disease, Injury, or Operation | Mo. Yr. | Duration | Result | Names and Addresses of all Physicians |
|---|---|---|---|---|
| | | | | |
| | | | | |

| | | Yes | No | Give details (dates, remaining effects, doctors consulted and addresses, etc.) |
|---|---|---|---|---|
| 7. Are you at the present time taking medication or under your doctor's care for any condition? | | ☐ | ☒ | |
| 8. Have you ever had any operations or have any operations ever been advised and not performed? | | ☐ | ☒ | |
| 9. Have you any impairment of sight or hearing? | | ☐ | ☒ | Jan 5    Annual Exam |
| 10. Have you had an electrocardiogram or x-ray made in the last 5 years? | | ☒ | ☐ | No Problems |
| 11. Has your mother, father, or any sister or brother ever had heart disease, high blood pressure or diabetes? | | ☐ | ☒ | |
| 12. Have you ever sought help or treatment for alcoholic habit? | | ☐ | ☒ | |
| 13. Are you currently using, or have you ever received treatment or counseling for the use of: marijuana; cocaine; amphetamines; barbiturates; hallucinogenic agents; or opium or its derivatives? | | ☐ | ☒ | |
| 14. Have you ever been confined for observation, care or treatment in a hospital, sanitarium, asylum, or similar institution? | | ☐ | ☒ | |
| 15. Have you in the last 5 years consulted any physicians or surgeons not already indicated for any reason including physical examinations? | | ☐ | ☒ | |

End of PART II

PART III is Medical Exam, if needed.

PART IV Additional Declarations of Proposed Insured: (Identify Part and question number for additional responses.
Example: Part 1 question F 6.)

PART VI – IF ANY PART OF THIS FORM IS COMPLETED, ALL ANSWERS BECOME PART OF THE APPLICATION BEARING THE SAME NUMBER  255158

## AVOCATION AND PROFESSIONAL SPORTS QUESTIONNAIRE

Describe activities within last two years and future activities of any proposed insured in any of the following: Motorboat, Speedboat, (describe type of boat, number of races and maximum speeds); Skindiving or other underwater activity, (describe maximum depth); Hang Gliding, Skydiving, Ballooning, Mountain climbing, (specify rock or trail climbing); Rodeo, Snowmobiling, Surfing, Whitewater boating or any other hazardous activity. Give full details including frequency of participation and future plans.

_____

_____

_____

_____

## MOTOR SPORTS

Describe type of vehicle, maximum speeds, horsepower and description of event (drag race, motocross, hill climb, etc.).

_____

_____

| Types of Races | Last 12 Months | | 1-2 Years Ago | | Next 12 Months | |
|---|---|---|---|---|---|---|
| | No. of Races | Total Miles | No. of Races | Total Miles | No. of Races | Total Miles |
| | | | | | | |
| | | | | | | |
| | | | | | | |

## MILITARY QUESTIONNAIRE

Complete this for any proposed insured: a) in the Reserves or National Guard, or; b) on active duty in the military, or; c) enrolled in a College Military Program.

1. Are you a member of the armed forces?        ☐ YES      ☐ NO

2. What is your rank, pay grade and branch of service? _____

3. Describe your duties. _____

4. Have you been alerted for, or assigned to, overseas duty.        ☐ YES      ☐ NO   Details: _____

5. Are you a member of a Reserve, National Guard or ROTC unit?        ☐ YES      ☐ NO   Details: _____

## AVIATION QUESTIONNAIRE

1. Are you or do you intend to be a pilot or crew member of any military or civilian aircraft?        ☐ YES      ☐ NO

2. Type of license. _____

3. Date of issue. _____

4. Type of aircraft flown. _____

**HOURS FLOWN**

| Type of Aviation Activity | Date of Last Flight | Total Time | One To Two Years Ago | Last 12 Months | Anticipated Next 12 Months |
|---|---|---|---|---|---|
| Pilot | | | | | |
| Crew Member | | | | | |
| Passenger | | | | | |
| Military (Specify) | | | | | |
| Other (Specify) | | | | | |

Do you want full coverage for aviation if an extra premium is required?

