IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| WILLIAM LEONARD, JR. | * |
| | * |
|     Plaintiff, | * |
| | * |
| v. | *  CASE NUMBER 3:05-CV-1015-MEF |
| | * |
| RELIASTAR LIFE INSURANCE | * |
| COMPANY f/k/a NORTHWESTERN | * |
| NATIONAL LIFE INSURANCE | * |
| COMPANY, | * |
| | * |
|     Defendants. | |

**PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM
IN OPPOSITION TO PLAINTIFF'S RULE 56(F) MOTION TO CONTINUE**

Plaintiff hereby replies to Defendant ReliaStar Life Insurance Company's ("Defendant") Memorandum in Opposition to Plaintiff's 56(f) Motion to Continue as follows:

### INTRODUCTION

On February 27, 2006, Plaintiff filed a Rule 56(f) Motion to Continue the setting of any scheduled response or hearing on Defendant's requested Motion for Summary Judgment. On March 1, 2006, the Court issued an order setting a deadline for Defendant to show cause in writing on or before March 8, 2006 as to why this motion (Plaintiff's Motion to Continue) should not be granted. Defendant filed their Memorandum in Opposition to Plaintiff's Rule 56(f) ("Response") on March 8, 2006. Defendant erroneously asserts in their Response that Plaintiff has absolutely no legitimate need for discovery on the documents or any other issues raised in their Motion for Summary Judgment and that Plaintiff's Motion to Continue is some tactic to avoid or prolong this



action. It is rare that a corporate defendant so strongly argues to avoid giving a plaintiff the opportunity to conduct reasonable discovery. It begs the question, why doesn't this Defendant want to follow well-established law and proceed with discovery of their internal documents and procedures? As Plaintiff will show the Court, Defendant's positions are completely misguided and Plaintiff's Motion to Continue should be granted.

## ARGUMENT

Plaintiff's Rule 56(f) Motion to Continue and supporting affidavit clearly sets forth what discovery is needed by Plaintiff to refute Defendant ReliaStar's arguments on statute of limitations and to raise a genuine issue of material fact to preclude summary judgment. Consistent with the salutary purposes underlying Rule 56(f), district courts should construe motions that invoke the rule generously, holding parties to the rule's spirit rather than its letter. *Resolution Trust Corporation v. North Bridge Associates, Inc., et al*, 22 F.3d 1198 (1st Cir.1994); *United States v. One Lot of U.S. Currency ($68,000)*, 927 F.2d 30, 33-34 (1st Cir.1991); *Herbert v. Wicklund*, 744 F.2d 218, 222 (1st Cir.1984). A portion of Plaintiff's Rule 56(f) affidavit specifically states the following:

> "Specifically, Plaintiff seeks written discovery and testimony regarding the allocation and calculation of Plaintiff's premium, the development of Plaintiff's policy type, the marketing of Plaintiff's policy type, the design of the policy type, and the Defendant's training process or program in selling and explaining the policy type at issue in this case, as well as other actuarial and internal documents related to the policy at issue in this case. **These are all areas pled in Plaintiff's First Amended Complaint.** Plaintiff requires this essential discovery in order to refute the arguments set forth in Defendant's Motion."
> (See Rule 56(f) affidavit, emphasis added)

As referenced in Plaintiff's affidavit, the First Amended Complaint references these issues and provides insight into what relevant information these areas of discovery will bring to defeat Defendant's argument that Plaintiff's claims are time-barred. In the

2

suppression and concealment allegations of Plaintiff's Amended Complaint, Plaintiff alleges the following:

> Defendant fraudulently failed to disclose to Plaintiff that what was sold to him was, in reality, **an under-funded hybrid universal life insurance product based on excessive interest rates and unsustainable costs of insurance**; an annually renewable term rider in which the **premiums established and required by Defendant were insufficient to cover the increasing costs of the rider**; and a product with higher mortality charges and/or costs of insurance in order to subsidize high credited rates. These factors ensure the policy's eventual collapse or requirement for increased premiums. At inception, **the design** of the insurance product was inherently problematic in that the base Plan 3 universal life policy sold in conjunction with the term rider **would eventually lapse prior to its maturity date regardless of whether credited interest rates declined....** Defendant **actively suppressed and concealed from Plaintiff the true nature of what he was buying, how it worked and the risks associated with such a product...** These **defective policy designs** and their effect on the Plaintiff's policy were not disclosed to Plaintiff. They were withheld so Plaintiff could not discover the true nature of the insurance product sold by Defendant. They involve **complicated accounting and actuarial formulas** beyond Plaintiff's comprehension........Defendant failed to disclose any of the facts as stated herein, but **any disclosures made by Defendant were inadequate, unreasonable, fraudulent, and beyond Plaintiff's reasoning and understanding.** (See Plaintiff's First Amended Complaint at ¶ 37-40, emphasis added)

