**UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| WILLIAM LEONARD, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:05-CV-01015-MEF-CSC |
| vs. | ) | |
| | ) | |
| RELIASTAR LIFE INSURANCE | ) | |
| COMPANY f/k/a NORTHWESTERN | ) | |
| NATIONAL LIFE INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT RELIASTAR LIFE INSURANCE COMPANY'S**
**SURREPLY MEMORANDUM IN OPPOSITION TO**
**PLAINTIFF'S RULE 56(F) MOTION TO CONTINUE**

Defendant ReliaStar Life Insurance Company ("ReliaStar") hereby submits this surreply memorandum in opposition to Plaintiff's Rule 56(f) Motion to Continue (D.E. 17) (the "Rule 56(f) Motion"). For the reasons set forth below and in ReliaStar's original memorandum in opposition (D.E. 21), the plaintiff's Rule 56(f) Motion is legally defective and should be denied.

**INTRODUCTION TO SURREPLY**

The plaintiff in this case attempts to assert claims based on the sale of a life insurance policy nearly 20 years ago. The plaintiff claims that his agent told him orally in 1986 that, if he paid a "level" premium of $37.00 every two weeks, his universal life insurance ("UL") policy would last forever and never lapse. The plaintiff makes this claim notwithstanding that absolutely nothing in the UL policy, which plaintiff is under a

legal duty to read, states that the policy will never lapse and, to the contrary, the policy expressly states that it was guaranteed not to lapse for only three years, not until the plaintiff reached 95 years of age or any other age. Despite receiving Annual Reports every year for 18 years showing that interest rates were falling, and having failed to increase his premium payments, the plaintiff now contends that the policy was "defective" and that the cost of a term insurance rider, which he could have cancelled at any time, was too high.

Because it was clear from the face of the policy that it was not guaranteed to remain in force forever, and because there is absolutely no provision guaranteeing the policy beyond three years, the plaintiff should have immediately recognized his purported claim upon receipt of his policy in 1986. Consequently, his claims are time barred. Moreover, even if the plaintiff was not on actual or constructive notice of his claims in 1986, beginning in 1993, he was expressly informed that his policy could and would lapse, given his existing schedule of premium payments. Nevertheless, the plaintiff took no action until February of 2005, when he canceled his rider and converted his policy to a paid-up policy.

In his Reply, the plaintiff argues that this Court should delay any consideration of ReliaStar's motion for summary judgment because the plaintiff requires discovery into internal actuarial data and information regarding the "design" of the policy. Not only did ReliaStar have no duty to disclose any of this information, these areas of proposed discovery are entirely irrelevant to the undisputed fact that plaintiff was on express notice

2

of his claim in 1986, or at the latest, in 1993. As detailed in ReliaStar's Motion,[1] in 1993, *twelve years prior to filing the complaint in this action,* after the interest rate under the policy had fallen from 9.75% to 7.25%, the plaintiff was expressly advised that, even if the interest rate stayed at 7.25% and did not decline further, the policy would lapse in the year 2014 (when the plaintiff was 75 years of age); and assuming the minimum interest rate of 4.50%, the Policy would have lapsed in the year 2000 (when plaintiff was 61 years of age). The December 1, 1993 Annual Report states:



"If planned periodic premiums are continued, assuming a 7.25% interest rate and current charges, your cash value will be depleted and your policy will lapse on 10/01/2014. Assuming 4.50% interest and guaranteed charges, your cash value will be depleted and your policy will lapse on 08/01/2000."

*See* ReliaStar's Motion, Boschert Aff., Ex. 3.[2]   A similar disclosure appeared in <u>every</u> subsequent Annual Report since 1993. *See* Boschert Aff., Ex. 3.[3]

---

[1] ReliaStar's Motion to Dismiss the First Amended Complaint or, in the Alternative, for Summary Judgment and Incorporated Memorandum of Law (D.E. 16) (hereinafter "ReliaStar's Motion").

[2] Plaintiff's Annual Reports are attached as composite Exhibit 3 to the Affidavit of Brian J. Boschert ("Boschert Aff."). The Boschert Affidavit is Exhibit A to ReliaStar's Motion.