☐ YES      ☐ NO      (If answered "NO", and Proposed Insured does not qualify for aviation coverage without an extra premium, the policy, if issued, may include an Aviation Exclusion Rider).

28464a

ADDITIONAL INSURED AND/OR CHILDREN'S INSURANCE RIDERS, OR WAIVER OF PREMIUM BENEFIT ON RECOGNIZED APPLICANT,

To NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY, Minneapolis, Minnesota

Names and other data on proposed insureds.

| Full Name | Sex | Date of Birth | Age | Height | Weight | Type of Coverage applied for | Relationship to Life Proposed | Amt. of Life Ins. in force | Date of Last Issue |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

AIR Beneficiary (Do not use for SIR or CIR) Give name, date of birth and relationship to Additional Insured.

Unless otherwise stated, the designation is revocable and beneficiaries of like class shall share equally with right of survivorship.

Has anyone listed above: (Questions 1 through 10)

|  | Yes | No | If "Yes," give details |
|---|---|---|---|
| 1. An application now pending for life, disability, accident or sickness insurance? | ☐ | ☐ | |
| 2. Any insurance or annuity which the new policy will replace or change? | ☐ | ☐ | |
| 3. In the last 3 years engaged in or does anyone contemplate: skindiving; skydiving; hang gliding; or vehicle racing? If "yes" complete Part VI: Avocation and Professional Sports Questionnaire, which will be a part of this application. | | | |
| 4. In the last 5 years made, or does anyone contemplate: flights in aircraft other than as a passenger on a scheduled airline? If "yes," complete Part VI: Aviation Questionnaire, which will be a part of this application. | ☐ | ☐ | |
| 5. Ever had any disease or injury of the following organs or any sickness listed below? (Give details below). | ☐ | ☐ | |

| | Yes | No | | Yes | No | | Yes | No |
|---|---|---|---|---|---|---|---|---|
| Paralysis or epilepsy | ☐ | ☐ | High blood pressure | ☐ | ☐ | Venereal disease | ☐ | ☐ |
| Convulsions or fainting | ☐ | ☐ | Liver, gallbladder, jaundice | ☐ | ☐ | Cancer, tumor, goiter | ☐ | ☐ |
| Brain, nervous system | ☐ | ☐ | Stomach, ulcers, indigestion | ☐ | ☐ | Anemia, gout, arthritis | ☐ | ☐ |
| Nervous or mental disorder | ☐ | ☐ | Rectum or hernia | ☐ | ☐ | Rheumatism, neuritis | ☐ | ☐ |
| Lungs, bronchitis, asthma | ☐ | ☐ | Chronic diarrhea | ☐ | ☐ | Bone or joint disorder | ☐ | ☐ |
| Tuberculosis, blood spitting | ☐ | ☐ | Kidney, bladder, prostate | ☐ | ☐ | Disease of eyes or ears | ☐ | ☐ |
| Heart or chest pains | ☐ | ☐ | Kidney stone, albumin | ☐ | ☐ | Heart murmur | ☐ | ☐ |
| Arteriosclerosis or | | | Blood or pus in urine | ☐ | ☐ | Rheumatic fever | ☐ | ☐ |
| varicose veins | ☐ | ☐ | Diabetes or sugar in urine | ☐ | ☐ | Large or small bowel | ☐ | ☐ |

| Nature of Disease, Injury, or Operation | Mo. Yr. | Duration | Result | Names and Addresses of all Physicians |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