It is obvious from the information referenced above that the areas of discovery specified in Plaintiff's Motion to Continue and supporting affidavit deal directly with Defendant's alleged suppression and concealment regarding the policy at issue, and the specified areas of discovery relating to these allegations would be essential to Plaintiff in refuting Defendant's arguments, including their statute of limitations defense. Unless the movant has been dilatory, or the court reasonably concludes that the motion is a stalling tactic or an exercise in futility, it [the motion] should be treated liberally. *Resolution Trust Corporation v. North Bridge Associates, Inc., et al.*, 22 F.3d 1198 (1st Cir. 1994); *See* 6 *Moore's Federal Practice* pg 56.24, at 797-800 (2d ed. 1993). It is clear at this

3

stage in the litigation that Plaintiff's motion is not a delay tactic, but rather a genuine request to obtain material information that is necessary to respond to Defendant's Motion for Summary Judgment. Therefore, Plaintiff's Motion to Continue and supporting affidavit are not defective, and clearly specify with the required degree of particularity what facts the specified discovery would reveal and how those facts would raise a genuine issue of material fact regarding the issues in Defendant's Motion for Summary Judgment. Each of Plaintiff's specified areas of discovery are further addressed as follows:

1. **Actuarial Information and other Internal Documents in Defendant's Possession**

It is Plaintiff's belief that there is **actuarial information and other internal documents** in the sole possession of Defendant, which if obtained through discovery, could be used by Plaintiff to discredit the information contained in the annual reports regarding interest rates credited to the policy, and projections based on those reported rates. It is Plaintiff's understanding that certain information in the annual reports is inaccurate and its inclusion in the annual report was designed to confuse the policyholder and to conceal material information regarding the actual performance of the policy at issue. Plaintiff's expert, Dr. David Lange, states in his affidavit (Affidavit of Dr. David Lange, attached as Exhibit "1"), that the information provided in the annual returns obscures credited interest rates, and the projections provided in the annual returns are **inaccurate**. *id.* at ¶ 8, 9. If through discovery, these annual returns are proven to be false, inaccurate, or misleading, Defendant would not be able to rely on this information as a basis for their statute of limitations argument. Obviously, discovery is warranted on this matter.

4

2.  **Design and Development of Plaintiff's policy type**

Discovery regarding the design and development of Plaintiff's policy type is relevant when refuting Defendant's statute of limitations and reliance arguments. It is Plaintiff's belief that by obtaining discovery and sworn testimony regarding the design and development of the policy at issue, he can establish that the policy was inevitably going to lapse prior to the maturity age represented by Defendant, even if interest rates stayed at the initial credited rate high of 9.5% and Plaintiff paid the required premium. It is Plaintiff's belief that the policy would have lapsed at least 12 years prior (age 83 or 82) to the policy maturity age of 95. (Exhibit "1", at ¶ 7) This material information was concealed from Plaintiff. The documents presented by Defendant in their motion for summary judgment still do not disclose this specific information. Plaintiff's Statement of Policy Costs attached as Exhibit 2 to Defendant's Motion for Summary Judgment only projects values to age 77. Defendant's statute of limitations and reliance arguments are based on the Statement of Policy Cost and other related documents. Plaintiff needs the requested discovery to obtain the necessary evidentiary materials to support his argument that through the policy design and development alone, Defendant's actively concealed and/or failed to disclose the true nature and performance of the policy to Plaintiff. Therefore, discovery related to this information is relevant to refute Defendant's argument on reliance and statute of limitations and would create a genuine issue of material fact precluding summary judgment.

3.  **Allocation and Calculation of Plaintiff's Premium**

Discovery regarding the allocation and calculation of Plaintiff's premium is needed to refute Defendant's Statute of Limitations and Reliance arguments. Through

discovery and the sworn testimony of Defendant, Plaintiff can obtain evidence to prove the methods Defendant used in establishing and calculating Plaintiff's planned premium were severely flawed in that the portion of the premium allotted to pay for the Enhanced Protection Rider (EPR) portion of coverage was grossly inadequate to cover the cost of the EPR through the maturity age of 95. (Exhibit "1" at ¶ 7) Although, Defendant asserts that the cost of the EPR is disclosed within the Statement of Policy Cost and annual reports, there are no disclosures with regard to how much of the planned premium is designated to pay the cost of the EPR. Defendant's statement is patently false. Plaintiff would have no way of knowing that the increased cost of the EPR would inevitably surpass the premium amount set by the Defendant for the EPR. With further discovery, Plaintiff can illustrate that the cost of the EPR surpassed the required premium within four years of Plaintiff's purchase of the policy and that this factor alone causes the collapse of both the base universal life coverage and the EPR. *Id* at ¶ 7. Again, none of this is disclosed to Plaintiff or the Court.