[3] For example, the December 1, 2004 Annual Report stated: "If planned periodic premiums are continued, assuming a 4.50% interest rate and current charges, your cash value

In addition to ignoring these undisputed facts, the plaintiff ignores Eleventh Circuit law under Rule 56(f) and instead cites to cases in the First Circuit as well as state court cases that do not even discuss or consider Federal Rule 56. The plaintiff still has not, and cannot, explain how any of his proposed discovery would create a genuine issue of material fact preventing summary judgment on the statute of limitations. The suggested discovery has nothing to do with when the statute of limitations began running, when tolling, if any, ended, whether ReliaStar had a legal "duty" to disclose allegedly undisclosed information, or whether plaintiff reasonably relied on any purported oral misrepresentations. Simply put, the plaintiff has not met the Eleventh Circuit's standard for granting continuances under Rule 56(f) and his Rule 56(f) Motion should be denied.

## I.    The Plaintiff's Reply Is Inconsistent With The Legal Standards In The Eleventh Circuit Under Rule 56(f)

Notably, the plaintiff's Reply fails to cite *any* Rule 56(f) cases from the Eleventh Circuit, and only attempts (unsuccessfully) to refute one of the numerous cases cited by ReliaStar,[4] while ignoring the remaining authority ReliaStar cited.[5] Instead, the plaintiff

---

will be depleted and *your policy will lapse on 5/01/2012.* Assuming 4.50% interest and guaranteed charges, your cash value will be depleted and *your policy will lapse on 1/01/2008.*" Boschert Aff., Ex. 3 (emphasis added).

[4] The plaintiff complains (Reply at 7) about ReliaStar's citation to *Harbert International, Inc. v. James,* 157 F.3d 1271 (11th Cir. 1998), because that case involved a qualified immunity issue. He ignores, however, that just this year, the Eleventh Circuit set forth the exact same standard for Rule 56(f) affidavits in *Salas v. Tillman,* No. 05-10399, 2006 WL 122426, at *4 (11th Cir. Jan. 17, 2006). Moreover, the plaintiff cites no case from within the Eleventh Circuit containing a contrary standard.

[5] *See, e.g., Shelby v. Am. Colloid Co.,* No. 2:04cv489-T, 2005 WL 3804725, at *8-*9 (M.D. Ala. Mar. 1, 2005); *Marbulk Shipping, Inc. v. Martin-Marietta Materials, Inc.,* 271 F. Supp. 2d 1374, 1382 (S.D. Ala. 2003); *Mitchell v. Crowell,* 966 F. Supp. 1071, 1080 n.11 (N.D. Ala. 1996).

cites non-binding cases from the First Circuit, and inapposite cases from the Alabama Supreme Court which do not apply the Federal Rules of Civil Procedure. Ironically, two of the three First Circuit cases the plaintiff cites (Reply at 2, 3) actually support the denial of his Rule 56(f) motion, because the court in those cases found that the proposed Rule 56(f) materials were insufficient to establish the need for a continuance. *See United States v. One Lot of U.S. Currency ($68,000)*, 927 F.2d 30, 33-34 (1st Cir. 1991); *Hebert v. Wicklund*, 744 F.2d 218, 222 (1st Cir. 1984). The third case cited by plaintiff involved the situation (inapplicable here) where a party promised to supply certain discovery and then failed to do so. *See Resolution Trust Corp. v. North Bridge Assocs., Inc.,* 22 F.3d 1198, 1201, 1207 (1st Cir. 1994).

The plaintiff's citation to two Alabama Supreme Court decisions is misplaced. *See* Reply at 8 (citing *Ex parte Horton*, 711 So. 2d 979 (Ala. 1998); and *Ex parte Clarke*, 582 So. 2d 1064 (Ala. 1991)). This case is governed by the Federal Rules of Civil Procedure, not the Alabama Rules of Civil Procedure. Moreover, neither case even mentions Rule 56(f), nor do these cases discuss the issue of what discovery is necessary to overcome a statute of limitations defense. Rather, these cases discuss irrelevant discovery issues under state law. As such, they have nothing to do with whether this Court should proceed to consider summary judgment issues now, or delay and allow plaintiff's proposed discovery.[6]