|  | Yes | No | Give details (dates, remaining effects, doctors consulted and addresses, etc.) |
|---|---|---|---|
| 6. Ever had any operations or has any operation ever been advised and not performed? | ☐ | ☐ | |
| 7. In the last 5 years had an electrocardiogram or x-ray made? | ☐ | ☐ | |
| 8. Ever sought help or treatment for alcoholic habit? | ☐ | ☐ | |
| 9. Ever been confined for observation, care or treatment in a hospital, sanitarium, asylum, or similar institution? | ☐ | ☐ | |
| 10. In the last 5 years consulted any physicians or surgeons not already indicated for any reason including physical examinations? | ☐ | ☐ | |
| 11. Is anyone listed above at the present time taking medication or under a doctor's care for any condition? | ☐ | ☐ | |
| 12. Is anyone listed above currently using, or ever received treatment or counseling for the use of: marijuana; cocaine; amphetamines; barbiturates; hallucinogenic agents; or opium or its derivatives? | ☐ | ☐ | |

The foregoing statements and answers are full, complete and true to the best of my knowledge and belief.

Signed at_____

Witness_____ this_____day of_____, 19____

_____
Agent (or Witness)

Signature of Spouse (If SIR Applied for) or Additional Insured (if AIR Applied for)

1464a

Signature of Proposed Owner or Recognized Applicant

WASHINGTON AVENUE SOUTH • MINNEAPOLIS, MINNESOTA 55440



AUG 1 8 1983

# NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY

August 10, 1983

Hon. W. G. Ward, Jr.
Commissioner of Insurance
Department of Insurance
Administration Building
64 North Union Street
Montgomery, Alabama 36130

LIFE FILING

Attn: Mr. Esse Langston

RE: Flexible Premium Adjustable Whole
    Life Policy   82-800
    Our Submission Dated August 4, 1983

Enclosed please find a revised insert page   82-820   (pages 5 & 6
of the policy form). The revision was made to the Grace Period and
Face Amount Change provisions to delete reference to special Grace
Period considerations for increases in Face Amount.

We would appreciate your help in substituting this page. We regret
any inconvenience this change may have caused you.

Sincerely,

Elizabeth Collins
Assistant Counsel
Assistant Secretary

slk

Enclosures

Received in Office

AUG 12 1983

DEPARTMENT OF INSURANCE
ALABAMA

## Grace Period

If, on any Monthly Anniversary Date, the cash value minus any policy loans is less than the monthly deduction for the policy month to follow, we will give you a grace period of 61 days to pay a premium large enough to cover the monthly deduction. We will send you a notice of the required premium at least 30 days before we lapse this policy.

If that required premium is not paid within the grace period, we lapse this policy. A lapsed policy is no longer in force and has no cash value.

If the insured dies during the grace period, we deduct any unpaid monthly deductions from the proceeds.

The policy has a Minimum Monthly Premium shown on the Policy Data Page. The Minimum Monthly Premium is increased when the Face Amount is increased or when a new rider is added or increased. The new Minimum Monthly Premium will be shown on a new Policy Data Page. We will not lapse this policy during the first 2 policy years, if on each Monthly Anniversary Date during the period, 1 is greater than 2, where:

**1**

is the sum of all premiums paid to date minus any policy loans and partial withdrawals.

**2**

is the sum of the Minimum Monthly Premiums since the Policy Date, including the month following the Monthly Anniversary Date.

## Reinstatement

Reinstatement means putting a lapsed policy back in force. You can reinstate this policy anytime within 5 years after it has lapsed as long as you have not surrendered it for its cash value.

To reinstate this policy and any riders:

**1**

You must submit proof which satisfies us that all insureds are still insurable.

**2**

You must pay a premium large enough to keep the policy in force for at least 2 months.

This policy will be reinstated only as of a Monthly Anniversary Date. If you have met conditions 1 and 2 and an insured dies before the Monthly Anniversary Date on which the policy would be reinstated, we will pay the Death Benefit as of that Monthly Anniversary Date. The accumulation value on the date of reinstatement will be the amount provided by the premium paid to reinstate this policy. Subsequent accumulation values will be calculated as shown in the Accumulation Values provision.