This discoverable information can be used to refute Defendant's argument that the policy, Statement of Policy Cost, and annual reports somehow disclosed all of the material information related to the policy's design and performance. In fact, Plaintiff contends that the requested discovery will actually show that the Defendant actively concealed this material information. Therefore, discovery related to this information is relevant to refute Defendant's argument on reliance and statute of limitations and would create a genuine issue of material fact precluding summary judgment.

    **4.**    **Defendant's Marketing of Plaintiff's policy type and their training process or program in selling and explaining the policy type at issue**

6

Defendant's assertions that discoverable information regarding Defendant's marketing information and training processes and/or programs regarding the selling and explaining of the policy type at issue would be irrelevant to refute their arguments is out of touch with sound reasoning. This type of information is essential to Plaintiff's response to Defendant's arguments on reliance and statute of limitations. Information regarding Defendant's marketing and training is directly related to Defendant's plan or scheme to misrepresent or conceal material facts regarding Plaintiff's policy, which could severely distort Plaintiff's understanding of all point of sale, or subsequent information disseminated to Plaintiff by Defendant, whether written or oral, including the materials presented by Defendant in support of their Motion. The above-referenced discovery could also be used to support Plaintiff's contention that the materials disseminated by Defendant through the selling and marketing of the insurance product were inaccurate and concealed and/or distorted the true nature of Plaintiff's policy type.

Defendant has cited cases in their Response dealing with denial of 56(f) motions that are clearly dissimilar to the Plaintiff's lawsuit and are broadly interpreted by Defendant in their attempt to sway this Court from the circumstances in the present case. One case in particular Defendant cites is *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998). The decision in *Harbert* is based on the issue of qualified immunity. In fact the Court in *Harbert* stated "**In qualified immunity cases, the Rule 56(f) balancing is done with a thumb on the side of the scale weighing against discovery.** Qualified immunity provides ""an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essential legal [immunity] question."" *Id* at 1280(emphasis added) Plaintiff's case clearly does not involve qualified

7

immunity, but rather fraud, suppression, and concealment for which the Plaintiff is allowed a broad range of discovery. When a plaintiff has alleged fraud, **discovery must necessarily be broader than in other cases**; this is because of heavy burden of proof imposed on one alleging fraud. *Ex parte Horton*, 711 So.2d 979, 983 (Ala. 1998); *Ex parte Clarke*, 582 So.2d 1064 (Ala.1991).

## CONCLUSION

Based on the foregoing, Plaintiff's Rule 56(f) Motion to Continue and supporting affidavit clearly sets forth what discovery is needed by Plaintiff to refute Defendant's arguments on statute of limitations and to raise a genuine issue of material fact to preclude summary judgment. Due to the nature of the information attached in support of Defendant's Motion for Summary Judgment, Plaintiff would be severely prejudiced by not having the opportunity to conduct discovery in order to refute Defendant's arguments, attached affidavits, and exhibits. Plaintiff must be allowed the opportunity to obtain information and testimony, which is in the sole possession of Defendant, in order to fully respond to Defendant's Motion.

WHEREFORE, Plaintiff hereby respectfully requests the Court, pursuant to *Rule 56(f), F.R.C.P.*, to grant Plaintiff's Motion to Continue the setting of any scheduled responses or hearing on Defendant's requested Motion for Summary Judgment and allow Plaintiff the opportunity to conduct the necessary discovery.

/s/ John E. Tomlinson
JOSEPH H. "JAY" AUGHTMAN (AUG001)
JOHN E. TOMLINSON (TOM014)
Attorneys for Plaintiff

OF COUNSEL:

BEASLEY, ALLEN, CROW
METHVIN, PORTIS, & MILES, P.C.
P.O. Box 4160
Montgomery, AL 36103-4160
(334) 269-2343

## CERTIFICATE OF SERVICE

I hereby certify that on the 10th of March, 2006 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

**Attorney(s) for Defendant Reliastar Life Insurance Company**

Michael L. Bell
S. Andrew Kelly
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 20th Street North
Birmingham, AL 35203
Telephone: (205) 581-0700
Facsimile: (205) 581-0799

Markham R. Leventhal
Stephan J. Vaoudris
Ben V. Seessel
JORDEN BURT, L.L.P.
777 Brickell Avenue, Suite 500
Miami, FL 33131-2803
Telephone: (305) 371-2600
Facsimile: (305) 372-9928