---

[6] The plaintiff misses the point when he incorrectly states that ReliaStar refuses "to follow well-established law" by not proceeding with discovery now. Reply at 2. Rule 56(b) permits a defendant to file a summary judgment motion at any time. Moreover, the Federal Rules of Civil Procedure "shall be construed and administered to secure the just, speedy, and

Contrary to the cases cited by plaintiff, the Eleventh Circuit has a simple two prong standard for Rule 56(f) affidavits. Such affidavits must set "forth with particularity the facts the moving party expects to discover *and* how those facts would create a genuine issue of material fact." *Salas v. Tillman*, No. 05-10399, 2006 WL 122426, at *4 (11th Cir. Jan. 17, 2006) (emphasis added); *see also Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998) (same). The plaintiff has completely failed to articulate any comprehensible rationale as to how any of his proposed discovery can change the undisputed fact that he was on actual notice of his purported claims when he received his policy in 1986, or at the very latest, beginning in 1993, when he was advised that his policy would lapse prior to age 95 unless he increased his premium payments.

## II.    The Plaintiff's New Affidavit And Reply Arguments Are Entirely Irrelevant To The Statute Of Limitations And Fail To Create Any Legitimate Grounds For Plaintiff's Proposed Areas Of Discovery

Recognizing the deficiencies in his first Rule 56(f) affidavit, the plaintiff has attempted to supplement his Rule 56(f) Motion with another affidavit, this one from Dr. David Lange, a Professor of Finance at Auburn University Montgomery. *See* Reply Ex. 1. In sum, Dr. Lange merely sets forth his opinion that

1.    the plaintiff's insurance policy would have lapsed, "even if interest rates had not declined" (Lange Aff. ¶ 1, p. 2);

2.    the "financial cause" of such a lapse would have been the increasing cost of the term insurance rider (*id.*);

---

inexpensive determination of every action." Fed. R. Civ. P. 1. It is plaintiff who seeks to delay the inevitable and to force ReliaStar to engage in costly and unnecessary discovery.

3.      interest rates were declining faster than the decline revealed by the
        weighted average interest rate decline set forth in ReliaStar's annual
        reports (*id.* ¶ 2); and

4.      the lapse projections in ReliaStar's annual reports were inaccurate
        because "the projected interest rate is greater than the rate currently
        earned on the entire accumulation value."(*id.* ¶ 3).

The affiant then concludes that actuarial, premium, cost of insurance, and interest rate
documents are "required to make a full determination of the specific lapse age and
negative financial impact" of the term insurance rider. Lange Aff. at p. 2.

Plaintiff's new affidavit is entirely irrelevant to the statute of limitations issues
raised in ReliaStar's Motion. These affiant's statements do not satisfy Rule 56(f) because
they do not "create a genuine issue of material fact" (*Salas*, 2006 WL 122426, at *4)
sufficient to defeat the statute of limitations and other issues raised in ReliaStar's Motion.
The Lange affidavit does not dispute that the plaintiff was expressly told in 1993 that his
policy could and would lapse prior to the plaintiff reaching age 95. The purported reason
for the lapse, whether interest rates were actually dropping faster than the annual reports
revealed, and what particular year the policy would have lapsed is immaterial and
irrelevant. It is undisputed that the plaintiff was on notice that the policy could lapse, and
he was therefore on notice that the purported 1986 oral statement by his agent was false.

Indeed, in supporting the plaintiff's claim that he purchased a "defective" policy
different than what the agent had represented, Dr. Lange demonstrates why the statute of
limitations began running when plaintiff purchased his policy in 1986. *See Donoghue v.*

7

*Am. Nat'l Ins. Co.,* 838 So. 2d 1032, 1037 (Ala. 2002) (a claim of fraud based on purported misrepresentations that a life insurance policy would provide a $125,000 retirement fund if planned premiums were continued until age 65 accrued when the first premium was paid); *Alfa Life Ins. Corp. v. Jackson,* 906 So. 2d 143, 151 (Ala. 2005) ("[A] claim that the plaintiff-insured was misled to pay premiums for a policy by representations that the policy would contain a coverage or feature that the subsequently issued policy did not in fact contain, *is ripe* as soon as the plaintiff-insured pays a premium.") (emphasis in original) (citations omitted).