After reinstatement, the Surrender Charges will be those in effect on the date of termination, reduced in the same proportion as the accumulation value on the date of termination bore to the Surrender Charge on that date. The Surrender Charge will not be less than zero.

## Face Amount Change

After the first policy year, you may change your Face Amount by notifying us in writing. Changes are allowed only if this policy continues to qualify as Life Insurance as defined by the Code. Changes listed in 1, 2 and 3 below go into effect on the Monthly Anniversary Date that follows the date we receive your request. If we receive your request on a Monthly Anniversary Date, the change goes into effect on that day. The Face Amount in effect at any time must be at least equal to the Minimum Face Amount shown on the Policy Data Page.

Increases in the Face Amount must be at least $5,000. Increases cannot be made after the policy anniversary following the insured's 75th birthday.

Decreases in Face Amount are allowed only if the cash value is greater than zero. At least 6 months must elapse between decreases.

continued

## Face Amount Change

Changes are subject to the following:

**1**

If a decrease in Face Amount is requested, the reduction will be applied in the following order:

**a**

To the most recent increase in Face Amount.

**b**

To the next most recent increases in Face Amount.

**c**

To the Initial Face Amount on the Policy Date or the current Face Amount if smaller.

**2**

If the Additional Amount Option is in effect, you may request in writing to change to the Level Amount Option. In this event, the Face Amount of this policy is changed so that it equals the Death Benefit in force immediately preceding the effective date of the change.

**3**

If the Level Amount Option is in effect, you may request in writing to change to the Additional Amount Option. This change reduces the Face Amount so that it then equals the Death Benefit minus the accumulation value immediately preceding the effective date of the change.

**4**

An increase will require written proof the insured is still insurable. An approved increase will go into effect on the Monthly Anniversary Date on or next following the date of the approval. If an increase is approved, additional Surrender Charges will be applied to that increase. We will send you written notice of the amount and duration. The Minimum Monthly Premium will be increased when the Face Amount is increased.

---

**Accumulation Value and Nonforfeiture Provisions**

## Accumulation Values

The accumulation value on the Policy Date will be the initial Net Premium paid on that date minus the monthly deduction for the first policy month. On each subsequent Monthly Anniversary Date, the accumulation value will be calculated as 1 minus 2, plus 3 minus 4 (1 - 2 + 3 - 4), where:

**1**

is the accumulation value on the preceding Monthly Anniversary Date plus one month's interest.

**2**

is any partial withdrawals since the preceding Monthly Anniversary Date plus interest from the date of withdrawal to the Monthly Anniversary Date.

**3**

is the total of all Net Premiums received since the preceding Monthly Anniversary Date plus interest from the date received to the Monthly Anniversary Date.

**4**

is the monthly deduction (as described in the Monthly Deduction provision) for the policy month following the Monthly Anniversary Date.

On any day other than a Monthly Anniversary Date, the accumulation value will be calculated as 1 minus 2 plus 3 (1 - 2 + 3), where:

**1**

is the accumulation value on the preceding Monthly Anniversary Date plus interest from the Monthly Anniversary Date to the date of the calculation.

**2**

is any partial withdrawals since the preceding Monthly Anniversary Date plus interest from the date of withdrawal to the date of the calculation.

**3**

is the total of all Net Premiums received since the preceding Monthly Anniversary Date plus interest from the date received to the date of the calculation.

# EXHIBIT 2

20 WASHINGTON AVENUE SOUTH · MINNEAPOLIS, MINNESOTA 55440



# NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY

October 26, 1984

APPROVED

NOV 1 1984

Hon. Tharpe Forrester
Commissioner of Insurance
Department of Insurance
Administration Building
64 North Union Street
Montgomery, AL  36130

Department of Insurance
Alabama

LIFE AND HEALTH

ATTN:  Mr. Esse Langston

RE:  Term Insurance Rider (TIR) 82-370 and 82-371
      (New Submission)

We are enclosing duplicate copies of the above rider, sample stamped for
filing with your Department.