/s/ John E. Tomlinson
OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| WILLIAM LEONARD, JR.    * | |
|          * | |
|     Plaintiff,    * | |
|          * | |
| v.    * | CASE NUMBER 3:05-CV-1015-MEF |
|          * | |
| RELIASTAR LIFE INSURANCE    * | |
| COMPANY f/k/a NORTHWESTERN    * | |
| NATIONAL LIFE INSURANCE    * | |
| COMPANY,    * | |
|          * | |
|     Defendants. | |

### AFFIDAVIT OF DR. DAVID LANGE

Before me, the undersigned, a Notary Public in and for the State of Alabama at Large, personally appeared David Lange. After having read the contents of this Affidavit, I hereby affirm that the following statements are true and correct:

"My name is David R. Lange. I am over the age of twenty-one and reside in Montgomery, Alabama. All statements made herein are made on my personal knowledge.

I am a Professor of Finance at Auburn University Montgomery. I have taught life insurance for over twenty years and have served as the Lowder-Weil Professor and Chair - Applied Life Insurance Education & Research Program. I have multiple professional presentations and published papers dealing with life insurance. The life insurance research has included Excel spreadsheets for both prospective and retrospective models of life insurance funding, premium determination, and valuation.

In 1995 I received the American College Outstanding Paper Award in Insurance for 'A Cash Value Sensitivity Analysis Approach to Evaluating Universal Life Insurance Policies' [Academy of Financial Services - Paper Abstracts, pg. 25, 1995]. An applied version of the retrospective valuation model - 'Calculating Funding Premiums for Universal Life Insurance', Calvin Cherry, April 2000"- was published in the North American Actuarial Journal [Volume 5, # 3, pp. 118-123, July 2001].

I have provided testimony by affidavit, deposition, in mediation or in court in over sixty cases involving life insurance. Several of these cases were class actions in which I was involved in settlement proposals and financial valuations, during preliminary discussions, in mediation or in court. Class actions include Kenneth Walters & James C. Cunningham v. Lincoln National Life Insurance Co. CV-96-P-3223-W; Walter H. Adams v. Southern Farm Bureau 4-98-CV-20 (JRE); Pauline Johnson v. ALFA Life Insurance

EXHIBIT 1

Company CV-98-2352-G; and Ella Mae Rowe v. National Western Life Ins. Co. Cause No. 00-00704.

I have been requested by attorney John E. Tomlinson to review documents related to the Northwestern National Life Insurance policy purchased by William J. Leonard Jr., included with the Affidavits of Wendy Paquin and Brian J. Boschert.

Based on my review of these documents, including the policy (B2-076-716), statement of policy cost and benefit information and annual reports, and my knowledge and experience, I have the following preliminary observations:

1. An expansion of the Statement of Policy Cost and Benefit Information current projection shows Mr. Leonard's Northwestern National Life Insurance Company Policy Flexible Premium Adjustable Whole Life Insurance Policy with the Enhanced Protection Rider (EPR) policy lapsing by age 83 [possibly age 82] rather than maturing at age 95, even if interest rates had not declined [stayed at the 9.5% projected rate]. The financial cause for the premature lapse of the policy is the increasing cost of insurance of the Enhanced Protection Rider (EPR) - term insurance rider, which based on prior experience, exceeded the EPR premium determined by Northwestern National Life Insurance Company by policy year four. The financial result is the excess EPR cost of insurance was taken out of the base policy cash value.

2. The information provided in the annual returns obscures credited interest rate information. The 'weighted average rate which approximates the actual rates credited' conceals the lower interest rates credited to the policy. For example if interest rates had declined during the year from 8.5% to 7%, the weighted average may be 7.70% which would obscure the actual decline in credited interest rates.

3. The projections provided in the annual returns are inaccurate. The projections use the current 'interest rate credited to new premiums'. However, this current credited interest rate on only new premiums is generally higher than previously credited weighted average interest rates, and higher than subsequent weighted average credited rates. That is, the projected interest rate is greater than the rate currently earned on the entire accumulation value. For the projection to be accurate the entire accumulation value would have to earn the new premium rate.

In my opinion the additional information specified in Plaintiff's 56(f) Motion to Continue and supporting affidavit, including additional actuarial base policy and EPR premium and cost of insurance and interest rate data contained within internal company documents, would be required to make a full determination of the specific lapse age and negative financial impact of the Enhanced Protection Rider (EPR). This information would be essential to substantiate the preliminary observations referenced above, Plaintiff's claims, and to refute the arguments made in Defendant's Motion for Summary Judgment."

Further, affiant sayeth not.

/s/ David Lange
David Lange

STATE OF ALABAMA    §
MONTGOMERY COUNTY §

SWORN to and SUBSCRIBED before me on this the 10th day of March, 2006.

/s/ Robyn Short
NOTARY PUBLIC
My Commission Expires: 10/4/09

(SEAL)