Because the plaintiff contends here that he was promised a certain amount of insurance coverage indefinitely, so long as he continued making his planned periodic premiums, this case is no different than a previous case addressed by this Court where the insurance agent purportedly misrepresented that "the amount of insurance coverage would never fall below the face amount of $15,000." *Owens v. Life Ins. Co. of Ga.*, 289 F. Supp. 2d 1319, 1321 (M.D. Ala. 2003). This Court determined that plaintiff "had in his possession documents which contradicted the alleged oral misrepresentations" and "should have discovered the possibility of fraud and misrepresentation in 1984 when he purchased the policy, and the two year statute of limitations commenced running at that time." *Id*. at 1326.[7]

---

[7] The Court can also disregard the Dr. Lange affidavit because it was improperly attached to the Reply, rather than the initial Rule 56(f) Motion. Courts should not consider new evidentiary materials on a reply brief. *United States v. Levy,* 379 F.3d 1241, 1244 (11th Cir. 2004) ("As for reply briefs, this Court follows this same rule and repeatedly has refused to consider issues raised for the first time in an appellant's reply brief.") (citations omitted); *Georgeadis v. County of Franklin*, No. C-2-99-1027, 2000 WL 1459369, at *1 (S.D. Ohio Sept. 22, 2000) ("It is, of course, improper to submit an affidavit for the first time with a reply

Case 3:05-cv-01015-MEF-CSC    Document 27-2    Filed 03/17/2006    Page 9 of 13

III.    Plaintiff's New Arguments To Justify His Requested Discovery Are Unconvincing And Fail The Rule 56(f) Standard In The Eleventh Circuit

Combining his six initial topics into four, the plaintiff's second attempt to justify the requested discovery in his Reply likewise fails.  None of the issues identified by plaintiff as topics for discovery are material to the pending summary judgment issues.

### 1.    Actuarial and other internal documents

The plaintiff claims that he needs to take discovery of "actuarial information and other internal documents" in order to "discredit the information contained in the annual reports."  Reply at 4.  Plaintiff contends that it is his understanding that "certain information" in the Annual Reports is "inaccurate." *Id.*  What is at issue, however, is whether the plaintiff was on notice beginning in 1986, or in 1993, that the policy was not guaranteed to stay in force forever, even if the plaintiff paid his planned initial premium of $37.00 every two weeks. *See* First Amd. Compl. ¶¶ 11, 28 (alleging plaintiff was induced to purchase the policy based on oral representation by the agent that "the initial premium" would "always be adequate to fund the original policy terms").  The Annual Reports unequivocally disclosed to plaintiff, beginning in 1993, that his policy could and would lapse well before he reached the age of 95.  It does not matter whether the policy would have lapsed in the year 2012 (when plaintiff was 73 years old), 2010 (when he was 71), or some other year.  The plaintiff was repeatedly put on notice over a period of a dozen years that his policy was not going to last until age 95 unless he increased his

---

memorandum, because the opposing party does not ordinarily have the opportunity to contest that affidavit through a supplemental filing.").

premium payments, and no discovery sought by plaintiff is going to change this undisputed fact.[8]

## 2. Design and development of plaintiff's policy type

The plaintiff also contends that discovery regarding the "design" of the policy would be relevant "when refuting Defendant's statute of limitations and reliance arguments" because the plaintiff seeks to show that "the policy was inevitably going to lapse prior to the maturity date" even if interest rates did not decline from their initial rate in 1986. *See* Reply at 5. Plaintiff's proposed discovery is not only immaterial, it is contrary to the actual undisputed facts. The undisputed facts are that the policy interest rate steadily declined from a high of 9.75% to the guaranteed rate of 4.5% in 2003. The plaintiff cannot base a claim on hypothetical facts.[9] The record reflects that interest rates steadily fell, and the plaintiff was expressly advised every year of the interest rate applied to his policy. If the plaintiff was unhappy with the interest rate, he should have taken action years ago. His current action is time barred, and no amount of discovery into the "design" of the policy will change the material facts or resurrect the plaintiff's claims.