Term Insurance Rider 82-370 is for use with Flexible Premium Adjustable Death
Benefit Whole Life Policy 82-800, which was approved for use on
August 12, 1983, and Flexible Premium Adjustable Death Benefit Whole Life
Policy 82-500 which was approved for use on October 28, 1982.

We pay the Term Insurance Rider Face Amount then in force if the insured dies
while the rider is in force.

The Flesch score for the above rider as scored according to a computer our
Company uses is over 40 as prescribed in Minnesota Statute 72C.10.
Specifically, I certify on behalf of Northwestern National Life Insurance
Company that the Flesch scale analysis readability score for the rider is 63.

The above filing was approved by Minnesota, our State of Domicile, on
October 24, 1984.

We would appreciate your review and approval of this filing.

Sincerely,

Deborah A. Ljungkull
Assistant Secretary
Senior Paralegal

DAL:lmm
Enclosure

## Term Insurance Rider (TIR)

This rider is a part of the base policy whose number is shown below. If not shown below, the Rider Data is shown on the Policy Data Page.

| Rider Data | Base Policy Number | |
|---|---|---|
| **Definitions** | The Insured | The person insured under the base policy and this rider as shown on the Policy Data Page. |
| | You, Your | The owner of the base policy as shown on the Policy Data Page. |
| | We, Us, Our | Northwestern National Life Insurance Company at our Home Office in Minneapolis, Minnesota. |
| | Written, In Writing | A written request or notice, signed and dated, and received at our Home Office, in a form we accept. You may get forms for this purpose from us. |
| **Benefits** | When we have written proof that the insured died while this rider was in force, we will pay the TIR Face Amount then in force.<br><br>While the insured is living, you may choose to have the proceeds applied under any | base policy settlement option. After the insured dies, a beneficiary may choose a different settlement option, if we agree, and if you have not previously restricted the beneficiary's right to do so by written notice to us. |
| **Beneficiary** | The beneficiary of the proceeds of this rider is the beneficiary of the proceeds of the base policy.<br><br>When you name, add, or change a beneficiary of the base policy the change will also | apply to this rider. If you assign the benefits of this rider as collateral for a debt, this limits the beneficiary's rights to the proceeds. |
| **Cost of Insurance and Monthly Amount Charges** | The total monthly deduction for this policy includes the sum of 1 plus 2 where:<br><br>**1**<br>is the Monthly Amount Charge per $1,000, as shown on the policy data page, times the TIR Face Amount divided by 1000. This | charge applies to the first 12 months following the Rider Effective Date.<br><br>**2**<br>is the TIR Face Amount times the monthly cost of insurance rate described below. |