---

[8] *See, e.g., Riis v. Mfrs. Hanover Trust Co.,* 632 F.Supp. 1098, 1103 (S.D.N.Y. 1986) ("Failure to discover all the details [of a fraud claim] does not prevent the statute [of limitations] from running.") (internal quotations and alterations omitted); *accord Von Brimer v. Whirlpool Corp.,* 536 F.2d 838, 848 (9th Cir. 1976) ("Failure to discover all the details of a fraud does not prevent the statute [of limitations] from running.") (citations omitted).

[9] It is fundamental that a plaintiff cannot seek an "advisory" opinion by basing a claim on facts that do not exist. *See Thomas v. Crosby,* 371 F.3d 782, 802 (11th Cir. 2004) ("Article III of the Constitution prohibits the rendition of advisory opinions.") (citing *NLRB v. Gen. Cinema Corp.,* 526 F.2d 427, 429 (5th Cir.1976) ("[W]e are being called upon to rule on a hypothetical question and to render an advisory opinion. Article III prohibits the rendition of advisory opinions.")).

### 3.    Allocation and calculation of plaintiff's premium

The plaintiff further contends that he needs discovery to demonstrate that his $37.00 bi-weekly premium was insufficient to pay for the cost of the term insurance rider "through the maturity age of 95." Reply at 6. Once again, this issue is immaterial. It is undisputed that the Annual Reports showed the plaintiff the exact cost of the rider each year, and the plaintiff could have cancelled the rider at any time, as he eventually did in February of 2005. The plaintiff was on notice upon receipt of his policy, or no later than 1993, that the bi-weekly planned periodic premium was not guaranteed to keep the policy in force forever. The reasons why the policy might lapse -- whether the cost of the rider, or falling interest rates, or some other reason -- are immaterial. The point is that the plaintiff knew of the possibility of lapse, and he should have taken action years ago if he was dissatisfied.

### 4.    Defendant's marketing and training process

Finally, the plaintiff also contends that discovery into marketing and training issues is necessary because it is "directly related" to a "scheme to misrepresent or conceal material facts." Reply at 7. Nowhere, however, does the plaintiff set forth what facts he expects to discover, or how those facts would create a genuine issue of material fact precluding summary judgment in the face of the Policy, Statement of Policy Cost and Benefit Information, and numerous Annual Statements that as a matter of law put plaintiff on notice of his alleged claims. Whatever marketing materials, if any, the plaintiff received either put him on notice of his claims or not. ReliaStar is not relying on marketing materials in its Motion, and they are therefore irrelevant. How plaintiff's

11

agent was trained is similarly irrelevant. The plaintiff has already alleged what he was purportedly told by the agent, and any discovery into agent training is entirely irrelevant and immaterial to the pending summary judgment issues raised in ReliaStar's motion.

## CONCLUSION

For the reasons set forth above and its initial memorandum in opposition, ReliaStar respectfully requests that the Court enter an Order denying the plaintiff's Rule 56(f) Motion to Continue.

Respectfully submitted,

/s/ S. Andrew Kelly
Michael L. Bell, Esq. (BELLM6182)
S. Andrew Kelly, Esq. (KELL3760)
LIGHTFOOT, FRANKLIN & WHITE, L.L.C.
The Clark Building
400 North 20th Street
Birmingham, Alabama 35203-3200
Telephone: (205) 581-0700
Facsimile: (205) 581-0799

Markham R. Leventhal (Fla. Bar #616140)
Stephan I. Voudris (Fla. Bar #135542)
Ben V. Seessel (Fla. Bar. #598585)
JORDEN BURT LLP
777 Brickell Avenue, Suite 500
Miami, Florida 33131-2803
Telephone: (305) 371-2600
Facsimile: (305) 372-9928

*Attorneys for Defendant*
*ReliaStar Life Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of March, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Jere L. Beasley, Esq. (libby.rayborn@beasleyallen.com)
W. Daniel Miles, III, Esq. (dee.miles@beasleyallen.com)
Joseph H. Aughtman, Esq. (jay.aughtman@beasleyallen.com)
John E. Tomlinson, Esq. (john.tomlinson@beasleyallen.com)
Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
P. O. Box 4160
Montgomery, AL 36103-4160

/s/ S. Andrew Kelly

147122