**Northwestern National Life Insurance Company**

Box 20
Minneapolis
Minnesota 55440

Executed at our Home Office

John G. Turner — President

Royce N. Sanner — Secretary

82-370

| | | |
|---|---|---|
| **Cost of Insurance Rates** | We base the monthly cost of insurance rate for this rider on the insured's sex, attained age, and premium class as shown on the Policy Data Page. Attained age means age at the last birthday on the prior policy anniversary. We will determine monthly cost of insurance rates based upon our expectations of future mortality experience for this rider. Any change in cost of insurance rates for this rider will apply to all in the same insurance class.<br><br>The cost of insurance rates for those in | other than a rated premium class can never be greater than the rates shown in the Table of Monthly Guaranteed Cost of Insurance Rates in the base policy. For those in a rated premium class, the guaranteed cost of insurance rates are calculated by multiplying the rates shown in the Table of Guaranteed Cost of Insurance Rates by the Premium Class Rating Factor shown on the Policy Data Page. The guaranteed maximum rates are based on the Commissioners 1958 Standard Ordinary Mortality Table. |
| **Paying Proceeds** | We pay proceeds in the following order:<br><br>1<br>Collateral assignees, if any, have first priority.<br><br>2<br>The beneficiary, if any, receives any proceeds that remain. If there is more than one beneficiary, each receives an equal share, | unless you have requested another method in writing. To receive proceeds, a beneficiary must be living on the 10th day after the death of the person insured under this rider.<br><br>3<br>If there are no beneficiaries, you receive any proceeds that remain. |
| **Conversion** | This rider may be converted to a new individual whole life insurance policy for the insured without proof of insurability, only:<br><br>1<br>While the insured is alive;<br><br>2<br>While this rider is in force; and | 3<br>Before the insured reaches age 75.<br><br>Application for conversion must be in writing. Only you may apply. If you wish to convert your policy, we may require that you send us the base policy and this rider so that we can endorse them. |
| | **The New Policy**<br><br>The amount of the new policy may be for an amount up to the TIR Face Amount in force at the time of the conversion. The date of the new policy will be the date of the conversion. The new policy, which will be in the same premium class as this rider, can be on any of our plans in use at the time of the conversion that:<br><br>1<br>We would normally issue;<br><br>2<br>Provide for a level amount of insurance with level premiums; | 3<br>Have level premiums that are at least equal to those of the whole life plan we offer that has the lowest level premiums;<br><br>4<br>Do not participate in our surplus; and<br><br>5<br>Do not contain any benefits or rights involving a greater aggregate risk, relative to premium, than is insured under this rider. However, the new policy may contain a disability waiver benefit provision on the insured if you give us written proof of insurability for the insured. |

| | | |
|---|---|---|
| **Termination** | This rider ends:<br><br>**1**<br>On the Rider Expiry Date shown on the Policy Data Page.<br><br>**2**<br>If this rider is converted.<br><br>**3**<br>If the base policy is surrendered or ends.<br><br>**4**<br>If you ask us in writing to end this rider. In this case, we may ask that you return the policy and this rider so that we can endorse | them. This rider will end on the first Monthly Anniversary Date after we receive your written request to end this rider.<br><br>**5**<br>If the Paid-Up Option of the base policy is chosen.<br><br>After this rider ends, we are not liable for its benefits, even if we have included the cost of insurance and monthly amount charges for this rider in the total monthly deduction for the base policy. We will refund any such amounts that we deduct after this rider ends. |
| **Reinstatement** | If the base policy lapses, this rider will also lapse. You can reinstate this rider if:<br><br>**1**<br>This rider was in effect when the base policy lapsed;<br><br>**2**<br>The Rider Expiry Date has not occurred; and<br><br>**3**<br>You reinstate the base policy.<br><br>To reinstate this rider, you must do both of the following: | **1**<br>Give us proof of your insurability; and<br><br>**2**<br>Pay a premium large enough to keep the base policy and this rider in force for at least 6 months.<br><br>The base policy may be reinstated without this rider, in which case proof and payment for this rider are not needed. |
| **Age and Sex** | If the insured's age or sex is misstated, we adjust the proceeds by the difference between the monthly deductions made and those that should have been made. | |
| **Suicide** | The Suicide provision of the base policy applies to this rider from the Rider Effective Date in the same way that it applies to the | base policy from the base policy's Issue Date. |
| **Incontestability** | If you apply for this rider with the base policy, the Incontestable provision of the base policy applies to this rider from the Rider Effective Date. If you apply for this rider after the base policy has been issued, the Incontestable provision of the base policy applies to this rider from the Rider Effective Date, with respect to statements made in the rider application. During this 2-year period, we may ask for information that could lead to our contesting this rider or refusing to pay its benefits. | After this rider has been in force for 2 years from the Rider Effective Date, we cannot claim this rider is void or refuse to pay any benefits with respect to the TIR Face Amount, unless this rider has lapsed for nonpayment of premiums. If this rider is reinstated, this provision will be measured from the reinstatement date with respect to statements made in the application for reinstatement. |
| **General Provisions** | This rider does not increase any cash or loan values of the base policy. | All base policy provisions apply to this rider, unless changed by this rider. |

82-371